UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12417-PBS

| | |
|---|---|
| JON M. TAYLOR,<br>                Plaintiff,<br><br>v.<br><br>TOWN OF FREETOWN,<br><br>CARLTON E. ABBOTT, JR., ESQ.,<br>Individually, and as Chief of the Freetown<br>Police Department, and<br><br>WALTER J. SAWICKI<br>Individually, and as Lieutenant of the<br>Freetown Police Department<br>                Defendants. | **FIRST AMENDED COMPLAINT** |

## INTRODUCTORY STATEMENT

1. This is a complaint for compensatory and punitive money damages brought by Jon M. Taylor ("Plaintiff"), pursuant to Title 42 U.S.C. § 1983, for the deprivation of the former's civil rights, under color of state law, and for adverse actions suffered as a result thereof, by his employer, the Town of Freetown ("Freetown"), and his supervisors, Carlton E. Abbott, Jr., Esq. ("Abbott") and Walter J. Sawicki ("Sawicki"). Plaintiff avers that Freetown, Abbott, and Sawicki (collectively referred to as the "Defendants"), in violation of federal and state constitutional, statutory, and common law rights, continuously retaliated against him for his having repeatedly raised matters of public concern regarding unlawful and/or improper misconduct in the Freetown Police Department.

## JURISDICTION

2. Jurisdiction is based on 42 U.S.C. §1983 and 28 U.S.C. §§ 1331 and 1343. Plaintiff claims the court's pendent jurisdiction over state law related claims.

## PARTIES

3. Plaintiff Jon M. Taylor is a natural person and a resident of Fall River, Massachusetts, Bristol county. At all times material to this civil action, Plaintiff has been, and remains, employed by the Defendant Town of Freetown as a Police Officer and deemed an "employee", as that term is defined in M.G.L. c. 149, § 185(a)(1).

4. Defendant Town of Freetown is a municipality of the Commonwealth of Massachusetts and is located within Bristol County. At all times material to this civil action, Defendant Town of Freetown is deemed Plaintiff's "employer", as that term is defined in M.G.L. c. 149, § 185(a)(2). Pursuant to M.G.L. c. 41, s. 97, said Defendant is authorized to make suitable regulations governing the police department and the officers thereof, and, further, is deemed a "public body," as that term is defined in M.G.L. c. 4, § 7, and c. 149, § 185(a)(3)(A) and (E).

5. Defendant Carlton E. Abbott, Jr., Esquire, is a natural person and a resident of East Freetown, Massachusetts, Bristol County. At all times material to this civil action, Abbott was, and remains, the Chief of the Town of Freetown's Police Department and is deemed Plaintiff's "supervisor" as that term is defined in M.G.L. c. 149, § 185(a)(4).

6. Defendant Walter Sawicki is a natural person and a resident of East Freetown, Massachusetts, Bristol County. At all times material to this civil action, Sawicki

was, and remains, the ranking Police Lieutenant in the Town of Freetown's Police Department and is deemed Plaintiff's "supervisor", as that term is defined in M.G.L. c. 149, § 185(a)(4).

## STATEMENT OF FACTS

7. In November 1988, or thereabout, Plaintiff began his employment with the Town of Freetown Police Department as first an Auxiliary Police Officer, next as a Reserve Police Officer, and later as a full-time Police Officer, which has been his current position since September 6, 1997, or thereabout.

8. At all times material to this civil action, Plaintiff met or exceeded the minimum performance expectations of his employer, as evidenced, in part, by his numerous commendations for his service to his department and community.

9. In addition to his experience as a Police Officer, Plaintiff also possesses a Bachelor of Science degree in Law Enforcement, a Master of Science degree in Criminal Justice Administration, and Associate degrees in Liberal Studies and Criminal Justice.

10. On July 17, 1998, or thereabout, Abbott, then Freetown's town counsel, was hired by Freetown as its Police Chief.

11. Shortly after Abbott became the chief, Plaintiff was approached by Freetown Police Officer Elton E. Ashley, III ("Ashley"), who, under the direction of Abbott, inquired of Plaintiff which "side" he was on: Abbott's or a group of other officers. According to Ashley, if Plaintiff was not loyal to Abbott, then Plaintiff would be "on the outside looking in." Plaintiff replied that he was politically neutral.

12. On September 29, 1998, Ashley and another police officer approached Plaintiff, stating Abbott advised them to speak to Plaintiff to determine if the latter would "cover up" for both officers who had falsified time slips while working White Mountain Cable Company details. According to these officers, Abbott, by using these officers as third parties, specifically requested Plaintiff to forge paperwork to protect the officers from claims that they were "double-dipping," that is, deliberately misappropriating funds. To his detriment, Plaintiff emphatically stated to these officers that he refused to participate in such a conspiracy.

13. Shortly after the above conversations between Plaintiff and Ashley occurred, Abbott openly and continuously began a pattern and practice of retaliation against Plaintiff. Such adverse action, either directly or indirectly, such as through other supervisors like Sawicki, included, but was not limited to: a) unjustly accusing Plaintiff of falsifying departmental records and conduct unbecoming an officer; b) unjustly denying Plaintiff advantageous training, teaching, and related career opportunities; c) unjustly differentially treating Plaintiff in terms and conditions of employment, such as denying Plaintiff more favorable shifts and assignments, depriving him of overtime opportunities, and subjecting him to closer supervision than some of his colleagues; d) unjustly and repeatedly precluding Plaintiff from competing for police sergeant positions within the department, despite Plaintiff's sound qualifications and interest in career advancement; e) maligning Plaintiff's good character and reputation within the Freetown Police Department, the community, and to third parties by falsely alleging, for example, that Plaintiff has a mental disorder, feigned a serious work-related injury, and is professionally

incompetent; f) intimidating and coercing the Plaintiff, such as threatening him with, and pressuring him to stipulate to, unwarranted disciplinary action; g) tampering with Plaintiff's personnel file; and h) advising a newly appointed supervisor to "watch out for Officer Taylor" and "to write him up for whatever you can."

14. In sworn deposition testimony involving other employee claims of retaliation before the Massachusetts Commission Against Discrimination ("MCAD"), Abbott, on January 19, 2001, admitted that he investigated allegations that Taylor falsified payroll records for details at White Mountain Cable Company as well as presented Plaintiff with a settlement offer, which Plaintiff rejected since Plaintiff denied any wrongdoing. On Plaintiff's information and belief, never before had Abbott made such an admission. Prior to the filing of this civil action, Plaintiff, unlike Ashley, Plaintiff was never the subject of any formal disciplinary action since his employment with Freetown, according to Plaintiff's personnel record.

15. In sworn deposition testimony concerning the above claims of retaliation, Abbott, on July 11, 2003, testified before the MCAD (Commissioner Walter J. Sullivan, Jr., presiding) that, in his opinion, Ashley, in connection with the White Mountain Cable Company incident, committed larceny by unlawfully accepted funds as a Patrol Officer in the Freetown Police Department. Prior to the above hearing, Abbott, on Plaintiff's information and belief, had never admitted publicly that Ashley had engaged in criminal conduct.

16. Although Abbott, at all times material herein, had sufficient evidence to file a criminal complaint against Ashley, he deliberately failed, neglected, and/or refused to do so. Rather, the only charges that Abbott preferred against Ashley

were before the Board of Selectmen on or about February 22, 2000. On Plaintiff's information and belief, Abbott failed, refused, and/or neglected to suspend Officer Ashley for his unlawful misconduct involving White Mountain Cable Company.

17. Evidence exists that in addition to Ashley, other employees, such as Sawicki and others loyal to Abbott, unlawfully misappropriated of public money in connection with White Mountain Cable Company details. Though Abbott, in his capacity of police chief, knew or should have known of similar egregious instances of such unlawful misconduct, he deliberately failed, refused, or neglected to file any criminal complaints or recommend disciplinary action against subordinates except those officers who, from Abbott's perspective, were disloyal to him.

18. In May 5, 1999, or thereabout, Defendant Abbott's brother, Steven E. Abbott, was promoted by the Board of Selectmen to Police Sergeant. Officer Abbott is considered an outstanding officer by Defendants Abbott and Sawicki. Based on Plaintiff's information and belief, Officer Abbott's qualifications for the police sergeant position were inferior to those of other, more qualified employees in the Freetown Police Department, including those of the Plaintiff.

19. In January 2003, or thereabout, Ashley, with the support and recommendations of Abbott and Sawicki, was promoted by the Board of Selectmen to acting Police Sergeant. On Plaintiff's information and belief, Ashley's qualifications for the police sergeant position were inferior to those of other, more qualified employees in the Freetown Police Department, including those of Plaintiff.

20. On October 26, 2000, November 22, 2000, July 17, 2002, and June 27, 2003, Plaintiff sent written notices to the Board of Selectmen and Abbott about matters of serious public concern, including Abbott's and the Board's failure to properly respond to the White Mountain Cable Company incident, violation of department rules and regulations and collective bargaining agreement terms by Abbott concerning overtime, and unethical and deceitful practices by Abbott in his capacity as Police Chief. See Exhibits A-D, which are attached hereto and by reference incorporated in the herein complaint.

21. On July 21, 2003 – less than four weeks after the Plaintiff's last correspondence to Freetown and Abbott – Abbott, in writing, insinuated that engaged in racial profiling while performing traffic duty and, as a consequence, "directed" Plaintiff to "familiarize" himself with applicable departmental policies and "encouraged" Plaintiff to "voluntarily modify (his) conduct to avoid real or perceived allegations of racial or gender profiling." Plaintiff denies any and all allegations that he has engaged in such misconduct.

22. On July 24, 2003, Freetown's Board of Selectmen responded in writing to Plaintiff's letter of June 27, 2003. According to the Board, after "check(ing) into the matter further . . . there was **nothing** (emphasis added) to substantiate his claims" – notwithstanding Abbott's prior admission to the MCAD on July 11, 2003. See Exhibit E, of a copy of which is attached hereto and by reference incorporated in the herein complaint.

23. On October 6, 2000, a "whistle-blower" lawsuit was filed in Bristol Superior Court by a fellow police officer, Marc Rourke, against Freetown and Abbott (docket no. C00-1223). That matter is still pending before the court.

24. To date, Freetown's Board of Selectmen have deliberately failed, refused, or neglected to investigate properly Plaintiff's above claims of unlawful misconduct, grant Plaintiff a public hearing to address these claims - despite his request - and remedy these matters of public concern.

25. On or about October 2, 2003, Plaintiff sent to the Freetown Board of Selectmen a written presentment of his claims involving the Defendants.

26. On or about November 5, 2003, Sawicki, through counsel, threatened Plaintiff with legal action were Plaintiff to pursue any against him.

27. On or about December 29, 2003, Sawicki filed with Abbott a written complaint against Plaintiff, falsely alleging that Plaintiff was insubordinate and engaged in conduct unbecoming an officer.

28. Defendant Town of Freetown has a custom and/or policy of violating the rights of its citizens, deliberate and/or reckless indifference to adequate training, to adequate hiring and supervision of police officers, all of which it knew or had reason to know would cause the injuries suffered by Plaintiff, and said policy and/or custom in fact caused such injuries.

29. As a result of the continuous retaliation actions by Defendants, Plaintiff has suffered, and will continue to suffer harm to his reputation, loss of compensation, and other substantial damages, unless this Honorable Court otherwise provides relief.

## COUNTS

### COUNT I: TITLE 42 U.S.C. § 1983, FEDERAL CIVIL RIGHTS ACT
(Freetown, Abbott, and Sawicki)

30. Plaintiff restates and re-avers the above paragraphs 1 to 29 as if expressly set forth herein.

31. The Defendants, jointly and severally, while under color of law, have interfered with, or attempted to interfere with, Plaintiff's constitutional right of free speech as guaranteed by the First Amendment to the United States Constitution and Article 16 of the Massachusetts Constitution, and his protected conduct pursuant to M.G.L. c. 149, ¶ 185.

32. The Defendants, jointly and severally, while acting under color of law, deprived Plaintiff of his constitutional right of free speech as guaranteed by the First Amendment to the United States Constitution.

33. The Defendants are jointly and severally liable to the Plaintiff under Title 42 United States Code §1983 for their unlawful conduct, and Plaintiff is entitled to the award of compensatory and punitive monetary damages, and, under Title 42 U.S.C. § 1983, to costs and attorney's fees.

### COUNT II: MASSACHUSETTS CIVIL RIGHTS ACT
(Freetown, Abbott, and Sawicki)

34. Plaintiff restates and re-avers the above paragraphs 1 to 33 as if expressly set forth herein.

35. The Defendants, jointly and severally, while under color of law, have interfered with, or attempted to interfere with, Plaintiff's constitutional right of free speech as guaranteed by the First Amendment to the United States Constitution and

Article 16 of the Massachusetts Constitution, and his protected conduct pursuant to M.G.L. c. 149, ¶ 185.

36. Defendants have interfered, or have attempted to interfere, with Plaintiff's exercise or enjoyment of rights secured by the Constitution and laws of the United States and the Commonwealth by threats, intimidation, and/or coercion.

37. Defendants are jointly and severally liable to the Plaintiff for their unlawful misconduct, under M.G.L. c. 12, §§ 11H and I, and Plaintiff is entitled to the award of compensatory and punitive monetary damages, costs and attorney's fees.

38. As a result of Defendants' unlawful misconduct, Plaintiff has suffered, and will continue to suffer unless awarded relief, substantial damages, including, but not limited to, damages to his reputation, emotional distress, lost wages and employment benefits, and other direct and consequential damages.

### COUNT III: WHISTLE-BLOWING CLAIM
(Freetown)

39. Plaintiff restates and re-avers the above paragraphs 1 to 38 as if expressly set forth herein.

40. Plaintiff has made repeated oral and written disclosures to his supervisor, employer, and public body concerning activities, policies, and/or practices which violate laws, and departmental rules and regulations promulgated pursuant to law, or which Plaintiff reasonably believes pose a risk to public safety or the environment of the employer and the community pursuant to M.G.L. c. 149, §185 (c)(1).

41. Plaintiff, to no avail, has repeatedly afforded Freetown a reasonable opportunity to correct the activity, policy, and/or practice, pursuant to M.G.L. c. 149, §185(c)(1).

42. Freetown has retaliated against Plaintiff, in violation of M.G.L. c. 149, §185(a)(5), for his having engaged in lawful activity as pled herein.

43. As a result of the retaliation alleged above, Plaintiff has suffered, and will continue to suffer substantial damages, including, but not limited to, damages to his reputation, emotional distress, lost wages and employment benefits, and other direct and consequential damages.

### COUNT IV: TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS AND/OR CONTRACTUAL BUSINESS RELATIONSHIPS
(Abbott and Sawicki)

44. Plaintiff restates and re-avers the above paragraphs 1 to 43 as if expressly set forth herein.

45. An existence of an advantageous business relationship exists between Plaintiff and Freetown in which Plaintiff receives an economic benefit for services rendered.

46. Defendants Abbott and Sawicki, at all times material herein, were aware of this business and/or contract relationship.

47. Said Defendants' intentional and/or negligent interference with this business and/or contract relationship was for an improper purpose or by improper means.

48. As a result of such interference, the Plaintiff has sustained substantial damages, including but not limited to, loss of reputation, emotional distress, lost wages and employment benefits, and other direct and consequential damages.

## COUNT V: DEFAMTION
(Freetown, Abbott and Sawicki)

49. Plaintiff restates and re-avers the above paragraphs 1 to 48 as if expressly set forth herein.

50. Defendants knowingly, maliciously, or with a reckless disregard for the truth, generated false and defamatory written and oral statements concerning the Plaintiff.

51. The Defendants communicated these statements to one or more third parties.

52. As a result of such communication, the Plaintiff was exposed to hatred, ridicule, embarrassment, and/or contempt in the community, and suffered irreparable injury to his reputation.

## JURY DEMAND

53. The Plaintiff requests a jury trial on all counts pled.

## RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court:

(1) Grant the Plaintiff injunctive relief as is necessary, just, and proper;

(2) Award Plaintiff damages for loss of back pay and benefits, front pay, loss of professional opportunity, emotional distress, and punitive damages;

(3) Award Plaintiff reasonable attorney's fees, interest, and costs for the prosecution of this action; and

(4) Award Plaintiff injunctive and such other relief as this Honorable Court deems just and proper.

JON M. TAYLOR

By His Attorney:

_____
Howard Mark Fine,
86 Sherman Street
Cambridge, MA  02140-3233
BBO No. 554671
(617) 868-9200

Dated: March 23, 2004