UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

C.A. NO. 03-12417-PBS

| | |
|---|---|
| JON M. TAYLOR,<br><br>    Plaintiff,<br><br>v.<br><br>TOWN OF FREETOWN, CARLTON E. ABBOTT, JR., individually and as Chief of the Freetown Police Department, and WALTER J. SAWICKI, individually and as Lieutenant of the Freetown Police Department,<br><br>    Defendants. | DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT |

## I. Introduction

On December 1, 2003, the plaintiff, Jon M. Taylor (hereinafter, "Plaintiff") filed his complaint in this matter. Prior to serving that complaint, Plaintiff filed his First Amended Complaint (hereinafter, "Complaint"). In Counts I and II, Plaintiff alleges that the defendants, Town of Freetown (hereinafter, "Town"), Freetown Police Chief Carlton Abbott, Jr. (hereinafter, "Abbott") and Freetown Police Lieutenant Walter J. Sawicki (hereinafter, "Sawicki"), in violation of 42 U.S.C. §1983 and M.G.L. c.12, §§11H and 11I, interfered with, attempted to interfere with and/or deprived him of his right to free speech and interfered with or attempted to interfere with his protected conduct under M.G.L. c.149, §185. In Count III, Plaintiff asserts that the Town violated M.G.L. c.149, §185(a)(5) by retaliating against him for engaging in activity that is protected under §185. Finally, in Counts IV and V, respectively, Plaintiff contends that

Abbott and Sawicki tortiously interfered with his contractual and/or advantageous business relationship with the Town and that they defamed him.

Now come the Defendants and respectfully submit this memorandum in support of their motion to dismiss the above-captioned matter in its entirety.

## II. Statement of Facts[1]

In or around November 1988, Plaintiff began his employment with the Town of Freetown Police Department as an Auxiliary Police Officer. Complaint at ¶7. After a stint as a Reserve Police Officer, Plaintiff eventually became a full-time Police Officer on or about September 6, 1997. Id.

On or about July 17, 1998, Abbott was hired by the Town as its new Police Chief. Id. at ¶10. Shortly after Abbott became Chief, Plaintiff was approached by Freetown Police Officer Elton E. Ashley III (hereinafter, "Ashley"). Id. at ¶11. Ashley inquired of Plaintiff whether he was on Abbott's "side" or on the "side" of a group of other officers. Id. Ashley stated that "if Plaintiff was not loyal to Abbott, then Plaintiff would be 'on the outside looking in.'" Id. Plaintiff replied that he was "politically neutral." Id.

On September 29, 1998, Ashley and another police officer approached Plaintiff and stated to him that Abbott had instructed them to speak to Plaintiff to determine if Plaintiff would "cover up" for the officers concerning paid detail time slips they had falsified. Id. at ¶12. According to the officers, Abbott had specifically requested that Plaintiff forge paperwork to protect the officers from claims that they had engaged in "double dipping." Id. Plaintiff informed the officers that he would not engage in such conduct. Id.

---

[1] The facts recited herein are taken from the allegations of the Complaint and are accepted as true for purposes of this motion only. See Coyne v. Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992).

Shortly after the above conversations between Plaintiff and Ashley occurred, Plaintiff was subjected to an open and continuous pattern and practice of retaliation. Id. at ¶13. This retaliation consisted of his being accused of falsifying departmental records and conduct unbecoming an officer, being denied certain training, teaching and related career opportunities, being denied more favorable shifts and assignments, being deprived of overtime opportunities, being subjected to closer supervision than some of his colleagues, being precluded from competing for sergeant positions within the department, statements being made within the department, to the community and to third parties to the effect that he has a mental disorder, had feigned a serious work-related injury and is professionally incompetent, being threatened with and pressured to stipulate to disciplinary action, having his personnel file tampered with and statements being made to a new supervisor to "watch out" for him and "to write him up for whatever you can." Id. Said retaliation was allegedly inflicted upon Plaintiff by Abbott, "either directly or indirectly, such as through other supervisors like Sawicki...." Id.

In May 5, 1999, Abbott's brother, Steven E. Abbott (hereinafter, "Sgt. Abbott"), was promoted by the Town's Board of Selectmen (hereinafter "Board") to the position of Sergeant. Id. at ¶18. On Plaintiff's information and belief, Sgt. Abbott's qualifications for the sergeant position were inferior to those of other, more qualified employees in the department, including Plaintiff's.

In a letter to the Board dated October 26, 2000, Plaintiff followed up on a prior Freedom of Information Act request he had submitted to the Board in which he had asked to be provided with "a copy of disciplinary charges filed against [him] by Chief Carlton Abbott Jr." Complaint Exhibit A. Plaintiff asked that copies of the complaints issued against him by Abbott be forwarded to him and that a letter from the Board be placed in his personnel file stating that

3

Abbott had falsely charged Plaintiff with misconduct and that the disciplinary charges against Plaintiff had been dropped. Id.

By letter to the Board dated November 22, 2000, Plaintiff responded to an assertion that had been made by Abbott in an October 31, 2000 letter that there was no disciplinary documentation in Plaintiff's personnel file concerning the alleged misconduct Plaintiff had referred to in an earlier letter to the Board. Complaint Exhibit B. In his November 22nd letter, Plaintiff contended that the letter from Abbott did not properly answer Plaintiff's earlier information request to the Board. Id. Plaintiff stated that as a result of this, he had "no other alternative to resolve this incident but to seek legal representation in order to clear [his] good name." Id.

On or about July 15, 2002, Plaintiff filed a grievance pursuant to the terms of a collective bargaining agreement (hereinafter, "CBA") protesting the manner in which Abbott had assigned certain overtime to officers. Complaint Exhibit C. Plaintiff asserted that Abbott's actions in that regard were in violation of Article VIII of the CBA and asked that the grievance be forwarded to the Board for a hearing. Id.

In or around January 2003, Ashley was promoted by the Board to the position of Sergeant. Id. at ¶18. On Plaintiff's information and belief, Ashley's qualifications for the sergeant position were inferior to those of other, more qualified employees in the department, including Plaintiff's.

By letter to the Board dated June 27, 2003, Plaintiff alleged that he had experienced several incidents of harassment and retaliation at the hands of Abbott subsequent to sending his October and November 2000 letters to the Board. Complaint Exhibit D. Plaintiff's letter asserted that his earlier attempts to address his concerns and grievances with the Board had been

4

disregarded. Id. at 2. Plaintiff asked the Board to investigate his "original complaint of departmental misconduct as well as the propriety of Police Chief Abbott's subsequent disciplinary, promotional, and other personnel practices." Id.

On July 21, 2003, Abbott sent Plaintiff a letter the stated purpose of which was "to encourage [Plaintiff] to voluntarily modify [his] conduct so as to allow [him] to avoid real or perceived allegations of racial or gender profiling." Defendants' Attachment A hereto[2]. The letter indicated that it was being issued in response to the Boston Globe's publication of an article regarding racial and gender profiling in the issuance of traffic citations by police officers. See id. One of the traffic citations at issue in the Boston Globe article was issued by Plaintiff while performing traffic duty. See id.; Complaint at ¶21.

By letter dated July 24, 2003, the Board responded to Plaintiff's June 27, 2003 letter and advised him that it had not found anything to substantiate his claims. Complaint at ¶22; Complaint Exhibit E.

On or about October 2, 2003, Plaintiff sent the Board a written presentment of his claims against the Town, Abbott and Sawicki. Complaint at ¶25; Defendants' Attachment B hereto. By letter dated November 5, 2003, Sawicki, through his counsel, denied the allegation in Plaintiff's presentment to the Board that Sawicki had communicated to other individuals that a work related injury suffered by Plaintiff was "nothing more than a fabrication." Complaint at ¶26; Defendants' Attachment C hereto.

---

[2] Attachments A through D to Defendants' memorandum were all identified and referred to by Plaintiff in his Complaint and as such, may be considered by the Court notwithstanding Plaintiff's failure to include them as exhibits to his Complaint and without converting Defendants' motion to dismiss to one for summary judgment. See Romani v. Shearson Lehman Hutton, 929 F.2d 875, 879 n. 3 (1st Cir. 1991) citing Sudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988) cert. denied, 488 U.S. 821 (1988).

On or about December 29, 2003, Sawicki filed a written complaint with Abbott that Plaintiff had been insubordinate and had engaged in conduct unbecoming an officer. Complaint at ¶27; Defendants' Attachment D hereto.

### III. Argument

**A.   MOTION TO DISMISS STANDARD.**

Under Fed.R.Civ.P. 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief may be granted against Defendants. A Rule 12(b)(6) motion to dismiss is the usual and proper method of testing the legal sufficiency of a complaint. Moore's Federal Practice, Vol.2A, §12.08, p.2266 (2nd ed. 1984). In reviewing a motion to dismiss, the court construes all well-pleaded material allegations of the complaint as admitted (Walker Process Equip. v. Food Mach. & Chem. Corp., 382 U.S. 172 (1965)) and all reasonable inferences are drawn in the plaintiff's favor. Wagner v. Devine, 122 F.3d 53, 58 n.2 (1st Cir. 1997) cert. denied, 522 U.S. 1090 (1998). The court is not bound, however, to accept as true conclusions of law or unwarranted deductions of fact. See Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993). A plaintiff must set forth "'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Roth v. United States, 952 F.2d 611, 613 (1st Cir. 1991) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)). The plaintiff cannot rely upon "subjective characterizations or unsubstantiated conclusions." Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir.1990). Where it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of his claims, dismissal is proper. See Ballou v. General Electric Co., 393 F.2d 398 (1st Cir. 1968).

B.  **PLAINTIFF'S CLAIMS AGAINST DEFENDANTS ARE TIME BARRED TO THE EXTENT THEY RELY ON EVENTS THAT OCCURRED PRIOR TO DECEMBER 1, 2000.**

Section 1983 does not in and of itself contain a time limitation for the filing of claims thereunder. See Street v. Vose, 936 F.2d 38, 39 (1st Cir. 1991) cert. denied, 502 U.S. 1063 (1992). In assessing the timeliness of such claims, the United States Supreme Court has directed the federal courts to borrow the statute of limitations applicable to personal injury actions under the law of the forum state. See id. citing Wilson v. Garcia, 471 U.S. 261, 276-280 (1985). In Massachusetts, the relevant statute is M.G.L. c. 260, §2A which states that such actions "shall be commenced only within three years next after the cause of action accrues." Id.

Similarly, claims sounding in tort for defamation and interference with contractual and/or advantageous business relationship, as well as claims under the Massachusetts Civil Rights Act are also governed by a three (3) year statute of limitations period. M.G.L. c. 260, §§2A and 5B; see Pagliuca v. City of Boston, 35 Mass.App.Ct. 820, 822-23 (1994). Claims under M.G.L. c. 149, §185 are subject to a two (2) year period for filing. M.G.L. c. 149, §185(d).

The initial complaint in this matter was filed with the Court on December 1, 2003. Virtually all of the acts of retaliation and interference identified in the Complaint are alleged to have occurred prior to December 1, 2000[3], i.e. the outer date that Plaintiff's December 1, 2003 Complaint can reach back to. In particular, Plaintiff has alleged that the "open and continuous pattern and practice of retaliation" against him began "shortly after" the conversations he alleges he had with Ashley on or about July 17, 1998 and on September 29, 1998. Complaint at ¶¶11-13. Even under the most liberal reading of the word "shortly," the deadline for Plaintiff to file a claim based on this alleged pattern and practice of retaliation would have long since passed as of

---

[3] With respect to Plaintiff's §185 claim, the outer date is even less forgiving, i.e. December 1, 2001.

7

December 1, 2003. The same can also be said with respect to the May 5, 1999 promotion of Steven Abbott. Complaint at ¶18. Thus, to the extent that Plaintiff is relying on any of these alleged events to support his claims, such reliance is barred by the statute of limitations. See Street, 936 F.2d at 39.

### C. PLAINTIFF'S STATE CIVIL RIGHTS CLAIM AGAINST THE TOWN HAS BEEN WAIVED.

Under the waiver provision of the Massachusetts Whistleblower Act, "the institution of a private action in accordance with subsection (d) shall be deemed a waiver by the plaintiff of the rights and remedies available to him, for the actions of the employer, under any other contract, collective bargaining agreement, state law, rule or regulation, or under the common law." M.G.L. c. 149, §185(f). It has been held that the waiver provision applies, at the least, to related claims which seek damages for essentially the same conduct. See Bennett v. City of Holyoke, 230 F.Supp.2d 207, 220 (D.Mass. 2002) aff'd, 362 F.2d. 1 (1st Cir. 2004). In the instant matter, there is little to no substantive difference between Plaintiff's Massachusetts Civil Rights Act claim and his claim under §185. As a result, Plaintiff's MCRA claim as to the Town should be deemed waived pursuant to the provisions of §185(f). See id., 230 F.Supp.2d at 220-21.

### D. PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF UNDER §1983.

In Count I of his Complaint, Plaintiff asserts that he is entitled to relief under 42 U.S.C. §1983 as a result of Defendants' joint and several interference with, attempted interference with and deprivation of Plaintiff's right to free speech, as guaranteed to him by the First Amendment to the United States Constitution and Article 16 of the Massachusetts Constitution.[4] Complaint

---

[4] Plaintiff also asserts that Defendants interfered with or attempted to interfere with his "protected conduct pursuant to M.G.L. c. 149, §185." Complaint at ¶31. However, § 1983 is available to remedy deprivations of rights, privileges or immunities created by federal law, but not state law. See Playboy Enterprises, Inc. v. Public Service Commission of Puerto Rico, 906 F.2d 25, 31-32 (1st Cir. 1983) cert. denied, 498 U.S. 959 (1990). Thus, the portion of his §1983 claim that is dependent upon his "rights" under M.G.L. c.149, §185 must be dismissed. See id.

8

at ¶¶31-33. A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law and second, the conduct must have worked a denial of rights secured by the Constitution or by federal law. Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997) cert. denied, 522 U.S. 819 (1997) citing Martinez v. Colon, 54 F.3d 980, 984 (1st Cir.) cert. denied, 516 U.S. 987 (1995). Under the second element, a plaintiff is required to prove not only a deprivation of a right, but also that the defendant's conduct was a cause in fact of the alleged deprivation. Id. at 1062 citing Maldonado Santiago v. Velazquez Garcia, 821 F.2d 822, 831 (1st Cir.1987). In an action pursuant to § 1983, there can be no municipal liability under a respondeat superior theory. Fabiano v. Hopkins, 352 F.3d 447, 452 (1st Cir. 2003) citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-95 (1978). Rather, to establish liability against a municipality, a plaintiff must prove de privation of a constitutional right by means of "the execution of the government's policy or custom." Id. citing City of Canton v. Harris, 489 U.S. 378, 385 (1989). It is well-established that a suit brought against municipal officials in their official capacities is tantamount to a claim against the municipality. Canney v. City of Chelsea, 925 F.Supp. 58, 69 (D. Mass. 1996) citing Kentucky v. Graham, 473 U.S. 159, 166 (1985).

1. **Plaintiff cannot recover for an "attempted" interference.**

To the extent that Plaintiff has asserted a §1983 claim against Defendants for having "attempted to interfere with," his right to free speech (Complaint at ¶31), such claim must fail as §1983 requires that the conduct in question to have worked a denial of his rights. See Soto, 103 F.3d at 1061. Plaintiff simply cannot recover for an "attempted" interference under §1983. See id.

9

### 2. Plaintiff has failed to identify any right depriving policy or custom of the Town.

As for Plaintiff's §1983 claims against the Town and the individual defendants in their official capacities, those claims also must fail as Plaintiff has not identified any policy or custom of the Town which resulted in the purported deprivation of his rights. See Fabiano, 352 F.3d at 452. The only allegation in his Complaint that addresses the policy or custom issue vaguely states in conclusory fashion that the Town "has a custom and/or policy of violating the rights of its citizens, deliberate and/or reckless indifference to adequate training, to adequate hiring and supervision of police officers..." Complaint at ¶28. Although the legal standard for reviewing a motion under Rule 12(b)(6) remains constant, the First Circuit has previously required a heightened degree of specificity to withstand a motion to dismiss in certain classes of cases, including civil rights cases. See United States v. AVX Corporation, 962 F.2d 108, 115 (1st Cir. 1992) citing Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982) cert. denied, 461 U.S. 944 (1983). Specifically, the court stated that "[i]t is not enough to allege a general scenario which could be dominated by unpleaded facts nor merely to allege without specification that defendants used their powers generally with respect to various governmental bodies to plaintiff's prejudice..." Dewey, 694 F.2d at 3 (citations omitted). Since in the instant matter Plaintiff has failed to identify the policy or custom that was maintained by the Town that supposedly resulted in the alleged deprivation of his right to free speech, his §1983 claim against the Town and the individual defendants in their official capacities must be dismissed. See Fabiano, 352 F.3d at 452.

### 3. Plaintiff has failed to make out a First Amendment Claim against Abbott and Sawicki in their individual capacities.

In order to make out a claim against Abbott and Sawicki individually for deprivation of his right to free speech, Plaintiff must demonstrate that the speech at issue involved "matters of public concern." Mullin v. Town of Fairhaven, 284 F.3d 31, 37-38 (1st Cir. 2002) quoting Connick v. Myers, 461 U.S. 138, 147-48 (1983). The inquiry into the protected status of speech is one of law, not fact. Connick, 461 U.S. at 148 n.7. As the United States Supreme Court has aptly stated, "[w]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Id. at 147. If Plaintiff meets this initial burden, the Court must then balance the strength of Plaintiff's and the public's First Amendment interests against the strength of the governmental interest in promoting efficient performance of the government agency involved. Mullin, 284 F.3d at 37-38. Assuming Plaintiff is able to meet that requirement, he must then demonstrate that his speech was a substantial or motivating factor for the alleged retaliation against him. See id.

In reviewing Plaintiff's Complaint, it is clear that his conversations with Ashley in July and September 1998, even if not barred by the statute of limitations, did not rise to the level of speech by a citizen upon matters of public concern. Instead, those conversations involved nothing more than Plaintiff responding to Ashley's inquiry about Plaintiff's position regarding internal police department politics and Plaintiff's personal willingness to protect Ashley and other officers from discipline by forging paperwork. It is undisputed that these conversations only came about after Ashley *approached* Plaintiff and *solicited* his views on those subjects. It

11

would be disingenuous in the extreme for Plaintiff to contend that his conversations with Ashley were efforts on Plaintiff's part to bring attention to matters of public concern.

As for the October 26, 2000 and November 22, 2000 letters that Plaintiff sent to the Board, again assuming claims based thereupon are not time barred, there is no allegation in the Complaint that Sawicki was even aware of their existence to enable an inference to be drawn that Sawicki retaliated against such speech. Moreover, Plaintiff makes it clear in both letters that his intent was not to cast light on any matter of public concern, but instead, was to remedy his own personal issue, to wit, the purportedly false allegations made against him by Abbott. See Complaint Exhibits A and B.

Similarly, Plaintiff's July 15, 2002 letter was, by Plaintiff's own admission, a grievance filed pursuant to the terms of a collective bargaining agreement involving the manner in which Abbott was assigning officers overtime. Complaint Exhibit C; Complaint at ¶20. The resolution of this personnel issue between Plaintiff and his supervisor is not a matter of public concern and therefore, cannot form the basis of a First Amendment claim.[5] See Alinovi v. Worcester School Committee, 777 F.2d 776, 787 (1st Cir. 1985) cert. denied, 479 U.S. 816 (1986).

Notwithstanding all of this, even if one or more of the letters referenced in the Complaint could be said to have involved protected speech, Plaintiff can prove no set of facts to demonstrate that his speech was a substantial or motivating factor for the alleged retaliation against him. See Mullin, 284 F.3d at 37-38. To begin with, Plaintiff has alleged that the supposed open and continuous pattern and practice of retaliation against Plaintiff began "shortly after" his conversation with Ashley on September 29, 1998, more than two (2) years *before* he

---

[5] Plaintiff has not alleged that Sawicki was even aware of the existence of the grievance and thus, has alleged insufficient facts to establish that the grievance was a substantial and motivating factor for any actions on the part of Sawicki.

12

wrote his letters to the Board and Abbott. Similarly, the May 5, 1999 promotion of Steven Abbott also predated the date of issuance of Plaintiff's letters.

Additionally, while Plaintiff appears to be asserting that his being bypassed for the May 5, 1999 and January 2003 promotions was in retaliation for his protected speech, he concedes in his Complaint that the promotions were made by the Board and not Abbott or Sawicki. Complaint at ¶¶18 and 19. As such, the promotional bypasses cannot form the basis for an allegation of retaliation against Abbott or Sawicki.[6]

Finally, the actions attributed to Abbott that followed Plaintiff's June 27, 2003 letter to the Board amounted to nothing more than letter writing.[7] No adverse employment action was actually taken against Plaintiff that could have arguably served to deprive him of his First Amendment right to free speech. See Defendants' Attachments A, C and D hereto. Abbott simply directed him to review Department policies that he was already responsible for.

E.  **PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF UNDER THE MASSACHUSETTS CIVIL RIGHTS ACT.**

In Count II of his Complaint, Plaintiff alleges a claim that is essentially identical to his §1983 claim except that the claim is being brought pursuant to M.G.L. c. 12, §§11H and I. See Complaint at ¶35-38. However, unlike § 1983 claims, a municipality is not a "person" within the meaning of §§11H and I and thus, is not subject to suit under same. See Howcroft v. City of Peabody, 51 Mass.App.Ct. 573, 593 (2001). This is also true for individual defendants sued in their official capacities. See id. Thus, only Abbott and Sawicki in their individual capacities are

---

[6] Also, the fact that Plaintiff alleges that he was not the only qualified officer who was bypassed for these promotions significantly weakens his contention that his speech was a substantial or motivating factor for his being bypassed.

[7] Plaintiff has not alleged that Sawicki was aware of the existence of Plaintiff's June 27, 2003 letter to the Board and thus, has alleged insufficient facts to support the view that that letter was a substantial and motivating factor for any alleged retaliatory actions on Sawicki's part.

subject to liability under Count II.

To make out a claim under the Massachusetts Civil Rights Act (hereinafter, "MCRA"), Plaintiff must show an interference or attempted interference with the exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of Massachusetts, by means of "threats, intimidation, or coercion." Id. quoting Swanset Dev. Corp. v. Taunton, 423 Mass. 390, 395 (1996). Plaintiff asserts that the rights in question were his right to free speech and his protected conduct under M.G.L. c. 149, §185. Complaint at ¶35.

With respect to the former of these, the court has stated that in order to seek redress through M.G.L. c. 12, §11I, a plaintiff must assert the violation of a State right, not merely a violation of State law. Perkins v. Commonwealth, 52 Mass.App.Ct. 175, 181 (2001). In assessing whether a law gives rise to a right that is enforceable under §1983, the federal courts have considered the following three factors: (1) Congress must have intended that the provision in question benefit the plaintiff; (2) the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence; and (3) the statute must unambiguously impose a binding obligation on the States, i.e. it must be couched in mandatory, rather than precatory, terms. See Blessing v. Freestone, 520 U.S. 329, 340-41 (1997). Even if a plaintiff can make this showing, a dismissal of the claim is nonetheless proper if Congress specifically foreclosed a remedy under §1983 either expressly, by forbidding recourse to §1983 in the statute itself, or impliedly, by creating a comprehensive alternative enforcement scheme. See id. Since the Massachusetts legislature intended M.G.L. c. 12, §11I to be coextensive with §1983, with the exception that the §11I does not have a State action requirement, the foregoing considerations are instructive in assessing whether a violation

14

of M.G.L. c. 149, §185 may form the basis for Plaintiff's claim under M.G.L. c. 12, §11I. See Batchelder v. Allied Stores Corp., 393 Mass. 819, 822-23 (1985).

First, M.G.L. c. 149, §185 does not affirmatively grant public employees the *right* to engage in certain conduct, but instead, prohibits employers from retaliating against them when they engage in certain specified conduct. M.G.L. c. 149, §§185(b)(1), (2) and (3). In addition, it is apparent from the plain terms of the statute that the Legislature has already provided individuals with a comprehensive, alternative enforcement scheme thereby indicating that it did not intend for violations of §185 to be simultaneously enforceable under M.G.L. c. 12, §11I. See M.G.L. c. 149, §185(c) – (f). For these reasons, an alleged violation of §185 cannot form the basis for a claim under the MCRA. See Blessing, 520 U.S. at 340-41.

As for the free speech portion of Plaintiff's MCRA claim, dismissal of it is warranted for the same reasons detailed in Section D above, to wit, Plaintiff has not demonstrated that the speech in question involved matters of public concern, he can prove no set of facts to demonstrate that his speech was a substantial or motivating factor for the alleged retaliation against him and any speech that was arguably protected was never actually interfered with or attempted to be interfered with by Abbott or Sawicki.

### F. PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF UNDER M.G.L. C. 149, SECTION 185.

Under the relevant portion of M.G.L. c.149, §185(b)(1), an employer is prohibited from taking retaliatory action against an employee because the employee:

> (1) Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer…that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, or which the employee reasonably believes poses a risk to public health, safety or the environment…

M.G.L. c. 149, §185(b)(1).

15

Section 185 defines "retaliatory action" as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." M.G.L. c. 149, §185(a)(5).

The only communications Plaintiff alleges he had with any of the Defendants during the period encompassed within the two (2) year statutory timeframe consist of his July 15, 2002 grievance letter to Abbott and his June 27, 2003 letter to the Board. With regard to the former, the activity referenced in that grievance, by its own terms, went solely to alleged violations of a collective bargaining agreement. See Complaint Exhibit C. It would not have been reasonable for Plaintiff to believe that Abbott's overtime assignment practices were in violation of any law, rule or regulation or that they posed a risk to public health, safety or the environment.

Also, Plaintiff has not demonstrated that any retaliatory action was even taken against him subsequent to his submission of his grievance or of his June 27th letter to the Board. The absence of such allegation is fatal to Plaintiff's claim as to either document.

G.  **PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF FOR INTERFERENCE WITH A CONTRACTUAL AND/OR ADVANTAGEOUS BUSINESS RELATIONSHIP.**

In Count IV, Plaintiff alleges that Abbott and Sawicki, presumably in their individual capacities[8], tortiously interfered with his contractual and/or advantageous business relationship with the Town.[9] To succeed on either claim, Plaintiff must establish (1) the existence of a contract or business relationship which contemplated an economic benefit; (2) Defendants'

---

[8] A claim against Abbott or Sawicki in their official capacities is the equivalent of a claim against the Town which is immune from liability for intentional torts committed by its employees, agents or representatives. M.G.L. c. 258, §10(c); see Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 284-85 (1985).
[9] Plaintiff has also alleged a claim for negligent interference with a contractual or business relationship, but Defendants are unaware of the existence of any such cause of action under Massachusetts law. To the extent that one may exist, Abbott and Sawicki, as public employees, are personally immune from such claim pursuant to M.G.L. c. 258, §2. Pruner v. Clerk of the Superior Court, et al., 382 Mass. 309, 313 (1981).

16

knowledge of the contract or business relationship; (3) Defendants' intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages. Bourque v. Cape Southport Associates, LLC, 60 Mass.App.Ct. 271, 277-78 (2004) rev. denied, 441 Mass. 1105 (2004) citing Swanset Dev. Corp., 423 Mass. at 397.

A review of Plaintiff's Complaint reveals that it is devoid of any *facts* to establish the following: (1) that he had a contract with the Town, (2) that if one did exist Abbott and/or Sawicki had knowledge of it, (3) that either Abbott and/or Sawicki intentionally interfered with that contract and/or any advantageous business relationship Plaintiff may have had or (4) that he suffered damage due to a breach of the contract or discontinuation of the business relationship, as he must. See Buster v. George W. Moore, Inc., 438 Mass. 635, 652 (2003); Bourque, 60 Mass.App.Ct. at 277-78. Without any allegations to such effect, Plaintiff's claim on this count must be dismissed. See id.

**H.   PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF FOR DEFAMATION.**

As a threshold matter, Plaintiff's defamation claim against the Town must fail as the tort of defamation is an intentional one (see Howard v. Town of Burlington, 399 Mass. 585, 586 n.5 (1987)) and a municipality is immune from liability for intentional torts committed by its employees, agents or representatives. M.G.L. c. 258, §10(c); see Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 284-85 (1985).

Turning to Plaintiff's defamation claim against Abbott and/or Sawicki personally, to succeed, Plaintiff must prove that they published a false and defamatory communication of and concerning him without any privilege to do so. McAvoy v. Shufrin, 401 Mass. 593, 597 (1988). It is not Abbott or Sawicki's burden to prove the truth of the statements at issue, but rather it is Plaintiff's burden to demonstrate the falsity of the statement(s) under review. Id. "Defamation is