FILED
UNITED STATES DISTRICT COURT CLERKS OFFICE
FOR THE
DISTRICT OF MASSACHUSETTS 2004 JUN 14  P 12: 39

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | | |
|---|---|---|
| JON M. TAYLOR, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF FREETOWN, | ) | |
| | ) | |
| CARLTON E. ABBOTT, Jr., ESQ., | ) | C.A. 03-12417-PBS |
| Individually and as Chief of the Freetown | ) | |
| Police Department, and | ) | |
| | ) | |
| WALTER J. SAWICKI, | ) | |
| Individually and as Lieutenant of the | ) | |
| Freetown Police Department | ) | |
| Defendants | ) | |
| | ) | |

## PLAINTIFF'S MOTION AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES now Jon M. Taylor, plaintiff in the above-captioned matter ("Plaintiff"), and,

pursuant to LR. 7.1(B)(2), submits the herein opposition memorandum in response to

Defendants' Memorandum In Support Of Their Motion To Dismiss Plaintiff's First Amended

Complaint ("Defendants' Memorandum").[1]

### I.    INTRODUCTION

On December 1, 2003, Plaintiff filed a civil complaint (the "Complaint") in the United

States District Court for the District of Massachusetts against his current employer, the Town of

Freetown ("Freetown"), and his supervisors, Carlton E. Abbott, Jr., Esq. ("Abbott") and Walter J.

---

[1] In accordance with orders issued by the Honorable Patti B. Saris, Plaintiff's assented-to motions to extend the filing deadline for his opposition to Defendants' motion to dismiss were granted to allow Plaintiff to file his opposition memorandum on June 11, 2004. Due to the unanticipated closing of the federal court on that date in national observance of former President Reagan's recent death, the filing deadline was further extended to June 14, 2004.

Sawicki ("Sawicki"). On March 23, 2004, Plaintiff amended the Complaint before serving it on the above parties (collectively referred to as "Defendants"). Plaintiff avers that Defendants, individually and/or collectively, violated his federal and state constitutional, statutory, and common law rights as a result of his raising repeatedly to Abbott and the Freetown Board of Selectmen (the "Board") serious matters of public concern regarding unlawful and/or improper conduct within Freetown's police department. Complaint at ¶1 and Exhibits A to E, which are appended thereto. In Counts I and II, Plaintiff contends that Defendants violated his federal and state civil rights under 42 U.S.C. § 1983 and M.G.L. c. 12, §§11H and 11I ("MCRA"), respectively. In Count III, he avers that, under M.G.L. c. 149, §185 (the state's so-called "whistleblower law"), Freetown retaliated against him for exposing *inter alia* corruption in his department. Lastly, Plaintiff, in Counts IV and V, pleads common law claims of defamation and tortuous interference with advantageous business relationship against Abbott and Sawicki.[2]

For reasons stated below, Plaintiff respectfully submits that, contrary to Defendants' assertion otherwise, he has satisfied his legal burden of sufficiently pleading claims against Defendants, except as where otherwise noted, to withstand the latter's motion to dismiss under Fed.R.Civ.P. 12(b)(6).[3] Accordingly, Defendants' motion that the entire complaint should be dismissed must be denied.

---

[2] See n.15 infra.

[3] Defendants' Memorandum incorporates four exhibits. In so doing, Defendants seek to have the court consider these documents in connection with its motion to dismiss but without converting the motion "to one for summary judgment." Id. Plaintiff does not contest the authenticity of these documents or object to the court considering them in deciding Defendants' motion. See Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015, n.1 (1st Cir. 1988) cert. denied 488 U.S. 821(1988) (the first circuit, in ruling on a motion to dismiss, held that the district court did not err in considering an article attached to a defendant's Fed.R.Civ.P. 12(b)(6) motion; although the article was referred to but not incorporated by reference in plaintiff's complaint, the first circuit held *inter alia* that the district court "properly considered the article as **part of plaintiff's complaint**) (emphasis added).

## II.    LEGAL ARGUMENT

### A.  MOTION TO DISMISS STANDARD

The defense of a motion to dismiss based on a failure to state a claim may be made at the option of the pleader, pursuant to Fed.R.Civ.P. 12(b)(6).

The purpose of such a motion, as explained in Federal Practice and Procedure, is to:

> [T]est the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. Thus, the provision must be read in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim in federal court and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief. Only when the pleading fails to meet this liberal standard is it subject to dismissal under Rule 12(b)(6) . . .

Vol. 5A, Charles Alan Wright & Arthur R. Miller, §1356 (2nd ed. 1990).

The legal principles underlying a plaintiff's successful challenge to this motion is summarized in Roth v. U.S., 952 F.2d 611, 613 (1st Cir. 1991). First, a civil complaint seeking money damages "should not be jettisoned for failure to state a claim unless it plainly appears that the plaintiff can prove no facts thereunder which would entitle (plaintiff) to recover." Id. citing Conley v. Gibson, 355 U.S. 41, 45, 46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957); see also Baxter v. Conte, 190 F.Supp.2d 123, 126 (D.Mass. 2001) quoting Conley v. Gibson supra at 355 U.S. 41, 45, 46 (a motion to dismiss should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). Second, in determining the legal sufficiency of a complaint, for purposes of withstanding a Fed.R.Civ.P. 12(b)(6) motion, the court "must accept as true the complaint's well-pled factual averments, excluding, however, 'bald assertions, periphrastic conclusions, or outright vituperation.'" Supra quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990). Third, "the court must draw all inferences reasonably extractable from the pleaded facts

3

in the manner most congenial to the plaintiff's theory." Supra quoting Miranda v. Pounce

Federal Bank, 948 F.2d 41, 43 (1st Cir. 1991); Dartmouth Review v. Dartmouth College, 889

F.2d 13, 16 (1st Cir. 1989). Fourth, a complaint should not be dismissed for claims based on

inartful or indefinite pleadings. Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15,

17-18 (1st Cir. 1992) (notwithstanding an "inartfully drawn" complaint, sufficient facts were

alleged to assert a claim against the defendant). Lastly, a "plaintiff is obliged to set forth in [his]

complaint 'factual allegations, either direct or inferential, respecting each material element

necessary to sustain recovery under some actionable legal theory.'" Supra quoting Gooley v.

Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). According to Roth, if a plaintiff has

succeeded in this task, dismissal under Rule 12(b)(6) will not lie. Id.

### B. PLAINTIFF'S CLAIMS AGAINST DEFENDANTS ARE TIMELY UNDER APPLICABLE FEDERAL AND STATE LAW.

1. Plaintiff's §1983 Claim (Count I).

Defendants assert that Plaintiff is time-barred from bringing a § 1983 claim based on acts

which allegedly occurred prior to December 1, 2000 – that is, three years prior to the

commencement of his Complaint.[4]

Defendants rely on Street v. Vose for the proposition that since § 1983 does not specify a

limitations period, federal courts are directed in civil rights cases to "borrow the statute of

limitations applicable to personal injury actions under the law of the forum state. 936 F.2d 38,

39 (1st Cir. 1991) cert. denied 502 U.S. 1063 (1992) citing Wilson v. Garcia, 471 U.S. 261, 276-

280, 105 S.Ct. 1938, 1947-1949, 85 L.Ed.2d 254 (1985).

---

[4] See Defendants' Memorandum at 7.

Plaintiff does not dispute Defendants' contention that M.G.L. c. 260, §2A is the applicable statute in this regard. Street v. Vose supra. Section 2A states: "[e]xcept as otherwise provided, actions of tort . . . shall be commenced only within three years after the cause of action accrues."

"Under federal law, the date of accrual starts when the plaintiff 'knows or has reason to know of the injury on which the action is based.'" McIntosh v. Antonino, 71 F.3rd 29, 34 (1st Cir. 1995) (citation omitted). The limitation period for § 1983 claims, however, is further governed by the forum state's jurisprudence. See e.g. Armstrong v. Lamy, 938 F.Supp. 1018, 1032 (D.Mass. 1996) citing Board of Regents of University of State of New York v. Tomanio, 466 U.S. 478, 483-486, 100 S.Ct. 1790, 1794-1796, 64 L.Ed.2d 440 (1980) ("[f]ederal law borrows from state law the state's principles for tolling the limitations period"). In civil rights cases, the tolling of a Massachusetts statute may be subject to the continuing violation doctrine. See e.g. Davis v. Lucent Technologies, Inc., 251 F.3d 227, 234-236 (1st Cir. 2001) (continuing violation doctrine recognized as an equitable exception to untimely claims of discrimination, if the acts complained of are deemed part of an ongoing series of related events which are properly anchored by some violation within the limitation period) (citations omitted); Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 750 N.E.2d 928, 941, 942 (Mass. 2001) (in a seminal case on the continuing violation doctrine, the Massachusetts Supreme Judicial Court held that an employee, with a properly anchored claim, averring a hostile work environment,[5] may be entitled to the benefit of a continuing violation analysis and seek damages outside the limitations period, unless the employee's delay in litigation was, under an objective standard, unreasonable); compare Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001) citing Hernanadez Jimenez v. Calero Toledo, 576 F.2d 202, 204 (1st Cir. 1978) (although the first circuit rejected plaintiffs'

---

[5] See Exhibit B and, in particular, Plaintiff's allegation that he was "subjected to a hostile work environment."

argument of a continuing conspiracy for purposes of tolling their § 1983 claim's accrual date

based on a claim of prosecutorial misconduct, it did not explicitly exclude the possibility that

such a theory may be still viable in situations involving fraudulent concealment of a conspiracy

or instances where a plaintiff is unaware, for example, of the injury).[6]  While a review of the case

law did not uncover any first circuit decisions based on facts similar to the ones alleged in the

case at bar, a New York district court case provides relevant authority.  Wise v. New York City

Police Dept. 928 F.Supp. 355, 366-368 (S.D.N.Y. 1996).  In Wise, a female police officer,

claiming that she was subjected to a sexually hostile and harassing work environment, brought a

§ 1983 claim based on allegations of a equal protection violation under the Fourteenth

Amendment.  In denying the defendants' motion for summary judgment, the Southern District of

the United States District Court rejected the statute of limitations defense and instead allowed a

female police officer to litigate five year old claims under the exception of the continuing

violation doctrine.  Whether this doctrine, as in Wise, has the same applicability to the instant

matter is undetermined, since no clear authority exists on this point in the first circuit.  Thus, the

court should reject Defendants' argument that Plaintiff's § 1983 claims based on events outside

the limitation period are, as a matter of law, automatically time-barred.

2.  Plaintiff's State Whistleblower Claim (Count and III).

With respect to Plaintiff's claim under M.G.L. c. 149, §185, although the statute of limitation

is two years, Plaintiff argues, once again, that, under the continuing violation doctrine supra, he

should be allowed to seek relief based on events which predate December 1, 2001.  A review of

the relevant case law reveals that neither the first circuit nor the Massachusetts appellate court

has yet to clarify whether a plaintiff, under this doctrine, may recover damages based on claims

---

[6]  In the instant matter, discovery may uncover that the Board, despite its knowledge to the contrary, fraudulently concealed its awareness that some officers, such as Ashley, were not only engaged in unlawful misconduct, but were allowed to do so without consequence.  See e.g. Plaintiff's Exhibits A, D, and E.

which pre-date the limitations period. Compare Bennett v. City of Holyoke, 230 F.Supp.2d 207, 220 (D.Mass. 2002 affirmed 362 F.3d 1 (1st Cir. 2004) (the district court never reached the issue of whether plaintiff's state whistleblower claim was subject to a continuing violation since plaintiff's earlier incidents of alleged retaliation were dismissed on other grounds). In addition, where the statute provides for tort damages under common law, Plaintiff, under the "discovery rule," should not be estopped from asserting otherwise time-barred claims based on facts which Defendants concealed, such as Abbott's recent admission of to Ashley's criminal conduct. Complaint at ¶15; see also M.G.L. c. 149, §185(d); see also Flynn v. Associated Press, 401 Mass. 776, 519 N.E.2d 1304, 1307 (under the "discovery rule," an action based on "inherently unknowable wrongs do[es] not accrue until the plaintiff learns, or reasonably should have learned, that he has been harmed by defendant's conduct"). Where questions of fact remain as to when Plaintiff discovered, for example, that his personnel file had been tampered with, a Rule 12(b)(6) motion, as argued by Defendants, is unwarranted.

### 3. Defendants Are Equitably Estopped From Asserting Any Statute Of Limitations Or Repose On All Claims.

Lastly, Plaintiff argues that Defendants should be estopped from asserting the statute of limitations as an affirmative defense to Counts I to V because of the latter's concealment of corruption in the Freetown Police Department, their retaliation against Plaintiff for complaining about such unlawful activity and/or misconduct, and Freetown's and Abbott's abject failure, refusal, or neglect to reasonably investigate Plaintiff's complaints and timely remedy the situation. Complaint at ¶¶ 12-14, 16-22, 24, 27-29. Such conduct on the part of Defendants, either jointly or severally, not only prevented a speedy and just resolution to the issues Plaintiff raised, but caused significant damage to Plaintiff, professionally and otherwise.

The doctrine of equitable estoppel is utilized "to accomplish the prevention of results contrary to good conscience and fair dealing . . . " McLearn v. Hill, 276 Mass. 519, 524 (1931), and "is not applied except when to refuse it would be inequitable". Saugus v. Refuse Energy Systems Co., 388 Mass. 822, 830 (1983). The doctrine may be relied upon to prevent a defendant from prevailing on a statute of limitations defense in a case where the limitations period has in fact run. Baglio v. New York Central RR Co., 344 Mass. 14, 19 (1962). There are no rigid criteria to apply in determining whether a defendant's conduct was such as to give rise to an estoppel. New England Power Co. v. Riley Stoker Co., 20 Mass. App. Ct. 25, 32 (1985).

The question in this matter is whether equitable estoppel should apply when Abbott, Freetown and its upper command (that is, Abbott and Sawicki) were involved in concealing criminal activity, as well as Freetown's failure to investigate thoroughly Plaintiff's charges – notwithstanding the Board's representation to the contrary.[7]

Defendants should, in these circumstances, be estopped from capitalizing upon their own misconduct under an equitable rule, akin to the rule of fraudulent concealment, which would toll the statute until the Plaintiff discovered that Abbott – and presumably the Board – were not only aware of this criminal activity, but condoned it. Complaint at ¶22. Stated another way, Defendants should not be immune from a civil damage action due to their concealment of police corruption to the detriment of Plaintiff.

As far back as the year 1807, Massachusetts courts have justly stated that the statute of limitations ought not itself to be converted into an engine of fraud. First Massachusetts Turnpike Corp. v. Field, 3 Mass. 201, 204 (1807). The equitable principle that applied in that case applies just as strongly today. Massachusetts jurisprudence recognizes that the primary interest served by statutes of limitations is that of repose. See e.g. Franklin v. Albert, 381 Mass. 611 (1980).

---

[7] See Plaintiff's Exhibit E.

"The primary purpose of the first statute of limitations, 21 Jac. 1, c. 16 (1623) (the 1623 Limitation Act), was to keep out inconsequential claims." Id. at 618. The United States Supreme Court has long recognized the importance of statutes of limitations, deeming them "vital to the welfare of society .... They promote repose by giving security and stability to human affairs." Wood v. Carpenter, 101 U.S. 135, 139 (1879). By the same token, where the bar becomes a sword rather than a shield, wielded by a party that has intentionally cloaked its identity, factors of fairness and unjust enrichment come into play, which courts are bound to consider in equity and good conscience. Bernson v. Browning-Ferris Industries of California, Inc., 30 Cal.Rptr.2d 440,445 (1994).

Unjust enrichment to Defendants would result were the court to limit Plaintiff's claims in this instance. To his detriment, Plaintiff acted in good faith in his repeated attempts to shed light on criminal activity in his department, hoping that Freetown, ultimately, would recognize and address the problem. Because of Defendants' concealment of such crimes and their retaliation against Plaintiff for his opposition thereto, it would be fair and just to deem their defense founded on the statute of limitations as waived. McLearn supra at 524 citing Weber v. Williams College, 23 Pick. 302 ("[i]t was decided in this Commonwealth almost one hundred years ago that the doctrine of waiver when supported by adequate facts was available to meet a defence founded on the statute of limitations"). Hence, Defendants' argument that the applicable statute of limitations should shield them from liability must be rejected.

## C. BY ASSERTING A STATE WHISTLEBLOWER CLAIM, PLAINTIFF HAS NOT WAIVED HIS RIGHT TO BRING A MCRA CLAIM AGAINST FREETOWN.

Plaintiff asserts that it is premature to dispose of his MCRA claim against Freetown under Rule 12(b)(6), based on the waiver provisions of M.G.L. c. 149, §185(f). In a light most favorable to Plaintiff, the court should deny Defendants' motion to dismiss Freetown from the

MCRA claim (Count II) and instead grant Plaintiff the opportunity to conduct discovery to determine if sufficient evidence exists to establish separate claims under both statutes. In citing to Bennett, Defendants misconstrue Judge Ponsor's ruling on summary judgment regarding the waiver provision of the state whistleblower statute. Supra 230 F.Supp.2d at 220-221. Observing that "[v]ery little decisional law has illuminated the meaning and scope of this waiver provision since the statute's passage, Judge Ponsor applied it solely to claims that may be pursued substantively against the municipality. Id. at 221. In Judge Ponsor's view, the statute was designed to "broaden protection of vulnerable workers, not to force them to jettison legitimate independent claims as a condition to invoking the statue." Id. at 220. As a caveat, however, Judge Ponsor ruled that if a claim cannot be pursued against the municipality under the whistleblower law, then the waiver provision would bar the claim when raised in another Count. Id. It is too early in the case to determine whether uncovered facts during discovery will ultimately support Plaintiff's claim that Freetown engaged individually or jointly engaged in acts of threats, intimidation, and coercion or, in the alternative, "retaliated" against Plaintiff, as defined by M.G.L. c. 149, §185(a)(5),[8] for having engaged in protected activity. Where Plaintiff should not be forced into making a "Hobson's choice" at this juncture, Defendants' motion to dismiss must fail.

### D.  PLAINTIFF'S 42 U.S.C. § 1983 CLAIM IS LEGALLY SUFFICIENT TO WITHSTAND DEFENDANTS' MOTION TO DISMISS.

1.  Defendants' Preliminary Grounds For Dismissal Lack Merit.

Defendants elevate form over substance by contending, for example, that the claim is deficient because it 1) avers a deprivation of state rights in addition to a federal constitutional

---

[8]  According to §185(a)(5), retaliatory action is "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment."

violation; and 2) erroneously seeks relief for an "attempted interference" of rights. Defendants'
Memorandum at 8, 9, n.4.

As for their initial argument, while it is black letter law that § 1983 claims are based on a
denial of a citizen's rights secured by the United States Constitution or federal law, Plaintiff's
inclusion of state violations by no means invalidates his underlying First Amendment claim
under the United States Constitution. Id. at ¶ 31.[9]

With respect to their second argument, Plaintiff disagrees that he is barred from pursuing a
§ 1983 claim against Defendants who repeatedly "attempted" to interfere with his freedom of
speech. Like the officer in Bennett, Plaintiff contends that the thrust of his constitutional claim
stems from retaliation which he endured repeatedly after complaining internally and to the Board
about corruption in the Freetown Police Department. Supra at 225, 226; see e.g. Complaint at
¶¶20-22, 24, 29. Put another way, for having spoken out against such nefarious activity,
Defendants "attempted" to stifle Plaintiff's free speech by engaging in retaliatory action.
"Statements uncovering corruption within a police department are precisely the type of
communications that demand strong First Amendment Protection." Bennett supra at 224.
Likewise, the plaintiff in Bennett, in vain, repeatedly attempted to address unlawful practices in
his department, including, but not limited to, alleged departmental abuses of overtime
distribution and theft. Supra at 26. For his efforts, Bennett was subjected to retaliation in the
form of unjust discipline and denial of promotion opportunities, similar to Plaintiff's situation.
See Bennett v. City of Holyoke, 362 F.3d 1, 3 (1st Cir. 2004). See e.g. Complaint at ¶13. To
deny Plaintiff the opportunity to pursue such a claim is directly inapposite to protecting speech
on public issues, which, as noted by The United States Supreme Court , is "the essence of self-

---

[9] As pled, Plaintiff avers that "Defendants, while under color of law, have interfered with, or (emphasis added)
attempted to interfere with . . ." Black's Law Dictionary defines "or", as a "a disjunctive particle used to express an
alternative or to give a choice of one among two or more things." 987 (5th ed. 1979)

government" and "occupies the highest rung of the hierarchy of First Amendment values." Id.
quoting Connick v. Myers, 461 U.S. 138, 145, 75 L.Ed. 2d 708, 103 S.Ct. 1684 (1st Cir. 1993).

    2.   Defendants' Policy Or Custom Of Retaliation Deprived Plaintiff Of His Right Of Free
        Speech.

        a.   Under Fed.R.Civ.P. 8(a), Plaintiff Has Clearly And Plainly Stated A Cause Of
            Action.

Defendants incorrectly argue that Plaintiff failed to identify with clarity the policy or custom

that allegedly deprived him of his right to free speech. Without question, the Complaint plainly

and clearly indicates that Plaintiff's § 1983 claim is based on Defendants' violating his First

Amendment right to free speech by maintaining a policy or custom of retaliating against its

employees who, as citizens, express public concern about unlawful activity in the Freetown

Police Department. Complaint ¶¶20, 28, 31, 32; see also Defendants' Attachment B. Where

Plaintiff has set forth sufficient subsidiary facts to support his § 1983 claim, the Complaint, when

construed in a light most favorable to Plaintiff, provides adequate notice to Defendants of the

cause of action being brought in Count I. On the other hand, were the court to find that Plaintiff

has failed to enumerate such facts, Plaintiff's claim nevertheless must stand since the first circuit

no longer requires a "heightened pleading" requirement in civil rights cases, as argued by

Defendants. See Educadores Puertorriqueños En Acción v. Hernández, 367 F.3d 61, 67 (2004)

(in a decision rendered subsequent to the Defendants' Memorandum, the first circuit rejected the

heightened pleading standard in all civil rights cases, holding instead that such actions are

subject to the general notice pleading requirements of Rule 8(a)). Since the pleadings articulate a

claim to which Plaintiff may be entitled to relief, Defendants' motion must therefore fail.

b. Plaintiff's § 1983 Claim Against Abbott And Sawicki Must Stand.

The elements of a § 1983 claim based on Plaintiff's theory of retaliation are described in Bennett supra 230F.Supp.2d at 224 (citations omitted). First, the court must consider whether the Plaintiff was "speaking out as a citizen on matters of public concern." Id. quoting Connick v. Meyers, 461 U.S. 138, 147, 148, 75 L.Ed.2d 708, 103 S.Ct. 1684 (1983). "Whether an employee's speech addresses matters of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Meyers, supra at 148. Second, if the speech touches upon a matter of public concern, then the court "'must balance the strength of the employee's First Amendment interest, and any public interest in the information . . . against the strength of the Countervailing governmental interest in promoting efficient performance.'" Bennett supra (citation omitted). Third, if the balance tips in favor of the employee, then the employee must show that the protected expression was a "'substantial or motivating factor in the adverse employment decision.'" Id. (citation omitted). Fourth, if a plaintiff meets the third test, then the burden shifts to the defendant employer to prove that it would have reached the same adverse decision regardless of the protected conduct. Id. The first two elements are matters of law whereas the second two are matters for the fact-finder. Id.

In viewing the Complaint as whole, Plaintiff has articulated multiple examples of ongoing retaliation involving Abbott and Sawicki, who, as government officials, serve as Plaintiff's superior officers in command of Freetown's police Department. As examples, Plaintiff has alleged that Abbott, such as through supervisors like Sawicki, unjustly accused him of falsifying departmental records, engaging in conduct unbecoming of an officer, defaming him, and denying him advantageous training and career opportunities.[10] Id. at ¶13. In a light most

---

[10] Defendants' also argue that since Plaintiff avers that Freetown selected other, less qualified candidates for promotion to sergeant in 1993 and 2003, claims against Abbott and Sawicki must dismissed. Defendants'

favorable to Plaintiff, such harassment may be directly attributable to Plaintiff's multiple

complaints of police corruption (White Mountain).

Undoubtedly, exposing matters of police corruption are matters of public concern.

Bennett supra (finding that statements regarding police corruption is a matter of public concern).

That said, by bringing such matters to Abbott and the Board, Plaintiff engaged in protected

conduct, which, on balance, deserves greater protection under the First Amendment than either

Defendants' legitimate interest in their desire to curtail disruption in the Freetown Police

Department.

Defendants' assertion that Plaintiff's complaints were entirely self-serving

mischaracterizes the alleged facts.[11]  Were to the court to conclude that Plaintiff's complaints

were not entirely based on his civil-mindedness, where a government employee also raises

matters of a public concern, it has been held that in that capacity he is acting as a citizen, and, as

such, deserves protection under the First Amendment.  See Fabiano v. Hopkins, 352 F.3d 447,

445 (1st Cir. 2003) (in a summary judgment case involving a First Amendment § 1983 claim, the

first circuit opined that a former city employee's self-interest in the outcome of his lawsuit did

not preclude him from raising issues of public concern); Compare Bennett supra at 225 ("a

---

Memorandum at 13.  Such an assertion is premised on the assumption that neither, while acting under the color of law, had any input in the selection process' design, implementation, or final recommendation to the Board, which Plaintiff refutes.  Defendants' Attachment B, at 3.

[11]  See Exhibit A, in which Plaintiff avers that Abbott "deceived the Board of Selectmen" by recommending for promotion an officer who committed a criminal act with respect to the White Mountain incident; Exhibit B, in which Plaintiff alleges that Abbott used him as "scapegoat" to cover up for criminal conduct of other officers; Exhibit D, in which Plaintiff avers that the Board shirked its legal obligation to conduct a meaningful investigation of unlawful police conduct in reference to the White Mountain incident; and Defendants' Attachment B, in which Plaintiff, in his letter of presentment to the Board, avers inter alia that Abbott and others in the police department engaged, and continue to engage, in unlawful activity.  As for Defendants' contention that Plaintiff's grievance cannot form the basis of a First Amendment claim, it is a question of fact whether Defendants denied Plaintiff special detail work and assignments of overtime and, if so, whether their motivation was the result of Plaintiff having engaged in protected activity.  Defendants' Memorandum at 12.

plaintiff who personally dislikes, or bears a grudge against, a particular individual does not lose his right to make statements of public concern).

Finally, for reasons stated elsewhere, Plaintiff respectfully disagrees with Defendants' dismissal of Plaintiff's June 27, 2003 letter to the Board "as nothing more than letter writing.[12][13] By raising issues of public corruption, and complaining about the retaliation he had experienced as a result of his objection thereto, Plaintiff respectfully disagrees that the "content, form, and context" of his letter did not raise the same matters of public concern as The Supreme Court envisioned in Connick. Supra. As far as their denial that Plaintiff suffered retaliation as a result of that letter, Plaintiff argues that the facts indicate otherwise. Complaint at ¶¶ 21, 26, 27.

### E. PLAINTIFF'S MCRA CLAIM IS LEGALLY SUFFICIENT TO WITHSTAND DEFENDANTS' MOTION TO DISMISS.

Under the current Massachusetts case law cited by Defendants, Freetown is immune from suit under the MCRA, since, for purposes of the statute, a municipality is not deemed to be a "person" under Howcroft v. City of Peabody. 51 Mass.App.Ct. 573, 747 N.E.2d 729 (Mass.App.Ct. 2001). Howcroft, however, is only an appellate decision and there have been no higher court case construing this aspect of the statute. Thus, the issue remains unsettled. Compare e.g. Sarvis v. Boston Safe Deposit and Trust, 47 Mass.App.Ct. 86, 711 N.E.2d 911, 920 (Mass.App.Ct. 1999) (unless contrary Legislative intent is clear, the word "person" shall include incorporations); M.G.L. c. 151B, §1(1) (under Massachusetts' principal anti-discrimination statute, political subdivisions of the Commonwealth are statutorily deemed to be "persons").

---

[12] Defendants' Memorandum at 13.

[13] Sawicki alleges that because Plaintiff did not explicitly aver in the Complaint that Sawicki was aware of the Plaintiff's June 27, 2003 letter, Plaintiff cannot establish any nexus between the letter and any retaliation on Sawicki's part. Defendants' Memorandum at n.7. A liberal reading of the Complaint, however, will demonstrate that Sawicki, by virtue of his acknowledgment of quoted language appearing in Plaintiff's October 2, 2003 letter of presentment to the Board, knew, or should have known about, the June 27, 2003, since that letter was referenced in the presentment letter under n. 3. See also Defendants' Attachments B, C.

Under the statute, a plaintiff is entitled to damages if, for example, he can demonstrate that a person has interfered, or attempted to interfere, with his rights secured by the constitution or laws of the United States or the Commonwealth "or rights secured by the constitution or laws (emphasis added) of the commonwealth . . ." M.G.L. c. 12, §11I, amended by St.1979, c. 801, §1. It has been held that the statute is to be liberally construed. Buster v.George W. Moore, Inc., 438 Mass.635, 783 N.E.2d 399, 409 (Mass. 2003) ("[b]ecause the act, like all other civil rights statutes, is remedial, it is entitled to a liberal construction of its terms").

Pursuant to M.G.L. c. 149, §185(a)(1)(2) and (b)(1), it is unlawful for a town to take any retaliatory action against an employee who discloses or threatens to disclose to a supervisor or public body an activity, policy, or practice that he reasonably believes to be a violation of a law, rule, or regulation promulgated pursuant to law. Assuming that a municipality is considered a "person" under a "liberal" construction of the MCRA, a plaintiff conceivably might have a legal claim against a municipality that engages in such "retaliatory action" by means of threats, intimidation, and/or coercion. Without citing specific authority to the contrary, Defendants fail to provide clear legal precedence to establish, as a matter of law, that the statutory scheme of the MCRA precludes an aggrieved party from claiming that "retaliation" under the state whistle-blower statute can serve as an independent ground for a cause of action under the MCRA. For these reasons, Plaintiff's motion to dismiss on this ground should be denied.

With respect to Plaintiff's right of free speech, Plaintiff, as argued above, has averred sufficient facts to support a claim that his constitutional rights were violated by Abbott and Sawicki. See e.g. Mahoney v. Ragucci, 2001 WL 34059084 at 5 (Mass.Super.) (in a summary judgment decision, the court held that the plaintiff's speech was not protected under the state constitution where it did not concern, for example, allegations of misappropriation of funds or

unauthorized use of departmental accounts for personal use or other matters of public concern).

Whether Plaintiff is ultimately able "to prove" facts in support of his claims that both defendants

interfered with his right of free speech under the federal and state constitutions is a matter for

trial and not one subject to a dispositive motion pursuant to Rule 12(b)(6).

F.  PLAINTIFF IS ENTITLED TO RELIEF UNDER M.G.L. C. 149, §185.

Plaintiff has pled numerous examples of ongoing retaliation which he avers was the result of

bringing to light corruption in his department.

In the event that the court determines that Plaintiff is barred from pursuing claims based on

events which predate December 1, 2001, Plaintiff, nevertheless, has detailed concisely more

recent retaliatory actions showing that he is entitled to relief under the whistleblower law.  For

instance, he specifically avers that he was by-passed for promotion in January 2003; subjected to

baseless discipline, as most recently as December 29, 2003;falsely accused of racial profiling on

July 21, 2003 (for which he was "directed" by Abbott to "familiarize himself" Freetown's

policies on traffic enforcement) among other retaliatory acts within the two year limitation

period.  Complaint at ¶¶13, 19, 20, 21, 26, 27; Defendants' Attachment A.  Given the history of

events, and the multiple, cross-referenced complaints about unlawful activity to the Board,

Defendants are hard-pressed to argue that Plaintiff's claim is deficient for failing to plead

allegations of retaliatory action.[14]

---

[14] Defendants erroneously argue that Plaintiff's July 15, 2002 complaint to Abbott was restricted solely to labor issues under the applicable collective bargaining agreement.  In its proper context, Plaintiff's July 15, 2002 grievance (Exhibit C) was preceded by at least two written complaints of unlawful misconduct to the Board on October 26, 2000 and November 22, 2000, along with repeated albeit unsuccessful efforts by Plaintiff to enlist Freetown's cooperation in addressing the problems noted therein.  Complaint ¶¶20, 41.  Moreover, Plaintiff's July 15, 2002 letter to Abbott provides notice of not only a violation of the collective bargaining agreement, but also notice of unethical and discriminatory practices.  In a light most favorable to Plaintiff, the letter is part and parcel of his ongoing complaint of corruption in the Freetown Police Department.  To construe it narrowly, as Defendants' have done, mischaracterizes the substance of Plaintiff's correspondence and his underlying complaints.

G. PLAINTIFF'S COMMON LAW CLAIMS AGAINST ABBOTT AND SAWICKI MUST STAND. [15]

1. Abbott And Sawicki, In Their Individual Capacities, May Be Liable For Interference With Plaintiff's Advantageous Business Relationship With Freetown.

To pursue a claim for intentional interference with an advantageous business relationship, Plaintiff must demonstrate four elements: 1) that he has a business relationship for economic benefit with a third party; 2) the defendants knew of that relationship; 3) the defendants interfered with that relationship through improper motive or means; and 4) the plaintiff's loss of the advantage resulted directly from the defendants' conduct. See McNamee v. Jenkins, 52 Mass.App.Ct. 503, 754 N.E.2d 740, 745 (Mass.App.Ct. 2001) citing Kurker v. Hill, 44 Mass.App.Ct. 184, 191, 689 N.E.2d 833 (1998). Contrary to Defendants' argument, it is not necessary that a business relationship be one to which a plaintiff is "contractually entitled." McNamee supra 754 N.E.2d at 745. As for Defendants' bald assertion that the Complaint is devoid of sufficient facts to support the above claim, Plaintiff submits that under the general notice pleading requirements of Rule 8(a), a fair and liberal reading of the Complaint provides ample facts to support his claim. Such facts are grounded on Plaintiff's averments that these defendants unlawfully retaliated against him for having engaged in protected activity, which caused him financial, personal, and professional damages. See e.g. Complaint at ¶¶13, 18, 19, 20, 26, 27; see also Exhibits A to D; Defendants' Attachment B. Accordingly, Defendants' motion must be denied.

---

[15] After further consideration of the arguments raised in Defendants' Memorandum, Plaintiff concedes that Massachusetts does not currently recognize a claim based on negligent interference with a contractual or advantageous business claim and stipulates to its withdrawal as an alternate theory of recovery under Count IV. Defendants' n.8. In addition, Plaintiff stipulates to withdrawal of his alternative tort theory, averring interference with contractual relationship. Claims against Abbott and Sawicki in Count IV are in their individual capacity and in Count V in their official capacity. Plaintiff further stipulates to withdrawing its defamation claim against Freetown.

2. Plaintiff's Claims Of Defamation Against Abbott And Sawicki.

For purposes of a defamation suit, Abbott and Sawicki are considered "public officials". See Rotkiewicz v. Sadowsky, 431 Mass. 748, 752, 730 N.E.2d 282 (2000) cited in McNamee supra at 742. As such, plaintiff may not recover damages unless he shows by clear and convincing evidence that these defendants made false statements with malice. McNamee supra citing New York Times Co. v. Sullivan, 376 U.S. 254, 279-280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

"In the context of a defamation, actual malice means that the 'defamatory falsehood was published with knowledge that it was false or reckless disregard of whether it was false.'" Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 867, 330 N.E.2d 161 (1975).

"Traditionally, summary judgment on a defamation claim has been rare . . . whether a publication is defamatory or not, being dependent upon the effect produced upon the public or a considerable part of it, is one particularly fit for trial by jury." Bennett supra at 230 F.2d at 230 citing Ingalls v. Hastings & Sons Pub. Co., 304 Mass. 31, 22 N.E.2d 657, 659 (Mass. 1939). It has been held that statements accusing one of being a "substandard performer who has given the department a black eye," "impugned the integrity of this fine department," "has been a problem for years," "is not worthy of being here" are matters for a jury since they are not just mere opinion but may serve as a basis for civil damages. Bennett supra. Similarly, a police officer accused by a subordinate of filing a false report may also be defamatory. McNamee supra 754 N.E.2d at 744. Certainly, Abbott's and Sawicki's accusations to third parties in Plaintiff's department and community (including a clerk at the Bristol County District Attorney's Office) that Plaintiff *inter alia* has a mental disorder, feigned a serious-work injury, is professionally incompetent, is mentally unstable and is unfit for duty are of the same ilk as those in Bennett and McNamee and worthy of jury consideration. Complaint at ¶13; Defendants' Attachment B.

Many unanswered factual disputes remain concerning the exact extent, nature, and context of the defamatory statements that Abbott and Sawicki made, according to Plaintiff. Whether any of these statements (such as Sawicki's formal complaint to Abbott accusing Plaintiff of insubordination) will ultimately fall under the protection of a conditional privilege under Bratt remains to be seen in this case. Bratt v. Intern.Business Machines. Corp., 392 Mass. 508, 467 N.E.2d 126, 132 (Mass. 1984) (a conditional privilege in a defamation action hinges on whether defendant acted recklessly). For these reasons, Defendants have failed to meet their burden to sustain a motion to dismiss.

### III.    CONCLUSION

As argued above, Defendants' motion under Fed.R.Civ.P. 12(b)(6) must be denied. In the alternative, Plaintiff respectfully requests that in the event the court allows their motion, Plaintiff be granted leave to file an amended complaint to provide him the opportunity to clarify factual allegations and otherwise cure defects in the Complaint. See DiPerri v. FAA, 671 F.2d 54, 59 n.4 (1st Cir. 1992) (first circuit opined that if a plaintiff "fails to initially articulate his claim with specificity. . . district courts should be liberal in granting leave to amend so that he may reformulate his claim acceptably").

### IV.    REQUEST FOR ORAL ARGUMENT

Pursuant to LR. 7.1(D), Plaintiff requests a hearing on the herein motion.

Respectfully submitted by:

Howard Mark Fine, Esquire
86 Sherman Street
Cambridge, Massachusetts  02140-3233
B.B.O. No. 554671
617-868-9200

Dated: June 14, 2004

UNITED STATES DISTRICT COURT    FILED
FOR THE                         IN CLERKS OFFICE
DISTRICT OF MASSACHUSETTS

2004 JUN 14  P 12: 39

| | |
|---|---|
| JON M. TAYLOR,<br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>TOWN OF FREETOWN,<br><br>CARLTON E. ABBOTT, Jr., ESQ.,<br>Individually and as Chief of the Freetown<br>Police Department, and<br><br>WALTER J. SAWICKI,<br>Individually and as Lieutenant of the<br>Freetown Police Department<br>　　　　　　　　　Defendants | C.A. 03-12417-PBS |

U.S. DISTRICT COURT
DISTRICT OF MASS.

### CERTIFICATE OF SERVICE

I, Howard Mark Fine, counsel for plaintiff in the above-captioned matter, hereby swear and affirm that I have served by ordinary first class mail, postage prepaid, "Plaintiff's Motion And Memorandum In Opposition To Defendants' Motion To Dismiss Plaintiff's First Amended Complaint" to the following counsel for the defendants: David C. Jenkins and Joseph S. Fair, Kopelman and Paige, P.C., 31 St. James Avenue, Boston, Massachusetts 02116-4102.

Respectfully submitted by:

Howard Mark Fine, Esquire
86 Sherman Street
Cambridge, MA 02140-3233
BBO No. 554671
(617) 868-9200

Dated: June 14, 2004