COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS.                                                   BRISTOL SUPERIOR COURT
                                                               Civil Action

| | |
|---|---|
| MARC ROUKE, | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) No. |
| TOWN OF FREETOWN, and | ) |
| CARLTON E. ABBOTT, Jr., Individually | ) |
| and as Chief of the Freetown Police | ) |
| Department, | ) |
| *Defendants.* | ) |

## COMPLAINT

### Nature of Action

Plaintiff seeks a damages award, equitable relief, and attorneys fees as a remedy for retaliation against him by the defendants in violation of G. L. c. 149, § 185 (the so called "whistle blower" statute)

### Parties and Jurisdiction

1. The plaintiff, Marc Rouke (Rouke), is a resident of Lakeville, Massachusetts, a police officer with the Town of Freetown (Freetown), and the "employee" as that term is defined in G. L. c. 149, § 185.

2. Freetown is a town of the Commonwealth located within Bristol County.

3. Carlton E. Abbott, Jr., is the Chief of Police of Freetown, and the "supervisor" as that term is defined in G. L. c. 149, § 185.

4. This Court has exclusive subject matter over the cause of action pursuant to the provisions of G. L. c. 149, § 185(d).

### General Allegations

5. On or about January 1, 1997, with the retirement of Chief Mello of the Freetown Police, the selectmen of the Town of Freetown decided that they would begin taking applications for Chief of Police from among the full time officers within the Freetown Police Department.

6. On or about May 27, 1997, a female dispatcher with the Freetown Police Department, complained to the Massachusetts Commission Against Discrimination (MCAD) that she was the victim of sexual harassment by a command rank officer / detective within said police department who was also the lead candidate for the position of Chief of Police of Freetown.

7. Upon learning of the dispatcher's claim against the command rank officer and Freetown, the selectmen of Freetown voted to conduct their own investigation into the dispatcher's allegations of sexual harassment, and in furtherance of said investigation, retained a retired justice of the Superior Court (George N. Hurd, Jr.), to act as hearing officer and to make findings and recommendations to the selectmen in their official capacity as the employing authority for the police department of Freetown.

8. On June 9, 1997, the selectmen of Freetown issued a memo to all police officers and "signal operators" (i.e., dispatchers) requesting that they not discuss the above alleged investigation of the sexual harassment charge as " it could be considered as harassment or retaliation." It requested that these employees "please refrain from any further discussion and allow the town to investigate and proceed on the best course of action...."

9. Plaintiff, and other officers with the Freetown police department, were commanded by the selectmen to appear and testify before Judge Hurd as to what they knew regarding the dispatcher's claim of sexual harassment.

10. On or about September 22, 1997, pursuant to the command of the Freetown selectment, plaintiff testified before Judge Hurd and testified adversely to the command rank officer and to Freetown; the testimony of two other Freetown police officers was also particularly corroborative of the dispatcher and damaging to the command rank officer and to the Town of Freetown.

11. On or about March 17, 1998, Judge Hurd issued a written decision substantiating the dispatcher's claims of sexual harassment and retaliation.

12. Judge Hurd's written decision was reported in the press shortly after it was issued; at subsequent meetings of the board of selectmen of Freetown, the selectmen accepted Judge Hurd's findings regarding sexual harassment and retaliation; they ordered minimal discipline in the form of a written reprimand and sensitivity training for the command rank officer / detective; and they entirely re-opened the process of looking for a new

police chief and announced new preferential qualifications standards to be employed in the search for a chief.

13. For violating their purported "gag order" (the June 9, 1997 memo to all officers alleged above in paragraph 8), the selectmen disciplined the command rank officer / detective by suspending him without pay for one day; the selectmen also publicly charged that others police officers besides the command rank officer / detective violated their "gag order" of June 9, 1997, and without identifying these supposed violators, announced that these officers would be "called in and dealt with ...."

14. Subsequent to issuance of Judge Hurd's decision, on or about July 17, 1998, the selectmen of Freetown appointed the then Town Counsel, Carlton E. Abbott, Jr., as the new Freetown chief of police.

15. In the more than two years since the issuance of Judge Hurd's decision and its "leak" to the press, no other officer (besides the command rank officer / detective charged with harassment) has been charged with or disciplined for a supposed violation of the June 9, 1997 "gag order."

16. However, plaintiff, the two other officers who testified favorably for the dispatcher (and unfavorably for Freetown), as well as another dispatcher who testified unfavorably to the charged officer and the town, have had disciplinary charges / adverse employment action taken against them and/or have been passed over for promotion by Freetown.

17. Abbott and/or one or more of the Freetown selectmen, caused to be published in a local and widely read daily newspaper disciplinary charges written and characterized by defendants so as to be highly defamatory to plaintiff's name and standing in the community and published such defamatory charges prior to plaintiff being given an opportunity to be heard on same and to answer the allegations; the defendants' usual practice is to keep the nature of disciplinary charges confidential and unpublished until after hearing in order to protect the good name and standing of officers; in the case of plaintiff and in the case of the other two officers who testified unfavorably to the town in the dispatcher's case, the defendants did not follow this usual practice, but purposefully deviated for the purpose of punishing and retaliating against the plaintiff and the other two officers.

18. Plaintiff has not engaged in any official misconduct; the only significant charges levelled by the defendants against the plaintiff concerned a generally accepted practice in the Freetown Police Department which defendants' claimed for the first time, and only in the case of plaintiff, to be against town or department policy, and a violation of police disciplinary rules; the defendants have not charged with disciplinary violations other Freetown police officer who have engaged, and continue to engage, in like or similar conduct; the selectman have still not provided plaintiff with an opportunity to be heard on these frivolous charges because the selectmen have failed, neglected or refused to reschedule the disciplinary hearing despite their promise to do so.

19. Plaintiff, though high in seniority in the department and the holder of an exemplary service record including commendations, has been passed over and not

considered for promotion that have been handed out to less senior, less productive and less experienced officers who testified favorably to the town in the dispatcher's case.

20. Plaintiff was severally injured, while on duty, in a traffic accident determined not to be his fault; he has required surgery and has a permanently disabled knee as a result of this injury in the line of duty; the defendant Abbott has assumed personal control over the negotiation of the plaintiff's workers' compensation / disability claim, has refused to negotiate said claims in good faith, has refused to articulate sufficient legal or medical reasons why said claims should not be allowed, despite having been provided by plaintiff will all necessary documentation and information.

## COUNT I
( G. L. c. 149, § 185)

21. Plaintiff re-alleges and incorporates by reference the averments set forth in paragraphs numbered 1 through 21, above.

22. Plaintiff provided information to and testified before a public body conducting an investigation, hearing or inquiry into a violation of law, or a rule or regulation promulgated pursuant to law, or activity, policy or practice which plaintiff reasonably believed posed a risk to public health, safety or the environment by the employer

23. The defendants have retaliated against the plaintiff, in violation of G. L. c. 149, § 185, for his having engaged in the lawful activity alleged in paragraph "2" herein.

24. As a result of the retaliation alleged in paragraph 24 above, plaintiff has suffered damages to his reputation, emotional distress, lost wages and employment benefits, has

incurred attorneys fees and expenses, and suffered other direct and consequential damages.

WHEREFORE, demands judgment for damages pursuant G. L. c. 149, § 185, attorneys fees and costs, and equitable relief in the form of an order barring the defendants from further retaliation against the plaintiff.

Respectfully submitted,
MARC ROUKE, *Plaintiff*
by his attorney:

P. J. Adams, BBO# 568173
LAW OFFICE OF PAUL ADAMS
21 Torrey Street
Brockton, Massachusetts 02301
Tel. (508) 583-2019

Dated:    October 6, 2000