UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12417-PBS

|  |  |
|---|---|
| JON M. TAYLOR, <br>       Plaintiff, <br><br> v. <br><br> TOWN OF FREETOWN, <br><br> CARLTON E. ABBOTT, JR., ESQ., <br> Individually, and as Chief of the Freetown <br> Police Department, and <br><br> WALTER J. SAWICKI <br> Individually, and as Lieutenant of the <br> Freetown Police Department <br>       Defendants. | SECOND AMENDED COMPLAINT |

## INTRODUCTORY STATEMENT

1. This is a complaint for compensatory and punitive money damages brought by Jon M. Taylor ("Plaintiff"), pursuant to Title 42 U.S.C. § 1983, for the deprivation of the former's civil rights, under color of state law, and for adverse actions suffered as a result thereof, by his employer, the Town of Freetown ("Freetown"), and his supervisors, Carlton E. Abbott, Jr., Esq. ("Abbott") and Walter J. Sawicki ("Sawicki"). Plaintiff avers that Freetown, Abbott, and Sawicki (collectively referred to as the "Defendants"), in violation of federal and state constitutional, statutory, and common law rights, continuously harassed and retaliated against him, and otherwise created a pervasively hostile environment

for his having repeatedly raised matters of public concern regarding unlawful and/or improper misconduct in the Freetown Police Department.

## JURISDICTION

2. Jurisdiction is based on 42 U.S.C. §1983 and 28 U.S.C. §§ 1331 and 1343. Plaintiff claims the court's pendent jurisdiction over state law related claims.

## PARTIES

3. Plaintiff Jon M. Taylor is a natural person and a resident of Fall River, Massachusetts, Bristol county. At all times material to this civil action, Plaintiff has been, and remains, employed by the Defendant Town of Freetown as a Police Officer and deemed an "employee," as that term is defined in M.G.L. c. 149, § 185(a)(1).

4. Defendant Town of Freetown is a municipality of the Commonwealth of Massachusetts and is located within Bristol County. At all times material to this civil action, Defendant Town of Freetown is deemed Plaintiff's "employer", as that term is defined in M.G.L. c. 149, § 185(a)(2). Pursuant to M.G.L. c. 41, s. 97, said Defendant is authorized to make suitable regulations governing the police department and the officers thereof, and, further, is deemed a "public body," as that term is defined in M.G.L. c. 4, § 7, and c. 149, § 185(a)(3)(A) and (E).

5. Defendant Carlton E. Abbott, Jr., Esquire is a natural person and a resident of East Freetown, Massachusetts, Bristol County. At all times material to this civil action, Abbott was, and remains, the Chief of the Town of Freetown's Police Department and is deemed Plaintiff's "supervisor" as that term is defined in M.G.L. c. 149, § 185(a)(4).

6. Defendant Walter Sawicki is a natural person and a resident of East Freetown, Massachusetts, Bristol County. At all times material to this civil action, Sawicki was, and remains, the ranking Police Lieutenant in the Town of Freetown's Police Department and is deemed Plaintiff's "supervisor", as that term is defined in M.G.L. c. 149, § 185(a)(4).

## STATEMENT OF FACTS

7. In November 1988, or thereabout, Plaintiff began his employment with the Town of Freetown Police Department first as an Auxiliary Police Officer, next as a Reserve Police Officer, and later as a full-time Police Officer, which has been his current position since September 6, 1997, or thereabout.

8. At all times material to this civil action, Plaintiff met or exceeded the minimum performance expectations of his employer, as evidenced, in part, by his numerous commendations for his service to his department and community.

9. In addition to his experience as a Police Officer, Plaintiff also possesses an Associate degrees in Liberal Studies and Criminal Justice, a Bachelor of Science degree in Law Enforcement, and a Master of Science degree in Criminal Justice Administration

10. On July 17, 1998, or thereabout, Abbott, then Freetown's town counsel, was hired by Freetown as its Police Chief.

11. Shortly after Abbott became the chief, Plaintiff was approached by Freetown Police Officer Elton E. Ashley, III ("Ashley"), who, under the direction of Abbott, inquired of Plaintiff which "side" he was on: Abbott's or a group of other officers. According to Ashley, if Plaintiff was not loyal to Abbott, then Plaintiff

3

would be "on the outside looking in." Plaintiff replied that he was politically neutral.

12. On September 29, 1998, Ashley and another Freetown Police Officer approached Plaintiff, stating Abbott advised them to speak to Plaintiff to determine if the latter would "cover up" for both officers who had falsified time slips while working White Mountain Cable Company details. According to these officers, Abbott, using these officers as third parties, specifically requested Plaintiff to forge paperwork to protect the officers from claims that they were "double-dipping," that is, deliberately misappropriating funds. To his detriment, Plaintiff emphatically stated to these officers that he refused to participate in such a conspiracy.

13. Shortly after the above conversations between Plaintiff and Ashley occurred, Abbott openly and continuously began a pattern and practice of retaliation and ongoing harassment against Plaintiff. Such adverse action, either directly or indirectly, such as through other supervisors like Sawicki, included, but was not limited to:

   a. unjustly accusing Plaintiff of falsifying departmental records and conduct unbecoming an officer;

   b. unjustly denying Plaintiff advantageous training, teaching, and related career opportunities, such as in August 2000, April 2001, July 2002, and the beginning of 2003;

   c. unjustly differentially treating Plaintiff in terms and conditions of employment, such as denying Plaintiff more favorable shifts and

4

assignments (for example, being reassigned by Abbott, without prior notice, to work solely midnight shifts in contrast to junior officers)

d. depriving him of overtime opportunities and subjecting him to closer supervision than some of his colleagues;

e. unjustly being by-passed repeatedly by Defendants in the selection process for filling permanent or temporary Police Sergeant positions, such as on or about May 5, 1999, November 20, 2002, and January 2003, in favor of officers with less qualifications, such as Abbott's brother Steven and Ashley;

f. maligning Plaintiff's good character and reputation within the Freetown Police Department (such as Abbott, on or about February 13, 1999, telling Police Officers Ashley, Scott Rose, and Donald Bullock that Plaintiff was incompetent and could not be entrusted to be an "Officer-in-Charge") and to third parties within the community by falsely alleging, for example, that Plaintiff has a mental disorder and feigned a serious work-related injury (in speaking with an Assistant District Attorney in Fall River, Massachusetts, Sawicki, in the summer of 2003, or thereabout, knowingly made a false and reckless statement to the Assistant District Attorney by telling the latter that Plaintiff had faked a recent work-related injury);

g. intimidating and coercing the Plaintiff, such as threatening him with, and pressuring him to stipulate to, unwarranted disciplinary action on or about February 6, 2000);

h. assigning Plaintiff to older, less safe police cruisers than his co-workers;

5

    i. tampering with Plaintiff's personnel file, which Plaintiff discovered in November 2002, or thereabout; and

    j. advising a newly appointed supervisor to "watch out for Officer Taylor" and "to write him up for whatever you can."

14. At all times material herein, Defendants had knowledge, based on Plaintiff's written and verbal communications with same, that Plaintiff was opposed to the Defendants' practice of allowing police officers to "double-dip."

15. In sworn deposition testimony involving other employee claims of retaliation (Sullivan and Christiansen infra) before the Massachusetts Commission Against Discrimination ("MCAD"), Abbott, on January 19, 2001, admitted that he investigated allegations that Taylor falsified payroll records for details at White Mountain Cable Company as well as presented Plaintiff with a settlement offer for such misconduct, which Plaintiff rejected since Plaintiff denies any wrongdoing. Based on Plaintiff's information and belief, never before had Abbott made such an admission. Prior to the filing of this civil action, Plaintiff, unlike Ashley, was never the subject of any formal disciplinary action since his employment with Freetown, according to Plaintiff's personnel record.

16. In sworn testimony concerning the above claims of retaliation, Abbott, on July 11, 2003, testified before the MCAD (Commissioner Walter J. Sullivan, Jr., presiding) that, in his opinion, Ashley committed larceny in the White Mountain Cable Company matter by unlawfully accepted funds as a Patrol Officer in the Freetown Police Department. Prior to the above hearing, Abbott, on Plaintiff's

6

information and belief, had never admitted publicly that Ashley had engaged in criminal conduct.

17. Although Abbott, at all times material herein, had sufficient evidence to file a criminal complaint against Ashley, he deliberately failed, neglected, and/or refused to do so and thereby unlawfully concealed a crime. Rather, the only charges that Abbott preferred against Ashley were before the Board of Selectmen on or about February 22, 2000. On Plaintiff's information and belief, Abbott failed, refused, and/or neglected to suspend Officer Ashley for his unlawful misconduct involving White Mountain Cable Company. Within one year, Ashley was promoted by the Board to a temporary and later a permanent Police Sergeant position, with the support and recommendations of Abbott and Sawicki. On Plaintiff's information and belief, Ashley's qualifications for the Police Sergeant position were inferior to those of other, more qualified employees in the Freetown Police Department, including those of Plaintiff.

18. Evidence exists that in addition to Ashley, other employees, such as Sawicki and others loyal to Abbott, unlawfully misappropriated public money in connection with White Mountain Cable Company details. Though Abbott, in his capacity of Police Chief, knew or should have known of similar egregious instances of such unlawful misconduct, he deliberately failed, refused, or neglected to file any criminal complaints or recommend disciplinary action against subordinates except those officers who, from Abbott's perspective, who were <u>on the outside looking in</u>.

19. On October 26, 2000, November 22, 2000, July 17, 2002, and June 27, 2003, Plaintiff, in a final attempt to address police corruption in the Freetown Police Department, sent written notices to the Board of Selectmen and Abbott. In his correspondence, Plaintiff raised several matters of public concern, including Abbott's and the Board's failure to properly respond to the White Mountain Cable Company incident, violation of department rules and regulations and collective bargaining agreement terms by Abbott concerning overtime, and unethical and deceitful practices by Abbott in his capacity as Police Chief. See Exhibits A-D, which are attached hereto and by reference incorporated in the herein complaint. At all times material herein, Sawicki was aware of these written communications of Plaintiff, which were posted on the union's bulletin board at the Freetown Police Station.

20. In May 2003, or thereabout, Plaintiff spoke to Sawicki regarding an anonymous citizen complaint placed in Plaintiff's mailbox at work. In response thereto, Sawicki told Plaintiff, "What do you expect when you accuse the chief of corruption?" He also threatened Plaintiff by advising him to "shut the fuck up" relative to making further accusations of police corruption.

21. On July 21, 2003 – less than four weeks after the Plaintiff's last correspondence to Freetown and Abbott – Abbott, in writing, insinuated that Plaintiff engaged in racial profiling while performing traffic duty and, as a consequence, "directed" Plaintiff to "familiarize" himself with applicable departmental policies and "encouraged" Plaintiff to "voluntarily modify (his) conduct to avoid real or perceived allegations of racial or gender profiling." Plaintiff denies any and all

8

allegations that he has engaged in such misconduct. Further, the motorist whom Plaintiff ticketed later admitted in a Boston Globe article, dated January 15, 2003, that he had exceeded the rate of speed that was posted. Based on Plaintiff's information and belief, no other Freetown Police Officer than him was singled out by Abbott for racial or gender profiling.

22. On July 24, 2003, Freetown's Board of Selectmen responded in writing to Plaintiff's letter of June 27, 2003. According to the Board, after "check(ing) into the matter further . . . there was **nothing** (emphasis added) to substantiate his claims" – notwithstanding Abbott's prior admission to the MCAD on July 11, 2003. See Exhibit E, of a copy of which is attached hereto and by reference incorporated in the herein complaint.

23. On August 14, 2003, Freetown's Town Clerk, in writing, acknowledged that the Office of the Town Clerk had no public records on file concerning an investigation, pursuant to M.G.L. c. 41, §23B or any documents relating to any complaints made by Plaintiff. See Exhibit F, of a copy of which is attached hereto and by reference incorporated in the herein complaint.

24. In addition to Plaintiff, other Freetown Police Officers have filed complaints of unlawful retaliation in violation of their civil rights, as evidenced below:

   a. On or about September 22, 2000, Freetown Police Officer Alan Alves filed a civil rights suit against Freetown in the United States District Court for the District of Massachusetts. See Exhibit G. Said plaintiff averred federal and state discrimination and retaliation claims, pursuant to 43 U.S.C. 2000e-2 and M.G.L. c. 151B, respectively. The plaintiff further

9

averred, pursuant to 42 USC §1983, that under the color of state law, defendant refused to promote plaintiff on the basis of race and in retaliation for his prior suits against defendant, which "amounts to a deprivation of rights, privileges and immunities secured to Plaintiff by the United States Constitution and laws." Id. at par. 26. On or about November 20, 2001, Freetown settled the suit in the amount of $140,000.00. Supra.

b. On October 6, 2000, a "whistle-blower" lawsuit was filed in Bristol Superior Court by a fellow Police Officer, Marc Rourke, against Freetown and Abbott. See Exhibit H for copy of complaint. According to paragraph 22 of the pending suit, plaintiff avers that he was retaliated against by the defendants, in violation of M.G.L. c. 149, 185, for providing information to and testifying "before a public body conducting an investigation, hearing or inquiry into a violation of law, or a rule or regulation promulgated pursuant to law, or activity, policy or practice which plaintiff reasonably believed posed a risk to public health, safety or environment by the employer."

c. In 1997, Freetown Police Officer Charles Sullivan and Freetown Police Sergeant Terrance Christiansen, for having given evidence and testimony in a sexual harassment and retaliation claim previously pending before the MCAD, filed their own MCAD complaints on grounds of continuous retaliation by Freetown. See Exhibits I and J, respectively, for copies of amended complaints, dated February 28, 2001. Said complainants further

10

averred, in paragraph 20 of their respective pleadings, that Abbott "conspired with the Town of Freetown Selectmen John Ashley, Robert Robideaux and Christopher McCarthy to continue to retaliate" against them for having engaged in protected activity under M.G.L. c. 151B. Based on Plaintiff's information and belief, these administrative complaints were settled by the parties in 2004.

25. To date, Freetown's Board of Selectmen have deliberately failed, refused, or neglected to investigate properly Plaintiff's above claims of unlawful misconduct, grant Plaintiff a public hearing to address these claims - despite his request - and remedy these matters of public concern.

26. Defendants' continuous harassment of and adverse actions against toward Plaintiff are substantially inter-related, sufficiently similar in nature, and constitute a serial violation of Plaintiff's civil rights.

27. On or about October 2, 2003, Plaintiff sent to Freetown's Board of Selectmen a written presentment of his claims involving the Defendants. See Exhibit K.

28. On or about November 5, 2003, Sawicki, through counsel, threatened Plaintiff with legal action were Plaintiff to pursue any claim against him.

29. On December 1, 2003, Plaintiff filed the herein civil complaint against Defendants.

30. On or about December 29, 2003, Sawicki filed with Abbott a written complaint against Plaintiff, falsely alleging that Plaintiff was insubordinate and engaged in conduct unbecoming an officer.

11

31. On March 23, 2004, Plaintiff filed his first amended civil complaint against Defendants.

32. Subsequent to filing the herein complaint, Plaintiff has been subjected to further harassment by his superiors, including, but not limited to being administered a written warning on June 27, 2004 by Sergeant Steven Abbott, in which he accused Plaintiff *inter alia* of allegedly being tardy on November 3, 2003, October 28, 2003 and October 3, 2003. See Exhibit L, of a copy of which is attached hereto and by reference incorporated in the herein complaint.

33. On December 14, 2004, the Honorable Patti B. Saris issued an order granting Plaintiff leave to file an amended complaint to address the statute of limitations problem and demonstrate a continuing violation. See December 16, 2004 Electronic Endorsement of Order.

## COUNTS

### COUNT I: TITLE 42 U.S.C. § 1983, FEDERAL CIVIL RIGHTS ACT
(Freetown, Abbott, and Sawicki)

34. Plaintiff restates and re-avers the above paragraphs 1 to 33 as if expressly set forth herein.

35. The above-described activities of Defendants violated Plaintiff's right to freedom of speech under the First Amendment of the United States Constitution, Article I.

36. By criticizing Freetown's paid detail practices and otherwise speaking out against, or attempting to speak out against police corruption in the Freetown Police Department, Plaintiff has engaged in protected speech under Article I of the First Amendment of the Constitution.

12

37. Such protected speech was a substantial or motivating cause for Defendants subjecting Plaintiff to ongoing harassment and retaliation.

38. Defendants, while acting under color of law, deprived Plaintiff of his constitutional right of free speech as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

39. The Defendants are jointly and severally liable to the Plaintiff under Title 42 United States Code §1983 for their unlawful conduct, and Plaintiff is entitled under Title 42 U.S.C. §§1983 and 1988 to an award of compensatory damages, costs and attorney's fees and to punitive damages.

40. As a result of the continuous harassment and retaliatory actions by Defendants, Plaintiff has suffered, and will continue to suffer, harm to his reputation, loss of compensation, emotional distress, and other substantial damages, unless this Honorable Court otherwise provides relief.

## COUNT II: TITLE 42 U.S.C. § 1983, FEDERAL CIVIL RIGHTS ACT
(Freetown, Abbott, and Sawicki)

41. Plaintiff restates and re-avers the above paragraphs 1 to 40 as if expressly set forth herein.

42. The actions of Abbott and Sawicki were done in accordance with a custom or policy of Freetown has a custom or policy of violating the rights of its Police Officers by harassing and retaliating against citizens who exercise their right of free speech as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

43. Defendant Freetown has a deliberate and/or reckless indifference to providing adequate hiring, training and/or supervision of Police Officers, all of which it had

13

reason to know would cause the injuries suffered by Plaintiff, and the above custom or policy in fact caused such injuries.

44. Such actions on the part of Defendants constitute a deliberate and/or reckless indifference to citizens such as Plaintiff who engage in protected speech.

45. Defendants' adverse actions and harassment were repeatedly taken against Plaintiff for his having engaged in protected activity, which they knew or had reason to know would cause the injuries suffered by Plaintiff.

46. The above custom or policy of Defendants in fact caused such injuries to Plaintiff.

47. Defendants are jointly and severally liable to the Plaintiff under Title 42 United States Code §1983 for their unlawful conduct, and Plaintiff is entitled under Title 42 U.S.C. §§1983 and 1988 to an award of compensatory damages, costs and attorney's fees and to punitive damages.

48. As a result of the continuous harassment and retaliatory actions by Defendants, Plaintiff has suffered, and will continue to suffer, harm to his reputation, loss of compensation, emotional distress, and other substantial damages, unless this Honorable Court otherwise provides relief.

## COUNT III: INTERFERENCE WITH CONSTITUTIONAL RIGHT TO FREE SPEECH
(Violation of the Massachusetts Constitution, Declaration of Rights, Part I, Article XVI)
(Freetown, Abbott, and Sawicki)

49. Plaintiff restates and re-avers the above paragraphs 1 to 48 as if expressly set forth herein.

50. Plaintiff had a right secured under the Massachusetts Constitution to speak freely about matters of public concern regarding the above activities of Defendants.

51. The disclosures by Plaintiff of police corruption were based on Plaintiff's reasonable belief that Defendants' activities were in violation of the law and contrary to public policy, and were an expression that involved the type of public significance necessary to rise to the level of protected speech.

52. Defendants violated Plaintiff's right to free speech as secured under the Massachusetts Constitution when they harassed and retaliated against Plaintiff for disclosing and/or attempting to disclose corruption in Freetown's Police Department.

53. Defendants' harassing and retaliatory conduct toward Plaintiff represents an offense to the Constitution of Massachusetts, Declaration of Rights, Part I, Article XVI.

54. As a result of the continuous harassment and retaliatory actions by Defendants, Plaintiff has suffered, and will continue to suffer, harm to his reputation, loss of compensation, emotional distress, and other substantial damages, unless this Honorable Court otherwise provides relief.

COUNT IV: MASSACHUSETTS CIVIL RIGHTS ACT
(Abbott, and Sawicki in their individual capacities)

55. Plaintiff restates and re-avers the above paragraphs 1 to 54 as if expressly set forth herein.

56. The Defendants, jointly and severally, while under color of law, have interfered with, or attempted to interfere with, Plaintiff's constitutional right of free speech as guaranteed by the First Amendment to the United States Constitution or the rights secured by the constitution or law of the Commonwealth of Massachusetts.

57. Defendants have interfered, or have attempted to interfere, with Plaintiff's exercise or enjoyment of rights secured by the Constitution and laws of the United States and the Commonwealth by threats, intimidation, and/or coercion.

58. Defendants are jointly and severally liable to the Plaintiff for their unlawful misconduct, under M.G.L. c. 12, §§ 11H and I, and Plaintiff is entitled to the award of compensatory and punitive monetary damages, costs and attorney's fees.

59. As a result of Defendants' unlawful misconduct, Plaintiff has suffered, and will continue to suffer unless awarded relief, substantial damages, including, but not limited to, damages to his reputation, emotional distress, lost wages and employment benefits, and other direct and consequential damages.

## COUNT V: WHISTLE-BLOWING CLAIM
(Freetown)

60. Plaintiff restates and re-avers the above paragraphs 1 to 59 as if expressly set forth herein.

61. Plaintiff has made repeated oral and written disclosures to his supervisor, employer, and public body concerning activities, policies, and/or practices which violate laws, and departmental rules and regulations promulgated pursuant to law, or which Plaintiff reasonably believes pose a risk to public safety or the environment of the employer and the community pursuant to M.G.L. c. 149, §185 (c)(1).

62. Plaintiff, to no avail, has repeatedly afforded Freetown a reasonable opportunity to correct the activity, policy, and/or practice, pursuant to M.G.L. c. 149, §185(c)(1).

16

63. Freetown has retaliated against Plaintiff, in violation of M.G.L. c. 149, §185(a)(5), for his having engaged in lawful activity as pled herein.

64. As a result of the retaliation alleged above, Plaintiff has suffered, and will continue to suffer substantial damages, including, but not limited to, damages to his reputation, emotional distress, lost wages and employment benefits, and other direct and consequential damages.

## COUNT VI: TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS AND/OR CONTRACTUAL BUSINESS RELATIONSHIPS
(Abbott and Sawicki in their individual capacities)

65. Plaintiff restates and re-avers the above paragraphs 1 to 64 as if expressly set forth herein.

66. An existence of an advantageous business relationship exists between Plaintiff and Freetown in which Plaintiff receives an economic benefit for services rendered.

67. Defendants Abbott and Sawicki, at all times material herein, were aware of this business and/or contract relationship.

68. Said Defendants' intentional and/or negligent interference with this business and/or contract relationship was for an improper purpose or by improper means.

69. As a result of such interference, the Plaintiff has sustained substantial damages, including but not limited to, loss of reputation, emotional distress, lost wages and employment benefits, and other direct and consequential damages.

## COUNT VI: DEFAMTION
(Abbott and Sawicki in their individual capacities)

70. Plaintiff restates and re-avers the above paragraphs 1 to 69 as if expressly set forth herein.

71. Defendants knowingly, maliciously, or with a reckless disregard for the truth, generated false and defamatory written and oral statements concerning the Plaintiff.

72. The Defendants communicated these statements to one or more third parties.

73. As a result of such communication, the Plaintiff was exposed to hatred, ridicule, embarrassment, and/or contempt in the community, and suffered irreparable injury to his reputation.

## JURY DEMAND

74. The Plaintiff requests a jury trial on all counts pled.

## RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court:

(1) Grant the Plaintiff injunctive relief as is necessary, just, and proper;

(2) Award Plaintiff damages for loss of back pay and benefits, front pay, loss of professional opportunity, emotional distress, and punitive damages;

(3) Award Plaintiff reasonable attorney's fees, interest, and costs for the prosecution of this action; and

(4) Award Plaintiff injunctive and such other relief as this Honorable Court deems just and proper.

JON M. TAYLOR

By His Attorney:

Howard Mark Fine, Esquire
86 Sherman Street
Cambridge, MA  02140-3233
BBO No. 554671
(617) 868-9200

Dated: January 13, 2005