UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

C.A. NO. 03-12417-PBS

| | |
|---|---|
| JON M. TAYLOR,<br><br>    Plaintiff,<br><br>v.<br><br>TOWN OF FREETOWN, CARLTON E. ABBOTT, JR., individually and as Chief of the Freetown Police Department, and WALTER J. SAWICKI, individually and as Lieutenant of the Freetown Police Department,<br><br>    Defendants. | DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT |

## I.  Introduction

On December 1, 2003, the plaintiff, Jon M. Taylor (hereinafter, "Plaintiff") filed his complaint in this matter.  Prior to serving that complaint, Plaintiff filed his First Amended Complaint.  In response, the defendants Town of Freetown (hereinafter, "Town"), Freetown Police Chief Carlton Abbott, Jr. (hereinafter, "Abbott") and Freetown Police Lieutenant Walter J. Sawicki (hereinafter, "Sawicki") (collectively, "Defendants") filed a motion to dismiss Plaintiff's First Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6).  Said motion was subsequently referred to Magistrate Judge Alexander.

On November 9, 2004, Magistrate Judge Alexander issued her report and recommendations concerning Defendants' motion and recommended that the motion be allowed on the basis that Plaintiff had failed to allege any actionable events within the statute of limitations periods applicable to each of his claims.  Objections to this report and

recommendation were in turn filed by Plaintiff along with a request that he be given an opportunity to amend his complaint.  Defendants opposed Plaintiff's objections and asked that Magistrate Judge Alexander's recommendation be upheld for the reasons stated by her or, alternatively, that the recommended dismissal be sustained for the additional reasons raised by Defendants in their motion to dismiss.

On December 9, 2004, the Court issued the following order without ruling on the merits of Defendants' motion to dismiss:  "Plaintiff seeks an opportunity to amend to address the statute of limitations problem and demonstrate a continuing violation.  An amended complaint shall be filed in 30 days."  On January 13, 2005, an entry was made on the Court's docket indicating that Defendants' motion to dismiss had been "terminated from the Court's Statistical report."

On or about January 13, 2005, Plaintiff filed his Second Amended Complaint (hereinafter, "Complaint").  In Counts I and II, Plaintiff alleges that Defendants deprived him of his right to free speech under the First and Fourteenth Amendments in violation of 42 U.S.C. §1983.  In Count III, Plaintiff, for the first time, asserts a claim under Part I, Article 16 of the Massachusetts Declaration of Rights that Defendants violated his right to free speech as secured under the Massachusetts Constitution.  In Count IV, Plaintiff contends that Abbott and Sawicki, in their individual capacities, interfered with, or attempted to interfere with, Plaintiff's right to free speech under the United States and Massachusetts constitutions by threats, intimidation and/or coercion in violation of M.G.L. c. 12, §§11H and I.  In Count V, Plaintiff alleges that the Town violated M.G.L. c.149, §185(a)(5) by retaliating against him for engaging in activity that is protected under §185.  Finally, in Counts VI and VII, respectively, Plaintiff contends that Abbott and Sawicki, in their individual capacities, tortiously interfered with his contractual and/or advantageous business relationship with the Town and that they defamed him.

Now come the Defendants and respectfully submit this memorandum in support of their Motion To Dismiss Plaintiff's Second Amended Complaint.

## II. Statement of Facts[1]

In or around November 1988, Plaintiff began his employment with the Town of Freetown Police Department as an Auxiliary Police Officer. Complaint at ¶7. After a stint as a Reserve Police Officer, Plaintiff eventually became a full-time Police Officer on or about September 6, 1997. Id.

On or about July 17, 1998, Abbott was hired by the Town as its new Police Chief. Id. at ¶10. Shortly after Abbott became Chief, Plaintiff was approached by Freetown Police Officer Elton E. Ashley III (hereinafter, "Ashley"). Id. at ¶11. Ashley inquired of Plaintiff whether he was on Abbott's "side" or on the "side" of a group of other officers. Id. Ashley stated that "if Plaintiff was not loyal to Abbott, then Plaintiff would be 'on the outside looking in.'" Id. Plaintiff replied that he was "politically neutral." Id.

On September 29, 1998, Ashley and another police officer approached Plaintiff and stated to him that Abbott had instructed them to speak to Plaintiff to determine if Plaintiff would "cover up" for the officers concerning paid detail time slips they had falsified. Id. at ¶12. According to the officers, Abbott had specifically requested that Plaintiff forge paperwork to protect the officers from claims that they had engaged in "double dipping." Id. Plaintiff informed the officers that he would not engage in such conduct. Id.

Shortly after the above conversations between Plaintiff and Ashley occurred, Plaintiff was subjected to an open and continuous pattern and practice of retaliation. Id. at ¶13. This retaliation consisted of his being accused of falsifying departmental records and conduct

---

[1] The facts recited herein are taken from the allegations of the Complaint and are accepted as true for purposes of this motion only. See Coyne v. Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992).

3

unbecoming an officer, being denied certain training, teaching and related career opportunities, being denied more favorable shifts and assignments, being deprived of overtime opportunities, being subjected to closer supervision than some of his colleagues, bypassing him for sergeant positions within the department, statements being made within the department, to the community and to third parties to the effect that he has a mental disorder, had feigned a serious work-related injury and is professionally incompetent, being threatened with and pressured to stipulate to disciplinary action, assigning him to older, less safe police cruisers, having his personnel file tampered with and statements being made to a new supervisor to "watch out" for him and "to write him up for whatever you can." Id.  Said retaliation was allegedly inflicted upon Plaintiff by Abbott directly or indirectly, such as through other supervisors like Sawicki.  Id.

In a letter to the Town's Board of Selectmen dated October 26, 2000, Plaintiff followed up on a prior Freedom of Information Act request he had submitted to the Board in which he had asked to be provided with "a copy of disciplinary charges filed against [him] by Chief Carlton Abbott Jr."  Complaint Exhibit A.  Plaintiff asked that copies of the complaints issued against him by Abbott be forwarded to him and that a letter from the Board be placed in his personnel file stating that Abbott had falsely charged him with misconduct and which further stated that the disciplinary charges against him had been dropped.  Id.

By letter to the Board dated November 22, 2000, Plaintiff responded to an assertion that had been made by Abbott in an October 31, 2000 letter that there was no disciplinary documentation in Plaintiff's personnel file concerning the alleged misconduct Plaintiff had referred to in an earlier letter to the Board.  Complaint Exhibit B.  In his November 22nd letter, Plaintiff contended that the letter from Abbott did not properly answer Plaintiff's earlier information request to the Board.  Id.  Plaintiff stated that as a result of this, he had "no other

4

alternative to resolve this incident but to seek legal representation in order to clear [his] good name." Id.

On or about July 15, 2002, Plaintiff filed a grievance pursuant to the terms of a collective bargaining agreement (hereinafter, "CBA") protesting the manner in which Abbott had assigned certain overtime to officers. Complaint Exhibit C. Plaintiff asserted that Abbott's actions in that regard were in violation of Article VIII of the CBA and asked that the grievance be forwarded to the Board for a hearing. Id.

By letter to the Board dated June 27, 2003, Plaintiff alleged that he had experienced several incidents of harassment and retaliation at the hands of Abbott subsequent to sending his October and November 2000 letters to the Board. Complaint Exhibit D. Plaintiff's letter asserted that his earlier attempts to address his concerns and grievances with the Board had been disregarded. Id. at 2. Plaintiff asked the Board to investigate his "original complaint of departmental misconduct as well as the propriety of Police Chief Abbott's subsequent disciplinary, promotional, and other personnel practices." Id.

On July 21, 2003, Abbott sent Plaintiff a letter the stated purpose of which was "to encourage [Plaintiff] to voluntarily modify [his] conduct so as to allow [him] to avoid real or perceived allegations of racial or gender profiling." Defendants' Attachment A hereto[2]. The letter indicated that it was being issued in response to the Boston Globe's publication of an article regarding racial and gender profiling in the issuance of traffic citations by police officers. See id. One of the traffic citations at issue in the Boston Globe article was issued by Plaintiff

---

[2] Attachments A and B to Defendants' memorandum were all identified and referred to by Plaintiff in his Complaint and as such, may be considered by the Court notwithstanding Plaintiff's failure to include them as exhibits to his Complaint and without converting Defendants' motion to dismiss to one for summary judgment. See Romani v. Shearson Lehman Hutton, 929 F.2d 875, 879 n. 3 (1st Cir. 1991) citing Sudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988) cert. denied, 488 U.S. 821 (1988).

while performing traffic duty.  See id.; Complaint at ¶21.

On or about December 29, 2003, Sawicki filed a written complaint with Abbott that Plaintiff had been insubordinate and had engaged in conduct unbecoming an officer.  Complaint at ¶30; Defendants' Attachment B hereto.

### III.  Argument

**A.     MOTION TO DISMISS STANDARD.**

Under Fed.R.Civ.P. 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief may be granted against Defendants.  A Rule 12(b)(6) motion to dismiss is the usual and proper method of testing the legal sufficiency of a complaint.  Moore's Federal Practice, Vol.2A, §12.08, p.2266 (2nd ed. 1984).  In reviewing a motion to dismiss, the court construes all well-pleaded material allegations of the complaint as admitted (Walker Process Equip. v. Food Mach. & Chem. Corp., 382 U.S. 172 (1965)) and all reasonable inferences are drawn in the plaintiff's favor.  Wagner v. Devine, 122 F.3d 53, 58 n.2 (1st Cir. 1997) cert. denied, 522 U.S. 1090 (1998).  The court is not bound, however, to accept as true conclusions of law or unwarranted deductions of fact.  See Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993).   A plaintiff must set forth "'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'"  Roth v. United States, 952 F.2d 611, 613 (1st Cir. 1991) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).  The plaintiff cannot rely upon "subjective characterizations or unsubstantiated conclusions."  Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir.1990).  Where it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of his claims, dismissal is proper.  See Ballou v. General Electric Co., 393 F.2d 398 (1st Cir. 1968).

**B.      PLAINTIFF'S STATE CIVIL RIGHTS CLAIM AGAINST THE TOWN HAS BEEN WAIVED.**

Under the waiver provision of the Massachusetts Whistleblower Act, "the institution of a private action in accordance with subsection (d) shall be deemed a waiver by the plaintiff of the rights and remedies available to him, for the actions of the employer, under any other contract, collective bargaining agreement, state law, rule or regulation, or under the common law." M.G.L. c. 149, §185(f).  It has been held that the waiver provision applies, at the least, to related claims which seek damages for essentially the same conduct.  See Bennett v. City of Holyoke, 230 F.Supp.2d 207, 220 (D.Mass. 2002) aff'd, 362 F.2d. 1 (1st Cir. 2004).  In the instant matter, there is little to no substantive difference between Plaintiff's Massachusetts Civil Rights Act claim and his claim under §185.  As a result, Plaintiff's MCRA claim as to the Town should be deemed waived pursuant to the provisions of §185(f).  See id., 230 F.Supp.2d at 220-21.

**C.      PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF UNDER §1983.**

In Counts I and II of his Complaint, Plaintiff asserts that he is entitled to relief under 42 U.S.C. §1983 as a result of Defendants' joint and several deprivation of his right to free speech, as guaranteed to him by the First and Fourteenth Amendments of the United States Constitution. Complaint at ¶¶38-39; 42-47.  A claim under section 1983 has two essential elements.  First, the challenged conduct must be attributable to a person acting under color of state law and second, the conduct must have worked a denial of rights secured by the Constitution or by federal law. Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997) cert. denied, 522 U.S. 819 (1997) citing Martinez v. Colon, 54 F.3d 980, 984 (1st Cir.) cert. denied, 516 U.S. 987 (1995).  Under the second element, a plaintiff is required to prove not only a deprivation of a right, but also that the defendant's conduct was a cause in fact of the alleged deprivation.  Id. at 1062 citing Maldonado Santiago v. Velazquez Garcia, 821 F.2d 822, 831 (1st Cir.1987).  In an action pursuant to § 1983,

7

there can be no municipal liability under a respondeat superior theory.  Fabiano v. Hopkins, 352 F.3d 447, 452 (1st Cir. 2003) citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-95 (1978).  Rather, to establish liability against a municipality, a plaintiff must prove deprivation of a constitutional right by means of "the execution of the government's policy or custom."  Id. citing City of Canton v. Harris, 489 U.S. 378, 385 (1989).  It is well-established that a suit brought against municipal officials in their official capacities is tantamount to a claim against the municipality.  Canney v. City of Chelsea, 925 F.Supp. 58, 69 (D. Mass. 1996) citing Kentucky v. Graham, 473 U.S. 159, 166 (1985).

In order to make out a claim against Abbott and Sawicki individually for deprivation of his right to free speech, Plaintiff must demonstrate that the speech at issue involved "matters of public concern."  Mullin v. Town of Fairhaven, 284 F.3d 31, 37-38 (1st Cir. 2002) quoting Connick v. Myers, 461 U.S. 138, 147-48 (1983).  The inquiry into the protected status of speech is one of law, not fact.  Connick, 461 U.S. at 148 n.7.  As the United States Supreme Court has aptly stated, "[w]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."  Id. at 147.  If Plaintiff meets this initial burden, the Court must then balance the strength of Plaintiff's and the public's First Amendment interests against the strength of the governmental interest in promoting efficient performance of the government agency involved.  Mullin, 284 F.3d at 37-38.  Assuming Plaintiff is able to meet that requirement, he must then demonstrate that his speech was a substantial or motivating factor for the alleged retaliation against him.  See id.

In reviewing Plaintiff's Complaint, it is clear that his conversations with Ashley in July and September 1998 did not rise to the level of speech by a citizen upon matters of public concern.  Instead, those conversations involved nothing more than Plaintiff responding to Ashley's inquiry about Plaintiff's position regarding internal police department politics and Plaintiff's personal willingness to protect Ashley and other officers from discipline by forging paperwork.  It is undisputed that these conversations only came about after Ashley *approached* Plaintiff and *solicited* his views on those subjects.  It would be disingenuous in the extreme for Plaintiff to contend that his conversations with Ashley were efforts on Plaintiff's part to bring attention to matters of public concern.

As for the October 26, 2000 and November 22, 2000 letters that Plaintiff sent to the Town's Board of Selectmen, Plaintiff makes it clear in both letters that his intent was not to cast light on any matter of public concern, but instead, was to remedy his own personal issue, to wit, the purportedly false allegations made against him by Abbott.  See Complaint Exhibits A and B.

Similarly, Plaintiff's July 15, 2002 letter was, by Plaintiff's own admission, a grievance filed pursuant to the terms of a collective bargaining agreement involving the manner in which Abbott was assigning officers overtime.  Complaint Exhibit C.  The resolution of this personnel issue between Plaintiff and his supervisor is not a matter of public concern and therefore, cannot form the basis of a First Amendment claim.  See Alinovi v. Worcester School Committee, 777 F.2d 776, 787 (1st Cir. 1985) cert. denied, 479 U.S. 816 (1986).

Notwithstanding all of this, even if one or more of the letters referenced in the Complaint could be said to have involved protected speech, Plaintiff can prove no set of facts to demonstrate that his speech was a substantial or motivating factor for the alleged retaliation against him.  See Mullin, 284 F.3d at 37-38.  Plaintiff has alleged that the supposed open and

9

continuous pattern and practice of retaliation against him began "shortly after" his conversation with Ashley on September 29, 1998.  This was more than two (2) years *before* the letters upon which his free speech claims are based were written to the Board of Selectmen and Abbott.  In light of this, Plaintiff cannot demonstrate that those letters were a substantial and motivating factor for the pattern of retaliation that allegedly took place.

**D.     THERE IS NO INDEPENDENT CAUSE OF ACTION UNDER PART I, ARTICLE 16 OF THE MASSACHUSETTS DECLARATION OF RIGHTS FOR INTERFERENCE WITH CONSTITUTIONAL RIGHT TO FREE SPEECH UNDER MASSACHUSETTS LAW.**

In addition to his federal civil rights claims in Counts I and II of his Complaint and his state civil rights claim in Count IV, Plaintiff asserts in Count III a claim entitled "Interference With Constitutional Right To Free Speech (Violation of the Massachusetts Constitution, Declaration of Rights, Part I, Article XVI)."  See Complaint at 14.  With respect to that claim, Plaintiff alleges that he had a right under the Massachusetts Constitution to speak out on matters of public concern and that Defendants harassed him and retaliated against him for exercising that right.  Id. at ¶¶50-53.  However, Defendants are unaware of any *independent* cause of action under Massachusetts law for interference with the right to free speech.  To the extent Plaintiff believes that such right has been violated by Defendants, his legal recourse is to file a claim under 42 U.S.C. §1983 and/or M.G.L. c. 12, §§11H and I, which he has already done.  Since no independent cause of action is provided for under Article 16 of the Massachusetts Declaration of Rights, Count III of Plaintiff's Complaint should be dismissed.

**E.     PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF UNDER THE MASSACHUSETTS CIVIL RIGHTS ACT.**

Count IV of Plaintiff's Complaint is essentially identical to his §1983 claim except that the claim is being brought pursuant to M.G.L. c. 12, §§11H and I.  See Complaint at ¶56-59.  To

make out a claim under the Massachusetts Civil Rights Act (hereinafter, "MCRA"), Plaintiff must show an interference or attempted interference with the exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of Massachusetts, by means of "threats, intimidation, or coercion." Id. quoting Swanset Dev. Corp. v. Taunton, 423 Mass. 390, 395 (1996).

Plaintiff asserts that the right in question was his right to free speech as guaranteed by the United States and Massachusetts constitutions. Complaint at ¶56. For the reasons argued in Section C above, Plaintiff's claim under Count IV should be dismissed as he has not demonstrated that the speech in question involved matters of public concern and he can prove no set of facts to demonstrate that his letters were a substantial or motivating factor for the alleged retaliation against him.

**F.     PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF FOR INTERFERENCE WITH A CONTRACTUAL AND/OR ADVANTAGEOUS BUSINESS RELATIONSHIP.**

In Count VI, Plaintiff alleges that Abbott and Sawicki, in their individual capacities, tortiously interfered with his contractual and/or advantageous business relationship with the Town. To succeed on either claim, Plaintiff must establish (1) the existence of a contract or business relationship which contemplated an economic benefit; (2) Defendants' knowledge of the contract or business relationship; (3) Defendants' intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages. Bourque v. Cape Southport Associates, LLC, 60 Mass.App.Ct. 271, 277-78 (2004) rev. denied, 441 Mass. 1105 (2004) citing Swanset Dev. Corp., 423 Mass. at 397.

A review of Plaintiff's Complaint reveals that it is devoid of any *facts* to establish the following: (1) that he had a contract with the Town, (2) that if one did exist Abbott and/or

11

Sawicki had knowledge of it, (3) that either Abbott and/or Sawicki intentionally interfered with that contract and/or any advantageous business relationship Plaintiff may have had or (4) that he suffered damage *due to a breach of the contract or discontinuation of the business relationship*, as he must.  See Buster v. George W. Moore, Inc., 438 Mass. 635, 652 (2003);  Bourque, 60 Mass.App.Ct. at 277-78 (emphasis added).  Without any allegations to such effect, Plaintiff's claim on this count must be dismissed. See id.

### G. **PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF FOR DEFAMATION**.

To succeed on his defamation claim against Abbott and Sawicki individually, Plaintiff must prove that they published a false and defamatory communication of and concerning him without any privilege to do so.  McAvoy v. Shufrin, 401 Mass. 593, 597 (1988).  It is not Abbott or Sawicki's burden to prove the truth of the statements at issue, but rather it is Plaintiff's burden to demonstrate the falsity of the statement(s) under review.  Id.  "Defamation is the publication of material by one without a privilege to do so which ridicules or treats the plaintiff with contempt."  Draghetti v. Chmielewski, 416 Mass. 808, 812 (1994).  Whether the statement is reasonably susceptible of a defamatory meaning is a question of law for the Court.  Foley v. Lowell Sun Pub. Co., 404 Mass. 9, 11 (1989).  The test is whether, under the circumstances, the statement discredits Plaintiff in the minds of any considerable and respectable segment of the community.  Draghetti, 416 Mass. at 811; Smith v. Suburban Restaurants, Inc., 374 Mass. 528, 529-30 (1978).  This interpretation "requires that the court examine the statement in its totality in the context in which it was published."  Id. quoting Myers v. Boston Magazine Co., 380 Mass. 336, 341-42 (1980).  "The court must consider all the words used, not merely a particular phrase or sentence" and further "must consider the medium by the which the statement [was] disseminated and the audience to which it [was] published."  Myers, 380 Mass. at 341-42.  It

12

should be noted that matters of opinion are not actionable unless they are both derogatory and based on undisclosed facts. See Dulgarian v. Stone, 420 Mass. 843, 850 (1995); Myers, 380 Mass. at 339. An expression of opinion based on disclosed or assumed non-defamatory facts is not a viable basis for an action of defamation, no matter how unreasonable or derogatory it may be. See id.

The only allegedly false and defamatory oral statement specifically attributed by Plaintiff to Abbott in the Complaint is one that Plaintiff asserts was uttered by Abbott on or about February 13, 1999.[3] See Complaint at ¶13(f). However, claims sounding in tort for defamation are governed by a three (3) year statute of limitations period. M.G.L. c. 260, §2A. Since Plaintiff did not file his original complaint in this matter until December 1, 2003, a defamation claim cannot lie against Abbott based on a statement that was allegedly made by him in February 1999. See id.

The only other statements Plaintiff has alleged that Abbott was responsible for were those contained in his July 21, 2003 communication to Plaintiff. However, none of the statements contained in that writing are reasonably susceptible of a defamatory meaning. See Foley, 404 Mass. at 11. Given the internal police department context in which the document was issued, the statements are not of the type that would hold Plaintiff up to ridicule or treat him with contempt and thus, any defamation claim that relies on that document should be dismissed as well.[4] See

---

[3] While it is true that Plaintiff alleges generally that Abbott engaged in a pattern and practice of retaliation which consisted of various acts including, "falsely alleging, for example, that Plaintiff has a mental disorder and feigned a serious work-related injury," he contends that Abbott did so "either directly or indirectly" through others. Complaint at ¶13. Plaintiff does not specifically allege that the statements in question were actually uttered by Abbott. To the extent Plaintiff is alleging Abbott published these statements through others, no facts have been alleged regarding the identity of such person(s) or which establish an agency relationship between Abbott and same. Even if he had, however, the statements would no longer be actionable under the statute of limitations.

[4] In addition, even if the statements in Abbott's July 21, 2003 letter could be considered defamatory, Plaintiff has only alleged that the letter was sent to Plaintiff himself. Plaintiff does not contend that Abbott ever published the letter to a third party. In the absence of publication of the letter by Abbott to someone other than Plaintiff, a defamation claim that relies upon such letter cannot survive a motion to dismiss. See McAvoy, 401 Mass. at 597.

Draghetti, 416 Mass. at 812.

Similarly, Sawicki's December 29, 2003 written complaint to Abbott, given again the internal police department context in which it was written, would not hold Plaintiff up to ridicule or treat him with contempt and therefore, also is not actionable.  See id.  However, even were the Court to find that document to be defamatory, Sawicki enjoyed a conditional privilege to submit that report given the supervisory position he held over Plaintiff as a lieutenant and Abbott's position as Chief.  See Bratt v. International Business Machs. Corp., 392 Mass. 508, 509 (1984)(holding that an employer has a conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job).  Plaintiff has not alleged that Sawicki published the document to anyone other than Abbott.  As a result, any claim for defamation that is based on Sawicki's December 29th complaint to Abbot also must fail.  See id.

### IV.  Conclusion

For the foregoing reasons, Defendants respectfully request that the claims identified above be dismissed.

|  |  |
|---|---|
|  | DEFENDANTS |
|  | By their attorneys, |
|  | /s/Joseph S. Fair<br>David C. Jenkins (BBO# 251000)<br>Joseph S. Fair (BBO# 637818)<br>Kopelman and Paige, P.C.<br> Town Counsel<br>31 St. James Avenue<br>Boston, MA 02116 |
| Date:  February 24, 2005 | (617) 556-0007 |

244429/60700/0503

14