UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JON M. TAYLOR,<br>      Plaintiff,<br><br>v.<br><br>TOWN OF FREETOWN,<br><br>CARLTON E. ABBOTT, Jr., ESQ.,<br>Individually and as Chief of the Freetown<br>Police Department, and<br><br>WALTER J. SAWICKI,<br>Individually and as Lieutenant of the<br>Freetown Police Department<br>      Defendants | C.A. 03-12417-PBS |

### PLAINTIFF'S MOTION AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

COMES now Jon M. Taylor, plaintiff in the above-captioned matter ("Plaintiff"), and pursuant to LR. 7.1(B)(2), submits the herein opposition memorandum in response to Defendants' Memorandum In Support Of Their Motion To Dismiss Plaintiff's Second Amended Complaint ("Defendants' Memorandum"). For reasons stated below and in previous pleadings, motions, and other memoranda, Plaintiff respectfully submits that, as a matter of law, his claims against his current employer, the Town of Freetown ("Freetown"), and his supervisors, Carlton E. Abbott, Jr., Esq. ("Abbott") and Walter J. Sawicki ("Sawicki"), are legally sufficient to withstand the challenge of a Fed.R.Civ.P. 12(b)(6) motion filed by the above-named defendants

(hereinafter collectively referred to as "Defendants").[1] Accordingly, Defendants' motion to dismiss the second complaint in its entirety must be denied.

## I. INTRODUCTION

### A. PROCEDURAL AND FACTUAL HISTORY[2]

On December 1, 2003, Plaintiff filed a civil rights and common law tort complaint against Defendants in the United States District Court for the District of Massachusetts. On March 23, 2004, Plaintiff amended the Complaint before serving it on Defendants. Plaintiff averred that Defendants, individually and/or in their official capacity, violated his federal and state constitutional, statutory, and common law rights as a result of his having raised repeatedly to Defendants (Abbott, Sawicki and the Freetown Board of Selectmen [the "Board"] serious matters of public concern regarding unlawful and/or improper conduct within Freetown's police department. See First Amended Complaint at ¶1 and Exhibits A to E appended thereto.

On May 3, 2004, Defendants moved this Honorable Court to dismiss the amended complaint, pursuant to Fed.R.Civ.P. 12(b)(6). In response, Plaintiff filed an opposition on June 14, 2004, whereupon the Honorable Patti B. Saris referred the matter to Magistrate Judge Joyce London Alexander for report and recommendations.

On November 9, 2004, Judge Alexander issued her findings and, without providing a detailed analysis of legal issues raised in the complaint, recommended dismissal of the amended complaint on grounds that Plaintiff's claims are time-barred.

---

[1] See e.g. Plaintiff's Motion And Memorandum Of Law In Opposition To Defendants' Motion To Dismiss Plaintiff's First Amended Complaint (document number 14); Plaintiff's Objections To Magistrate Judge's Findings And Recommendations On Defendant's Motion To Dismiss Plaintiff's First Amended Complaint (document number 19); and Plaintiff's Motion To Submit Additional Evidence In Support Of Objections To Magistrate Judge's Findings And Recommendations To Dismiss Plaintiff's First Amended Complaint (document number 21).

[2] See Second Amended Complaint ("Complaint") at ¶¶ 7-33 and Exhibits A-L for a history of relevant facts.

On November 26, 2004, Plaintiff filed his objections to Judge Alexander's findings and recommendations and moved for leave of court to file additional evidence in support of his objections to the Magistrate Judge's report, which Defendants opposed. In the event that Judge Saris were inclined to dismiss all or part of the amended complaint, Plaintiff also requested that he be granted leave to amend to cure any defects in his pleading.[3]

On December 16, 2004, an endorsement order of Judge Saris was electronically entered on the court's docket concerning Plaintiff's objection to the report and recommendations of Judge Alexander. Pursuant to that order, Plaintiff was granted 30 days to file and amend his complaint "to address the statute of limitations problem and demonstrate a continuing violation."

On January 13, 2005, an entry was made on the court's docket indicating that Defendants' motion to dismiss Plaintiff's first amended complaint had been "terminated from the Court's Statistical report."

On January 13, 2005, Plaintiff timely filed a second amended complaint, with Exhibits A-L appended thereto. In Counts I and II, he contends that Defendants, jointly and severally, deprived him of his right to free speech, in violation of the First and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. §1983. In Count III, Plaintiff avers that Defendants violated his right to speak freely about matters of public concern, as allowed by the Massachusetts Constitution, under Part I, Article XVI of the Declaration of Rights. In Count IV, Plaintiff alleges that Abbott and Sawicki, in their individual capacities, are jointly and severally liable for interfering with his state and constitutional rights to free speech, in violation of the M.G.L. c. 12, §§11H and I ("MCRA"). In Count V, Plaintiff avers that, under M.G.L. c. 149, §185 (the state's so-called "whistleblower law"), Freetown retaliated against him for exposing,

---

[3] See Plaintiff's objections at 12-13.

3

*inter alia*, corruption in the police department. Lastly, Plaintiff, in Counts VI and VI (sic) pleads common law tort claims of interference with advantageous business relationships and/or contractual business relationships and defamation, respectively, against Abbott and Sawicki in their individual capacities.

On February 24, 2005, Defendants moved to dismiss Plaintiff's Complaint.[4] In so moving, Defendants seek to dismiss *in toto* the Complaint.

## II. LEGAL ARGUMENT

### A. MOTION TO DISMISS STANDARD

The defense of a motion to dismiss based on a failure to state a claim may be made at the option of the pleader, pursuant to Fed.R.Civ.P. 12(b)(6).

The purpose of such a motion, as explained in Wright and Miller's Federal Practice and Procedure, is to:

> [T]est the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case. Thus, the provision must be read in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court and calls for 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Only when the plaintiff's complaint fails to meet this liberal pleading standard is it subject to dismissal under Rule 12(b)(6) . . . (internal citations omitted).

See Wright & Arthur R. Miller supra §1356.

---

[4] Defendants' Memorandum incorporates two attachments (A&B). Defendants seek to have the court consider both documents in ruling on their motion to dismiss, but without converting the motion "to one for summary judgment." Id. Plaintiff does not contest the authenticity of these documents or object to the court considering them in deciding Defendants' herein motion. See Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015, n.1 (1st Cir. 1988) cert. denied 488 U.S. 821(1988) (the first circuit, in ruling on a motion to dismiss, held that the district court did not err in considering an article attached to a defendant's Fed.R.Civ.P. 12(b)(6) motion; although the article was referred to, but not incorporated by reference in plaintiff's complaint, the first circuit held *inter alia* that the district court "properly considered the article as **part of plaintiff's complaint**) (emphasis added); but see Wright and Miller, Federal Practice and Procedure, Civil 3rd, vol. 5A, §1327 (West 2004) ("[t]he district court obviously is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the attached material, as long as the justice-seeking objectives of the federal rules are kept in mind") (internal citations omitted).

The legal principles underlying a plaintiff's successful challenge to this motion are summarized in Roth v. U.S., 952 F.2d 611, 613 (1st Cir. 1991). First, a civil complaint seeking money damages "should not be jettisoned for failure to state a claim unless it plainly appears that the plaintiff can prove no facts thereunder which would entitle (plaintiff) to recover." Id. citing Conley v. Gibson, 355 U.S. 41, 45, 46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957); see also Baxter v. Conte, 190 F.Supp.2d 123, 126 (D.Mass. 2001) quoting Conley v. Gibson supra at 355 U.S. 41, 45, 46 (a motion to dismiss should not be granted, unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

Second, in determining the legal sufficiency of a complaint, for purposes of withstanding a Fed.R.Civ.P. 12(b)(6) motion, the court "must accept as true the complaint's well-pled factual averments, excluding, however, 'bald assertions, periphrastic conclusions, or outright vituperation.'" Supra quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990).

Third, "the court must draw all inferences reasonably extractable from the pleaded facts in the manner most congenial to the plaintiff's theory." Supra quoting Miranda v. Pounce Federal Bank, 948 F.2d 41, 43 (1st Cir. 1991); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).

Fourth, a complaint should not be dismissed for claims based on inartful or indefinite pleadings. Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17-18 (1st Cir. 1992) (notwithstanding an "inartfully drawn" complaint, sufficient facts were alleged to assert a claim against the defendant).

Lastly, a "plaintiff is obliged to set forth in [his] complaint 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some

5

actionable legal theory.'" Supra quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). According to Roth, if a plaintiff has succeeded in this task, dismissal under Rule 12(b)(6) will not lie. Id.

### B. DEFENDANTS' GROUNDS FOR DISMISSAL, AS A MATTER OF LAW, ARE INSUFFICIENT UNDER FED.R.CIV.P. 12(B)(6).

As a preliminary matter, Defendants, with one limited exception,[5] have <u>not</u> reasserted their previous argument that Plaintiff's Complaint is untimely.[6] Nor have they offered a peremptory challenge Plaintiff's argument that otherwise time-barred claims are actionable under a continuing violation theory. Thus, the court should deem such a defense as waived. Moreover, although Defendants also seek to dismiss Plaintiff's Whistleblower claim (Count V), they fail to articulate any legal or factual basis for their argument. Accordingly, the court also should deny Defendants' motion to dismiss Count V.

#### 1. BY ASSERTING A STATE WHISTLEBLOWER CLAIM, PLAINTIFF HAS NOT WAIVED HIS RIGHT TO BRING A MCRA CLAIM AGAINST FREETOWN.

Defendants erroneously assert under the waiver provision of M.G.L. c. 149, §185(f), Plaintiff's MCRA claim against Freetown should be dismissed on grounds that there is "little or no substantive difference" between Plaintiff's MCRA and state Whistle-Blowing claims.[7] However, since Plaintiff <u>only</u> named Abbott and Sawicki as defendants in their individual

---

[5] See Defendants' Memorandum at 13, in which Defendants argue that "[t]he only allegedly false and defamatory oral statement specifically attributed by Plaintiff to Abbott in the Complaint is one that Plaintiff asserts was uttered by Abbott on or about February 13, 1999" (n.3 omitted); see infra section II(B)(f) for Plaintiff's rebuttal to Defendants' argument.

[6] See Defendants' Memorandum In Support Of Their Motion To Dismiss Plaintiff's First Amended Complaint at 7-8; Defendants' Response To Plaintiff's Objections To Magistrate Judge's Findings And Recommendations And Opposition To Plaintiff's Motion To Submit Additional Evidence In Support Of Plaintiff's Objections at 4-6; but see Plaintiff's Motion And Memorandum Of Law In Opposition To Defendants' Motion To Dismiss Plaintiff's First Amended Complaint at 3-9; Plaintiff's Objections To Magistrate Judge's Findings And Recommendation On Defendants' Motion To Dismiss First Amended Complaint at 9-12.

[7] See Defendants' Memorandum at 7.

capacities in Count IV – and not Freetown – Defendants' waiver argument is moot.[8] See Bennett v. City of Holyoke, 230 F.Supp.2d 207, 221 (D.Mass. 2002) aff'd. 362 F.2d 1 (1st Cir. 2004) ("The scope of the waiver is defined by the identity of the proper defendant under the statute. The Whistleblower statute permits only an 'employer' to be sued, not the individual supervisors.") (internal citation omitted).

### 2. PLAINTIFF'S 42 U.S.C. §1983 CLAIM IS LEGALLY SUFFICIENT TO WITHSTAND DEFENDANTS' MOTION TO DISMISS.

Defendants next contend that Plaintiff is legally barred from bringing a §1983 claim (Counts I and II) on two grounds.

First, Defendants argue that a §1983 claim does not lie against Abbott and Sawicki in their individual capacities, since the gravamen of Plaintiff's complaint allegedly does not concern "matters of public concern," but instead matters of "personal interest."[9] Second, they postulate that Plaintiff "can prove no set of facts to demonstrate that his speech was a substantial or motivating factor for the alleged retaliation against him."[10]

Defendants present no opposition to Abbott and Sawicki acting other than in their individual capacities and to Plaintiff's claim against Freetown. In other words, Defendants provide no argument in opposition to Plaintiff's claim that they acted as governmental agents engaged in a policy or custom of violating citizens' First Amendment rights and showed a deliberate indifference to providing adequate hiring, training and/or supervision of police officers (Count II). See Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (deprivation of constitutional right must be proven by means of "the execution of the

---

[8] See Complaint at Count IV.

[9] See Defendants' Memorandum at 8.

[10] Id. at 9-10.

government's policy or custom"). That said, Defendants' remaining grounds for dismissal are flawed for the following reasons.

The elements of a §1983 claim based on Plaintiff's theory of retaliation for engaging in protected speech are discussed in Bennett supra 230F.Supp.2d at 224 (citations omitted).[11] First, the court must consider whether the Plaintiff was "speaking out as a citizen on matters of public concern." Id. quoting Connick v. Meyers, 461 U.S. 138, 147, 148, 75 L.Ed.2d 708, 103 S.Ct. 1684 (1983). "Whether an employee's speech addresses matters of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick supra at 148. Second, if the speech touches upon a matter of public concern, then the court "must balance the strength of the employee's First Amendment interest, and any public interest in the information . . . against the strength of the countervailing governmental interest in promoting efficient performance." Bennett supra (citation omitted). Third, if the balance tips in favor of the employee, then the employee must show that the protected expression was a "substantial or motivating factor in the adverse employment decision." Id. (citation omitted). Fourth, if a plaintiff meets the third test, then the burden shifts to the defendant employer to prove that it would have reached the same adverse decision regardless of the protected conduct. Id. The first two elements are matters of law whereas the second two are matters for the fact-finder. Id.

Plaintiff has articulated numerous examples of ongoing retaliation involving Abbott and Sawicki, who, as government officials, are also Plaintiff's superior officers in the Freetown

---

[11] Defendants incorrectly rely on the analytical frameworks used in Martinez and Soto as the proper means for determining the legal sufficiency of Plaintiff's§1983 claim (Counts I and II), since neither case involved an employee suing a municipal employer and superior officers for First Amendment violations. Martinez v . Colon, 54 F.3d 980, 984 (1st Cir. 1995) (due process claim – police officer's duty to intervene); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997) (citizen alleging *inter alia* due process and equal protection violations in domestic violence case).

Police Department. For instance, Plaintiff alleges that Abbott, such as through supervisors like Sawicki, unjustly accused him of falsifying departmental records, engaging in conduct unbecoming of an officer, defaming him, and denying him advantageous training and career opportunities. He maintains that such retaliation is directly attributable to his ongoing complaints to his superiors and the Board of police corruption concerning the unlawful "double-dipping" of some officers who had simultaneously worked shifts while being paid White Mountain Cable Company details.[12] Lest there be no doubt as to the veracity of Plaintiff's accusations, even Abbott admits under oath that one of his subordinates, Elton E. Ashley, III (whom Abbott never criminally charged, but instead recommended be promoted to Police Sergeant), indeed committed a larceny by engaging in such activity.[13] Compare id. at 225 citing Pickering v. Bd. of Educ., 391 U.S. 563, 570, n.7, 569, 20 L.Ed.2d. 811, 88 S.Ct. 1731 (1968) (for the proposition that an employee is entitled to speak on matters of public concern without jeopardizing his or her job security, even if the employee "gets the details wrong").

Under recent case law in the first circuit, it is clear that employees who expose matters of police corruption may be entitled to First Amendment protection. "Statements uncovering corruption within a police department are precisely the type of communications that demand strong First Amendment Protection." Bennett supra at 224. The fact that an employee might have self-interest in exposing corruption does not preclude him or her from First Amendment protection. Id. at 225 (an employee "who personally dislikes, or bears a grudge against a particular individual, does not necessarily lose his right to make statements regarding that individual that raise matters of public concern, even if his motive in making the statements

---

[12] See Complaint at ¶12; see also Exhibits A-D appended thereto.

[13] Supra at ¶¶16-17.

9

derives partially or completely from personal animus"); see also Fabiano v. Hopkins, 352 F.3d 447, 454-55 (1st Cir. 2003) (in a summary judgment case involving a First Amendment §1983 claim, the first circuit opined that a former city employee's self-interest in the outcome of his lawsuit against the defendant's corporate client, which the first circuit deemed a form of protected speech, did not necessarily preclude him from raising issues of public concern, where there existed a "sufficient public dimension" to his state court civil action).

In the instant matter, Defendants completely mischaracterize Plaintiff's allegation of police corruption in their reference to his conversations with Ashley in July and September 1998. According to Defendants, such an exchange amounted to nothing more than a casual discussion on "internal police department politics."[14] Yet, paragraph 12 of the Complaint, as reproduced below, reveals nothing of the kind:

> On September 29, 1998, Ashley and another Freetown Police Officer approached Plaintiff, stating Abbott advised them to speak to Plaintiff to determine if the latter would "cover up" for both officers who had falsified time slips while working White Mountain Cable Company details. According to these officers, Abbott, using these officers as third parties, specifically requested Plaintiff to forge paperwork to protect the officers from claims that they were "double-dipping," that is, deliberately misappropriating funds. To his detriment, Plaintiff emphatically stated to these officers that he refused to participate in such a conspiracy.

At the heart of Plaintiff's contention is his claim that co-workers acted as agents for Abbott and conspired to enlist Plaintiff's cooperation – not simply to "*solicit*" (emphasis original) Plaintiff's "views"[15] - in an unlawful fraudulent scheme, which Plaintiff adamantly refused to be a part of. As a direct and immediate consequence thereof, Plaintiff alleges that Defendants engaged in a pattern and practice of retaliation, which Plaintiff unsuccessfully

---

[14] See Defendants' Memorandum at 9.

[15] Id.

10

attempted to address initially with his superiors and, later, with the Board.[16] Where Plaintiff avers that Abbott and those under his command attempted to "cover-up" police corruption in the Freetown Police Department, and, moreover, alleges that Sawicki threatened by advising him to "shut the fuck up" about making accusations of police corruption,[17] Defendants can hardly claim that their actions in response to Plaintiff's speech did not amount to deliberate, reckless or callous indifference to Plaintiff's and other citizens' constitutional rights. See Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (a state official, acting as a supervisor, can be held liable under §1983 for deliberate, reckless or callous indifference to a subordinate's constitutional rights) (citations omitted); see also Bennett supra at 227 (in denying supervisors absolute and qualified immunity on summary judgment, the court opined that "[d]ecades of law have clearly established that a public employer may not discipline an employee for protected speech").

Concerning Plaintiff's letters to the Board dated October 26, 2000 and November 22, 2000, Defendants mischaracterize as well the substance of those communications. In the former, Plaintiff lists a multitude of unlawful and unethical police practices, including Abbott deceiving the Board by recommending an employee for promotion to Police Sergeant on December 6, 1999, despite Abbott having knowledge that the officer engaged in unlawful, unethical misconduct.[18] Regarding the latter, Plaintiff, for example, not only refers to "being used as a scapegoat to cover up for other responsible officers" in the "White Mountain Cable details larceny," but also refers to the disappearance of "physical evidence" and the Board's refusal to

---

[16] See Complaint at ¶13; see also e.g. Exhibit A in which Plaintiff avers that Abbott subsequently falsely charged him of misconduct in 1998).

[17] Supra at ¶20.

[18] Supra Exhibit A.

11

refer the matter to an "outside agency" for investigation.[19] As for Plaintiff's grievance dated July 15, 2002, Plaintiff raises therein not only violations of the Collective Bargaining Agreement, but also *inter alia* a violation of the state's ethics law.[20] Cf. Bennett supra at 226-27 (for citations to other instances of police corruption and matters of public concern, such as issues involving allocation of police resources and alleged theft). While Plaintiff no doubt has a personal stake in the disposition of his charges, the court, in balancing Plaintiff's self-interest with the gravity of the charges, must nevertheless find that, as a matter of law, it would be premature to hold that Plaintiff's speech does not warrant First Amendment protection.

Finally, with respect to Defendants' bald claim that "Plaintiff can prove no set of facts to demonstrate that his speech was a substantial or a motivating factor for the alleged retaliation against him," Defendant's argument, for purposes of a Rule 12(b)(6) motion, must be rejected since such an issue is not a matter of law, but is one generally that is decided by a jury. Bennett supra at 224; see also id. at 226 (court rejected city's "conclusory say-so" argument that evidence in the record to suggest that the plaintiff's internal complaints were a disruption in the workplace). Plaintiff respectfully submits that a fair reading of the Complaint, when construed in a light most favorable to him, indicates that he has articulated numerous facts which, taken as a whole, demonstrate a continuing violation of Plaintiff's First Amendment rights.

### 3. PLAINTIFF'S CLAIM FOR VIOLATION UNDER PART I, ARTICLE XVI OF THE MASSACHUSTTS DECLARATION OF RIGHTS, IS LEGALLY SUFFICIENT, AS A MATTER OF LAW

Defendants' erroneous assertion that no independent cause of action exists to support Count III is refuted by at least one Massachusetts appellate decision. See Hosford v. School

---

[19] Id. Exhibit B.

[20] See Complaint Exhibit C.

Committee of Sandwich, 421 Mass. 708, 659 N.E.2d 1178, 1179, n.2 (Mass. 1996). In Hosford, the appeals court reversed summary judgment for the municipal employer and ordered judgment for the employee on the first count (Article 16 of the Massachusetts Declaration of Rights, as amended, as well as on a §1983 claim alleging a First Amendment rights violation). Id. Absent from the decision is any reference that the state constitutional claim was brought pursuant to M.G.L. c. 12, §§11H & I, in contrast to the plaintiff's federal claim which was filed pursuant to §1983. Like Hosford, Plaintiff avers a separate cause of action for Defendants' violation of his right to free speech under Article 16 of the state constitution.[21] Accordingly, Defendants prayer that Count III be dismissed should be denied, since Plaintiff has averred a legally viable claim under state law.[22]

### 4. PLAINTIFF HAS ARTICULATED A STATE CLAIM FOR RELIEF UNDER THE MCRA, CONTRARY TO DEFENDANTS' ASSERTION OTHERWISE.

In Count IV, Plaintiff has brought an MCRA claim against Abbott and Sawicki, pursuant to M.G.L. c. 12, §§H and I (the so-called "Massachusetts Civil Rights Act").

It has been held that since the MCRA is a remedial civil rights statute, it is therefore "entitled to a liberal construction of its terms." Buster v. George W. Moore, Inc., 438 Mass. 635, 783 N.E.2d 399, 409 (Mass. 2003) (citation omitted).

According to §IIH, whether or not a person or persons are acting under the color of law, a person can be held liable by threatening, coercing, intimidating or attempting to threaten, coerce, or interfere with an individual's state or federal constitution or statutory rights. In contrast to §1983 actions, the MCRA is broader in that it protects individual rights under state and federal

---

[21] Id. at 14.

[22] Should this Honorable Court determine otherwise, Plaintiff is not precluded from seeking damages under the MCRA (Count IV) by claiming *inter alia* that Abbott and Sawicki deprived him of his right to free speech under the state's Declaration of Rights.

constitutions and laws. See e.g. Burnett v. Grattan, 468 U.S. 42, 55, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1983). Thus, to the extent that Defendants' grounds for dismissal rest on the assertion that Plaintiff's MCRA and §1983 claims are "identical," Defendants' argument is legally incorrect.[23] Regardless, even assuming *arguendo* that Defendants' point is valid, Plaintiff, as a matter of right, is not estopped under either state or federal rules of civil procedure from pleading alternate or inconsistent claims for relief. See Fed.R.Civ.P. 8(e)(2) and Mass.R.Civ.P. 8(e)(2); see also Allstate Ins. Co. v. James, 779 F.2d 1536, 1540-41 (11th Cir. 1986) ("[l]itigants in federal court may pursue alternative theories of recovery, regardless of their consistency"); Linthicum v. Archambault, 379 Mass. 381, Mass., 398 N.E.2d 482, 486 (1979).

For reasons stated above in Section B(2), Plaintiff maintains that sufficient facts exist which, when construed in a light most favorable to him, and, as a matter of law, mandate a finding that Plaintiff's communications at issue involved matters of serious public concern. Hence, Defendants' motion to dismiss Count IV should be denied.

### 5. PLAINTIFF HAS ARTICULATED A CLAIM FOR RELIEF FOR INTERFERENCE WITH A CONTRACTUAL AND/OR ADVANTAGEOUS BUSINESS RELATIONSHIP AGAINST ABBOTT AND SAWICKI.

To pursue a claim for intentional interference with a contractual or advantageous business relationship, Plaintiff must demonstrate four elements: 1) that he has a contract or business relationship for economic benefit with a third party; 2) the defendants knew of that contract or relationship; 3) the defendants interfered with that contract or relationship through improper motive or means; and 4) the plaintiff's loss of the advantage resulted directly from the defendants' conduct. See McNamee v. Jenkins, 52 Mass.App.Ct. 503, 754 N.E.2d 740, 745 (Mass.App.Ct. 2001) citing Kurker v. Hill, 44 Mass.App.Ct. 184, 191, 689 N.E.2d 833 (1998).

---

[23] See Defendants' Memorandum at 10.

14

Defendants' argument that the Complaint lacks sufficient facts to support the above claim is without merit.

First, contrary to Defendants' claim that Plaintiff did not have a contract with Freetown, Plaintiff submits that such a contact indeed existed pursuant to the Collective Bargaining Agreement between Freetown and Plaintiff's union, of which the Plaintiff is a member.[24] The fact that there was such an agreement does not automatically prevent Plaintiff from bringing a tort claim outside the context of a labor dispute. Compare Naitram v. Local 2222 Of Intern. Broth. of Elec., 982 F.Supp. 83, 87 (D.Mass. 1997) (state defamation claim not subject to federal preemption, since it did not "threaten interference with NLRB's [National Labor Relations Board] interpretation and enforcement of the integrated scheme of regulation established by the NLRA" [National Labor Relations Act]); see also id. citing Farmer v. United Brotherhood of Carpenters, 430 U.S. 290, 303-05, 97 S.Ct. 1056, 1065-66; (1977) and Linn v. United Plant Guard Workers, 383 U.S. 53, 63-65, 86 S.Ct. 657, 663-64, 15 L.Ed.2d 582 (1966) (for the proposition that malicious and false statements of the defendants are not preempted by the NLRA).

Even assuming *arguendo* that no contract existed between Plaintiff and the Town of Freetown, Defendants, regardless, fail to rebut Plaintiff's assertion that at all times material herein he had an advantageous business relationship with his employer, that is, the town. See Harrison v. NetCentric Corporation, 433 Mass. 465, 744 N.E.2d 622, 632 (2001) (interference with an employee's at-will relationship with his employer, based on improper motive, does not preclude recovery for damages under this alternate tort theory).

---

[24] See Complaint, Exhibit C (copy of Plaintiff grievance).

15

Second, where Plaintiff filed a grievance directly with Abbott, the latter cannot feign ignorance of the existence of the contract. Similarly, in construing the facts most favorable to Plaintiff, it is reasonable to conclude that by filing his grievance through the chain of command, in a small department, Sawicki was aware of the contract as well. Regarding the third element of his prima facie case, Plaintiff has repeatedly pled that he was threatened with adverse employment action by both Abbott and Sawicki.[25] Surely, such threats toward Plaintiff were not intended to foster loyalty, but were done with the improper of intent to coerce Plaintiff into keeping his silence about police corruption. Finally, in that Plaintiff has alleged that he suffered loss of compensation because of being denied promotional overtime opportunities, he has met his burden of pleading damages to overcome the challenge of Defendants' 12(b)(6) motion.[26]

For the above reasons, Plaintiff respectfully urges the court to deny Defendants' motion to dismiss Count VI.

### 6. PLAINTIFF HAS ARTICULATED A CLAIM FOR RELIEF AGAINST ABBOTT AND SAWICKI FOR DEFAMATION OF CHARACTER.

Abbott and Sawicki contend that within the three-year limitations period, Plaintiff has failed to allege that he was defamed by either defendant. For the following reasons, their motion to dismiss plaintiff's defamation count must be rejected.

"Words may be defamatory if they hold the plaintiff up to contempt, hatred, scorn, or ridicule or tend to impair his standing in the community." See Grande & Son, Inc. v. Chace, 333 Mass. 166, 129 N.E.2d 898, 899 (Mass. 1995) cited by Bennett supra at 230 F.Supp.2d at 230. In order for Plaintiff to prove defamation, he must further show that the words discredit him in "the minds of any considerable and respectable class of the community. See id. citing Muchnick v.

---

[25] Supra at ¶¶12-14, 18, 20, 21, and 28.

[26] Id. at ¶¶13, 69 and Exhibit C.

Post Pub. Co., 332 Mass. 204, 125 N.E.2d 137, 138 (Mass. 1995). "Statements of fact or of opinion are by law not defamatory." Id. citing Rotkiewicz v. Sadowsky, 431 Mass. 748, 730 N.E.2d 282, 290 (Mass. 2000).

In order for the court to determine whether the alleged defamatory statement constitutes fact or opinion, the court must:

> examine the statement in its totality in the context it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to the cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.

Berard v. Town of Millville, 113 F.Supp.2d 197, 202 (D.Mass. 2000) citing Lyons v. Globe Newspaper, Co., 415 Mass. 258, 612 N.E.2d 1158, 1162 (1993).

In Berard, the court denied the defendant police chief's motion to dismiss a slander claim on grounds that the chief's statement to the Board of Selectmen that plaintiff made a "mistake" as a dispatcher was a "mixed opinion." Id. at 202. The court stated that a "'mixed opinion' is actionable if it may be reasonably understood to imply defamatory facts about the plaintiff. Id.; compare Bennett supra (in which the court denied summary judgment on plaintiff's defamation claims in which the plaintiff accused his police chief of libel for making statements to a newspaper accusing his police sergeant of being a "substandard performer who has given the department a black eye," "impugned the integrity of this fine department," "has been a problem for years," and "is not worthy of being here"); Id. Similarly, it has been held that a police officer accused of filing a false police report defamatory *per se*. See McNamee v. Jenkins, 52 Mass.App.Ct. 503, 754 N.E.2d 740, 744, n.3 (Mass.App.Ct. 2001).

In the instant matter, Plaintiff contends that Abbott "openly and continuously began a practice of retaliation of ongoing harassment against Plaintiff . . . either directly or indirectly

Post Pub. Co., 332 Mass. 204, 125 N.E.2d 137, 138 (Mass. 1995). "Statements of fact or of opinion are by law not defamatory." Id. citing Rotkiewicz v. Sadowsky, 431 Mass. 748, 730 N.E.2d 282, 290 (Mass. 2000).

In order for the court to determine whether the alleged defamatory statement constitutes fact or opinion, the court must:

> examine the statement in its totality in the context it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to the cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.

Berard v. Town of Millville, 113 F.Supp.2d 197, 202 (D.Mass. 2000) citing Lyons v. Globe Newspaper, Co., 415 Mass. 258, 612 N.E.2d 1158, 1162 (1993).

In Berard, the court denied the defendant police chief's motion to dismiss a slander claim on grounds that the chief's statement to the Board of Selectmen that plaintiff made a "mistake" as a dispatcher was a "mixed opinion." Id. at 202. The court stated that a "'mixed opinion' is actionable if it may be reasonably understood to imply defamatory facts about the plaintiff. Id.; compare Bennett supra (in which the court denied summary judgment on plaintiff's defamation claims in which the plaintiff accused his police chief of libel for making statements to a newspaper accusing his police sergeant of being a "substandard performer who has given the department a black eye," "impugned the integrity of this fine department," "has been a problem for years," and "is not worthy of being here"); Id. Similarly, it has been held that a police officer accused of filing a false police report defamatory *per se*. See McNamee v. Jenkins, 52 Mass.App.Ct. 503, 754 N.E.2d 740, 744, n.3 (Mass.App.Ct. 2001).

In the instant matter, Plaintiff contends that Abbott "openly and continuously began a practice of retaliation of ongoing harassment against Plaintiff . . . either directly or indirectly

through other supervisors like Sawicki."[27] [28] Plaintiff avers that Abbott falsely accused him of falsifying records and damaged his reputation as a result.[29] Such comments were openly made by Abbott and published to third parties, as exemplified, for example, by Plaintiff's June 27, 2003 letter to Board Chairman Lawrence Ashley (which Plaintiff copied to Abbott) being surreptitiously posted on the union bulletin board.[30] As for Sawicki, Plaintiff avers *inter alia* that Sawicki, in the summer of 2003, knowingly and recklessly told a clerk and Assistant District Attorney at the Bristol County District Attorney's Office that Plaintiff *inter alia* has a mental disorder, feigned a serious-work injury, and is professionally incompetent.[31]

As for the correspondence sent to Plaintiff by Abbott and Sawicki on July 21, 2003 and December 29, 2003, respectively, Defendants' claim that Plaintiff fails to allege publication of same to one or more third parties is contradicted by the explicit language of the Complaint.[32] With respect to Abbott's letter, the letter was attached to a Boston Globe article entitled "Race, Sex, and Age Drive Ticketing."[33] In the article, a black motorist refers to a white Freetown Police Officer (Plaintiff) who ticketed him for speeding. The motorist claims that he had "no way of knowing whether some combination of age, sex, and race caused this officer to write him

---

[27] Id. at ¶13.

[28] As Abbott's Lieutenant, Sawicki, arguably was not only under the command of Abbott, but acted as the latter's agent in carrying out Abbott's orders. Plaintiff's averments that Sawicki threatened him by telling him to "shut the fuck up" about making accusations of police corruption and his comment to Plaintiff that an anonymous citizen complaint against him should be expected for accusing "the chief of corruption" lend support to Plaintiff's claim that Sawicki's communications to Plaintiff were undertaken to support and advance further Abbott's illegitimate interests. See id. at ¶20.

[29] Id. at ¶13; Exhibits A-D, E.

[30] Id. at ¶19.

[31] Id. at ¶13(f).

[32] Id. at ¶¶22, 30, 70-73.

[33] See Defendants' Memorandum, Attachment A.

a ticket." By Abbott referencing this motorist in his letter, and by writing "(a)llegations of racial or gender profiling or discriminatory practices, real or perceived, are detrimental to the relationship between the police and the communities they serve . . ." Abbott implies that Plaintiff engaged in racial profiling or discriminatory practices. Absent from his letter are any facts which exonerate or find fault with Plaintiff's basis for ticketing the motorist. Given such an ambiguity, Abbott's correspondence is not legally protected speech, but arguably defamatory. See Myers v. Boston Magazine Co., Inc., 380 Mass. 336., Mass., 403 N.E.2d 376, 377 (1980) (an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed facts on which the opinion is based is sufficient for an action of defamation). Regarding Sawicki, Plaintiff alleges that Sawicki falsely accused him of being "insubordinate" and engaging in "conduct unbecoming an officer."[34] Under Bennett supra, such statements by Sawicki are actionable, as a matter of law.

As for Defendants' conditional privilege argument under Bratt, whether either defendant would be protected depends upon whether a jury were to find that they acted recklessly toward Plaintiff. In Bratt, the Massachusetts Supreme Judicial Court stated that a conditional privilege in a defamation action hinges on whether defendant acted recklessly. Bratt v. Intern. Business Machines. Corp., 392 Mass. 508, 467 N.E.2d 126, 132 (Mass. 1984). Malice on the part of the individual defendants may be proven if, for example, Plaintiff can demonstrate evidence that Abbott and/or Sawicki engaged in a conspiracy to chill Plaintiff's efforts to speak out about police corruption in the Freetown Police Department. Facts which may prove this assertion include Sawicki's threat to Plaintiff to "shut the fuck up" about the latter accusing the chief of corruption and Abbott singling out Plaintiff for alleged racial or gender profiling in issue traffic

---

[34] See Complaint at ¶30; see also Defendants' Attachment B.

19

tickets.[35] It has been held that a "motion to dismiss is not the correct vehicle to attack a plaintiff's defamation claim by asserting a conditional privilege," since defendants need to produce additional relevant facts to support the privilege. Berard supra.quoting Chan v. Immunetics, 1999 WL 218490 at *5 (Mass.Super. April 7, 1999).

For these reasons, Defendants have failed to meet their burden to sustain a motion to dismiss.

### III. CONCLUSION

As argued above, Defendants' motion under Fed.R.Civ.P. 12(b)(6) must be denied. In the alternative, Plaintiff respectfully requests that in the event the court allows their motion, he be granted additional leave to further amend to provide him the opportunity to clarify factual allegations and otherwise cure defects in the Complaint. See DiPerri v. FAA, 671 F.2d 54, 59 n.4 (1st Cir. 1992) (first circuit opined that if a plaintiff "fails to initially articulate his claim with specificity. . . district courts should be liberal in granting leave to amend so that he may reformulate his claim acceptably").

### IV. REQUEST FOR ORAL ARGUMENT

Pursuant to LR. 7.1(D), Plaintiff requests a hearing on the herein motion.

Respectfully submitted by:

_____
Howard Mark Fine, Esquire
86 Sherman Street
Cambridge, Massachusetts 02140-3233
B.B.O. No. 554671
617-868-9200

Dated: March 24, 2005

---

[35] Id.; see also ¶21.