UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-CV-12417-PBS

JON M. TAYLOR,

Plaintiff

v.

TOWN OF FREETOWN, CARLTON E. ABBOTT JR.,
individually and as Chief of the Freetown Police
Department, and WALTER J. SAWICKI, individually
and as Lieutenant of the Freetown Police Department,

Defendants

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT
(Docket # 28)**

ALEXANDER, M.J.

On November 9, 2004, this Court issued a Report and Recommendation that

the District Court allow defendants Town of Freetown ("Freetown"), Carlton E.

Abbott, Jr. and Walter J. Sawicki's motion to dismiss plaintiff Jon M. Taylor's

complaint.  Mr. Taylor is a police officer in Freetown.  Mssrs. Abbott and Sawicki

are two of his supervising officers.  Officer Taylor's original complaint alleged

claims pursuant to 42 U.S.C. § 1983; the Massachusetts Civil Rights Act, Mass.

Gen. Laws c. 12, §§ 11H and I (the "MCRA"); and Mass. Gen. Laws c. 149,

§ 185, Massachusetts' whistleblower statute (the "Whistleblower Act"), as well as common law claims of intentional interference with advantageous business relations and defamation. This Court recommended that the claims be dismissed on the basis that the various applicable statutes of limitation barred Officer Taylor's claims. The District Court thereafter allowed Officer Taylor to amend his complaint, to remedy the statutes of limitation problems. After Officer Taylor filed his second amended complaint, the defendants again moved to dismiss. That motion was referred to this Court for a Report and Recommendation and, for the reasons set forth more fully below, this Court now recommends that the District Court ALLOW IN PART and DENY IN PART the defendants' motion to dismiss.

**RELEVANT BACKGROUND**

Much of the relevant background is iterated in this Court's November 2004 Report and Recommendation. Because, however, Officer Taylor's second amended complaint – the complaint with which this Court is now concerned – alleges additional facts not included in the original complaint, the Court will set forth those facts anew. As with all motions to dismiss, this Court must accept as true all well-pleaded facts and extend Officer Taylor the benefit of all reasonable inferences. Raytheon Co. v. Cont'l Cas. Co., 123 F. Supp. 2d 22, 24

(D. Mass. 2000).  With this standard in mind, the facts underlying this case, as taken from Officer Taylor's second amended complaint, are as follows.

Officer Taylor began his employment with the Freetown Police Department in November 1988.  Second Amended Complaint ("Cmpl.")  ¶ 3.  He was employed first as an auxiliary officer, then as a reserve officer, and, since September 1997, as a full-time officer.  Id. ¶ 7.  In July 1998, Carlton Abbott, Jr. became Freetown's Chief of Police.  Id. ¶ 10.  Shortly thereafter, another Freetown police officer, Elton Ashley, under the direction of Chief Abbott, asked Officer Taylor whose "side" he was on – Chief Abbott's or a different group of officers – and was told that if he was not on Chief Abbott's "side" he would be "on the outside looking in." Id. ¶ 11. Officer Taylor stated that he was politically neutral. Id.

In September 1998, Officer Ashley again approached Officer Taylor, this time with another officer, and told Officer Taylor that Chief Abbott had asked them to ask Officer Taylor if he would "cover up" falsifications of time slips related to police details performed for White Mountain Cable Company ("the White Mountain incident").  Id. ¶ 12.  Officer Taylor refused to participate in any cover-up.  Id.

3

Shortly after this conversation, according to Officer Taylor, Chief Abbott "openly and continuously began a pattern and practice of retaliation and ongoing harassment against" Officer Taylor. Id. ¶ 13. Officer Taylor alleges that some of the retaliatory acts were conducted by individuals other than Chief Abbott, including defendant Lieutenant Walter J. Sawicki. Id. The continuous harassment and retaliatory acts, as alleged by Officer Taylor, include, among other things, unjustly accusing Officer Taylor of falsifying departmental records and conduct unbecoming an officer; unjustly denying Officer Taylor training, teaching and related career opportunities in August of 2000, April of 2001, July of 2002, and the beginning of 2003; denying Officer Taylor favorable shifts and assignments (including being reassigned, by Chief Abbott, without notice, "to work solely midnight shifts in contrast to junior officers"); depriving Officer Taylor of overtime opportunities and subjecting him to closer supervision than some of his colleagues; unjustly and repeatedly precluding Officer Taylor from competing for police sergeant positions on May 5, 1999, November 20, 2002, and in January 2003; maligning Officer Taylor's good character and reputation within the Freetown Police Department, examples of which include Chief Abbott telling other officers, in February 1999, that Officer Taylor was incompetent and could not be entrusted to be an "'Officer-in-Charge'" and Lieutenant Sawicki telling an

4

Assistant District Attorney, in the summer of 2003, that Officer Taylor had faked a recent work-related injury; threatening Officer Taylor with unwarranted disciplinary action on February 6, 2000; assigning Officer Taylor older, less safe police cruisers; tampering with Officer Taylor's personnel file; and advising a newly-appointed supervisor to "watch out for Officer Taylor" and to "write him up whenever you can." Id.

Officer Taylor also alleges that Chief Abbott had evidence of wrong-doing within the police department but failed to act on that information. Id. ¶¶ 15-18. Additionally, Officer Taylor contends that since his original complaint was filed he has been subject to further harassment including being issued a written warning on June 27, 2004, by Chief Abbott concerning three alleged instances of tardiness. Id. ¶ 32.

On October 26, 2000, November 22, 2000, July 17, 2002, and June 27, 2003, Officer Taylor wrote to Chief Abbott and the Freetown Board of Selectmen ("the Board") regarding some of his concerns. Id. ¶ 19. Officer Taylor's letters, which addressed, among other things, Chief Abbott's and the Board's failure to respond to the White Mountain incident, were posted on a bulletin board at the Freetown Police Station. Id. Officer Taylor's June 27, 2003, letter specifically addresses his claims of retaliation. Id. Ex. D. On July 24, 2003, the Board

5

responded to Officer Taylor in writing, stating that it had investigated his
complaints but had found nothing to substantiate his claims of retaliation.
Id. ¶ 22.  On August 14, 2003, however, Freetown's Town Clerk acknowledged, in
writing, that the Town Clerk's office had no public records on file regarding any
investigation or any documents regarding complaints made by Officer Taylor.
Id. ¶ 23 and Ex. F.

In May 2003, Officer Taylor spoke to Lieutenant Sawicki about an
anonymous citizen complaint that had been placed in Officer Taylor's mailbox at
the police station.  Id. ¶ 20.  Lieutenant Sawicki allegedly threatened Officer
Taylor, advising him to "Shut the fuck up," and asking him "'What do you expect
when you accuse the chief of corruption?'"  Id.

On October 2, 2003, Officer Taylor send the Board a "written presentment
of his claims," and on December 1, 2003, filed his original complaint against
Freetown, Chief Abbott, and Lieutenant Sawicki.  Id. ¶¶ 27, 29.  Then, on
December 29, 2003, Lieutenant Sawicki filed a written complaint with Chief
Abbott alleging that Officer Taylor was insubordinate and engaged in conduct
unbecoming an officer.  Id. ¶ 30.  Officer Taylor's second amended complaint,
filed on January 13, 2005, also lists a number of complaints filed in federal and

state court by other Freetown police officers that allege, *inter alia*, discrimination and unlawful retaliation.  Id. ¶ 24.

**ANALYSIS**

The purpose of a motion to dismiss is to determine whether a complaint, in accordance with Fed. R. Civ. P. 8(a)(2), contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  E.g., Raytheon Co., 123 F. Supp. 2d at 26.  Pursuant to this standard, a plaintiff need not "set out in detail the facts upon which he bases his claims."  Id. at 27 (citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)).

It is well established that "'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Castegneto v. Corporate Express, Inc., 13 F. Supp. 2d 114, 116 (D. Mass. 1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  "'[T]he issue is not whether the plaintiff will ultimately prevail, but whether that party is entitled to offer evidence to support its claims.'"  Raytheon, 123 F. Supp. 2d at 27 (quoting Day v. Fallon Cmty. Health Plan, Inc., 917 F. Supp. 72, 75 (D. Mass. 1996)).  Therefore, the District Court may only dismiss Officer Taylor's claims if, extending every reasonable inference in Officer Taylor's favor, it finds that Officer Taylor's claims

7

are legally insufficient to state a claim.  Coyne v. City of Somerville, 972 F.2d

440, 442-43 (1st Cir. 1992).  With this standard in mind, the Court turns to the

defendants' asseverations in favor of dismissal.

**Statute of Limitations**

As an initial matter, this Court finds that Officer Taylor has remedied, at

least for purposes of a motion to dismiss, the statutes of limitation problems that

prompted this Court to recommend allowing the motion to dismiss his original

complaint.  As detailed in this Court's first Report & Recommendation, Officer

Taylor's original complaint did not allege any events during the applicable

limitation periods that would support Officer Taylor's claims.  The Court also

rejected Officer Taylor's continuing violation theory on the basis that the doctrine

had never before been applied to claims of the type alleged by Officer Taylor.  In

his second amended complaint, Officer Taylor has provided some additional

details, and, importantly, additional dates, of events that allegedly occurred during

the limitation periods, saving the complaint from dismissal on statutes of

limitation grounds.  The Court therefore turns to each of Officer Taylor's claims,

two of which did not appear in the previously dismissed complaint, and addresses

each *seriatim*.

**Counts I & II – First Amendment Claims**

In Counts I and II of his second amended complaint, Officer Taylor avers that Freetown, Chief Abbott and Lieutenant Sawicki deprived him of his First Amendment right to free speech by harassing and retaliating against him after he spoke out against police corruption in the Freetown Police Department. Although he has alleged two separate counts, the same law and analysis applies to both and the Court therefore addresses them together. The claims against Chief Abbott and Lieutenant Sawicki in their individual capacities do, however, require a different analysis than the claims against Freetown and against Chief Abbott and Lieutenant Sawicki in their official capacities. The Court turns first to the claims against the individual officers.

**First Amendment Claims Against Chief Abbott and Lieutenant Sawicki Individually**

The First Amendment claims are brought pursuant to 42 U.S.C. § 1983, which provides, in pertinent part, that

> Every person who, under color any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

9

42 U.S.C. § 1983. Chief Abbott and Lieutenant Sawicki, therefore, must have been acting under color of law when they engaged in the alleged retaliatory actions against Officer Taylor in order for Officer Taylor's First Amendment claims against them to survive.

As this Court iterated in its previous Report and Recommendation, the First Circuit has, on more than one recent occasion, set forth the required elements of a public employee's First Amendment claim. E.g., Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004); Fabiano v. Hopkins, 352 F.3d 447, 453 (1st Cir. 2003); Mullin v. Town of Fairhaven, 284 F.3d 31, 37-38 (1st Cir. 2002). The three-part inquiry is as follows:

> (1) whether the speech involves a matter of public concern; (2) whether, when balanced against each other, the First Amendment interests of the plaintiff and the public outweigh the government's interest in functioning efficiently; and (3) whether the protected speech was a substantial or motivating factor in the adverse action against the plaintiff. Mullin v. Town of Fairhaven, 284 F.3d 31, 37-38 (1st Cir. 2002) (discussing the Supreme Court precedents that require each of these inquiries: Connick v. Myers, 461 U.S. 138, 147-48, 103 S. Ct. 1684, 75 L.Ed.2d 708 (1983) (matter of public concern requirement); Pickering v. Board of Educ., 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968) (balancing requirement); Mt. Healthy City School Dist. Bd. Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977) (substantial factor requirement).

10

Mihos, 358 F.3d at 102.

A determination as to whether a public employee's speech involves a matter of public concern is based on "'the content, form, and context' of the given statements 'as revealed by the whole record.'" Putnam v. Town of Saugus, 365 F. Supp. 2d 151, 168 (D. Mass. 2005) (quoting Connick, 461 U.S. at 147-48). "Speech touches upon a matter of public concern if it can be 'fairly considered as relating to any matter of political, social or other concern to the community.'" Id. (quoting Connick, 461 U.S. at 146). Officer Taylor avers that his communications to the Board constitute speech involving a matter of public concern. The defendants counter that the letters address only personnel matters particular to Officer Taylor rather than matters of "public concern."

Officer Taylor's letter dated June 27, 2003, asserts that Chief Abbott falsely accused him of falsifying departmental records and that such action was the direct result of Officer Taylor's having complained internally within the Police Department about the unlawful conduct of other police officers in the White Mountain Cable incident. Cmpl. Ex. D. Although the letter focuses on alleged retaliation taken against Officer Taylor after his internal complaint, that retaliation stems from an issue that is clearly a matter of public concern: alleged police corruption. See, e.g., Putnam, 365 F. Supp. 2d at 169 ("[T]he law is quite clear

11

that speech . . . relating to the possible corruption of public officials addresses a matter of public concern" (citing <u>Rivera-Jimenez v. Pierluisi</u>, 362 F.3d 87, 94 (1st Cir. 2004))).

The next step in the inquiry requires balancing Officer Taylor's and the public's First Amendment interests against the government's interest in functioning efficiently.  Neither Officer Taylor nor the defendants address this piece of the analysis.  At this stage of the process, however – for purposes of this motion to dismiss – it is enough to say that Officer Taylor has alleged sufficient facts that, if true, could demonstrate that Officer Taylor's and the public's interest in police corruption outweigh any departmental interest in efficient administration

In the final stage of the First Amendment inquiry, Officer Taylor will be required to show that he suffered adverse action as a direct result of his protected speech.  Although Officer Taylor's original complaint failed to allege any adverse employment action during the applicable statute of limitations period, Officer Taylor's second amended complaint overcomes this obstacle.  Officer Taylor alleges, for example, that he was denied "advantageous training, teaching, and related career opportunities" and was "by-passed repeatedly . . . in the selection process for filling permanent or temporary Police Sergeant positions . . . in favor of officers with less qualifications . . . ."  Cmpl. ¶ 13.  These events, if true and if

as a result of Officer Taylor's having engaged in protected speech, would support

Officer Taylor's First Amendment claim and are sufficient to overcome a motion

to dismiss as to Officer Abbott and Lieutenant Sawicki.

### First Amendment Claims against Freetown and Chief Abbott and Lieutenant Sawicki in Their Official Capacities

As both parties recognize,"a municipality cannot be held liable *solely*

because it employs a tortfeasor – or, in other words, a municipality cannot be held

liable under § 1983 on a *respondeat superior* theory."  Monell v. Dep't of Soc.

Servs., 436 U.S. 658, 691 (1978).  Instead, to establish liability against a

municipality, a plaintiff "must prove deprivation of a constitutional right by means

of 'the execution of the government's policy or custom.'"  Fabiano, 352 F.3d at

452 (1st Cir. 2003) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

See also Putnam, 365 F. Supp. 2d at 178 (discussing municipal liability in First

Amendment claims).  Although the defendants set forth this standard in their

memorandum in support of their motion to dismiss the second amended complaint,

they do nothing more than that.  That is, they utterly fail to apply the standard to

Officer Taylor's complaint.  Officer Taylor appears to suggest, therefore, that the

defendants' motion to dismiss the First Amendment claims against Freetown and

Chief Abbott and Lieutenant Sawicki in their official capacities must be denied.

13

It is not incumbent on this Court to make the defendants' arguments for them.[1]  Furthermore, regardless of this Court's view of whether Officer Taylor's First Amendment claims against Freetown and Chief Abbott and Lieutenant Sawicki in their official capacities might succeed, a recent District Court opinion suggests that, at the very least, the claim should survive a motion to dismiss.  See Putnam, 365 F. Supp. 2d at 178-93 (discussing, at length, the possibility that "an official's single act can serve as a policy and thus establish a basis for municipal liability").  This Court therefore RECOMMENDS that the District Court DENY the defendants' motion to dismiss counts I and II of Officer Taylor's second amended complaint.

**Count III - Massachusetts Declaration of Rights Claim**

In Count III of his second amended complaint, Officer Taylor asserts that the defendants violated the right to free speech guaranteed him by art. 16 of the Massachusetts Declaration of Rights.  Article 16 states, in pertinent part, that "[t]he right of free speech shall not be abridged."

---

[1]The defendants did address the policy or custom issue in their first motion to dismiss, but, other than setting forth the relevant law, they fail to provide a cogent assertion in support of the pending motion.

14

The defendants asseverate that Massachusetts law does not provide for an independent cause of action for interference with the right to free speech. Officer Taylor, on the other hand, asserts that at least one Massachusetts case suggests that an independent cause of action does exist. In Hosford v. School Committee of Sandwich, 421 Mass. 708 (1996), the Massachusetts Supreme Judicial Court ("SJC") reversed the trial court's grant of summary judgment for the defendants on the plaintiff's claims alleging a violation of her First Amendment rights pursuant to art. 16 and 42 U.S.C. § 1983 . Id. at 709 and n. 2. Hosford does not specifically address whether an independent cause of action exists for claims under the Massachusetts Declaration of Rights. The Court agrees with Officer Taylor, however, that Hosford at least suggests that such a cause of action does exist, and therefore RECOMMENDS that the defendants' motion to dismiss Count III be DENIED.[2]

## Count IV – Massachusetts Civil Rights Act Claim

Officer Taylor asserts, in count IV of his second amended complaint, that the defendants have violated the MCRA, Mass. Gen. Laws c. 12, §§ 11 H and I, by

---

[2]It is worth noting that the analysis of a claim under art. 16 does not differ from the analysis of a First Amendment claim. Hosford, 421 Mass. at 712 n. 5 (federal freedom of speech analysis guides state analysis). The assessment of Officer Taylor's First Amendment claims, as the case progresses, will therefore apply with equal force to his claim under art. 16.

interfering or attempting to interfere, with his constitutional right to free speech.

To succeed on an MCRA claim, a plaintiff must show that

> (1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion.

Bennett v. City of Holyoke, 230 F. Supp. 2d 201, 227 (D. Mass. 2002).

The defendants assert, first, that Officer Taylor has waived his MCRA claim by bringing a claim under Mass. Gen. Laws c. 149, § 185, the Whistleblower Act. The institution of an action pursuant to the Whistleblower Act "shall be deemed a waiver by the plaintiff of the rights and remedies available to him, for the actions of the employer, under any other contract, collective bargaining agreement, state law, rule or regulation, or under the common law."  Mass. Gen. Laws c. 149, § 185(f).  Officer Taylor avers, however, that because he has brought his MCRA claim only against Chief Abbott and Lieutenant Sawicki in their individual capacities and his Whistleblower Act claim only against Freetown, the waiver provision does not apply.

Both the defendants and Officer Taylor rely on <u>Bennett</u> in support of their respective positions.  As <u>Bennett</u> states, the Whistleblower Act permits claims against only an employer and not individual employees.  <u>Bennett</u>, 230 F. Supp. 2d at 221 (citing <u>Orell v. UMass Mem'l Med. Ctr., Inc.</u>, 203 F. Supp. 2d 52 (D. Mass. 2002)).  The <u>Bennett</u> Court therefore granted summary judgment in favor of the individual defendants on the plaintiff's Whistleblower Act claims against them.  <u>Id.</u>  The Court did not, however, grant summary judgment on the Whistleblower Act claim against the plaintiff's employer, the City of Holyoke.  In so doing, the Court also noted that Holyoke could not invoke the waiver provision as to any claims that the plaintiff could not pursue under the Whistleblower Act. <u>Id.</u> As <u>Bennett</u> itself states, in reference to another court's interpretation of the Whistleblower Act, "[t]his is surely correct."  <u>Id.</u> at 220.  The Whistleblower Act can not be held to preclude claims that a plaintiff can not bring pursuant to the Whistleblower Act itself.

Officer Taylor can not, and did not, bring a Whistleblower Act claim against Chief Abbott and Lieutenant Sawicki.  The Whistleblower Act thus can not preclude his MCRA claims against Chief Abbott and Lieutenant Sawicki even if, as the defendants assert, little substantive difference exists between the Whistleblower Act and MCRA claims.

17

The defendants also assert a second basis for dismissing Officer Taylor's MCRA claim – that because Officer Taylor can not demonstrate a violation of his First Amendment rights – because he can not show that the speech in question addresses a matter of public concern – he can not meet the requirements of his MCRA claim. As iterated *supra*, however, Officer Taylor has sufficiently pled his First Amendment claims to survive a motion to dismiss. For his MCRA claim to survive, however, Officer Taylor must sufficiently allege facts that, if true, would demonstrate interference, or attempted interference, with his First Amendment rights by threats, intimidation or coercion.

Neither the defendants nor Officer Taylor address the "threats, intimidation or coercion" issue, which the Court finds puzzling, at best, given that it is a key element of any MCRA claim. The SJC has defined each of the words as follows:

> "Threat" in this context involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. "Intimidation" involves putting in fear for the purpose of compelling or deterring conduct. [We accept] a definition of coercion from Webster's New International Dictionary at 519 (2d. ed. 1959): "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 631 N.E.2d 985, 990 (1994) (citations omitted), cert. denied, 513 U.S. 868, 115 S. Ct. 188, 130 L. Ed. 2d 122 (1994); see Carvalho v. Town of Westport, 140 F.

Supp. 2d 95, 100-01 (D. Mass. 2001) ("[T]he Supreme Judicial Court has suggested that a showing of an 'actual or potential physical confrontation accompanied by a threat of harm' is a required element of a claim under the Act.")

Bennett, 230 F. Supp. 2d at 228.

A review of Officer Taylor's second amended complaint fails to provide any examples of conduct within the applicable limitations period that would amount to the required conduct.  Certainly Officer Taylor alleges no facts as to Chief Abbott, and as to Lieutenant Sawicki, the closest Officer Taylor comes is an allegation that Lieutenant Sawicki told Officer Taylor to "shut the fuck up" about making any further accusations of police corruption.  This Court finds that such a statement, on its own, does not sufficiently constitute a threat, intimidation or coercion, and therefore RECOMMENDS that the District Court ALLOW the defendants' motion to dismiss count IV of Officer Taylor's second amended complaint.

**Count V – Whistleblower Act Claim**

As previously explicated, Officer Taylor's Whistleblower Act claim applies solely to Freetown.  Officer Taylor asserts that Freetown has retaliated against him for having engaged in lawful activity.  Although the defendants have moved to dismiss this claim, they address the Whistleblower Act only in the context of

19

waiver of Officer Taylor's MCRA claim.  The defendants asseverate nothing in

support of their position that the Whistleblower Act claim against Freetown itself

should be dismissed.  The Court, therefore, RECOMMENDS that the District

Court DENY the defendants' motion to dismiss count V of the second amended

complaint.

### Count VI – Interference with Advantageous Business Relationships and/or Contractual Business Relationships

To prove a claim for interference with a business relationship under

Massachusetts law, a plaintiff must demonstrate that

> (1) he had a business relationship, (2) the defendant
> knew of this relationship, (3) the defendant intentionally
> and maliciously interfered with the relationship, and (4)
> the defendant's actions harmed him.

Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 75-76 (1st Cir. 2001)

(citing Comey v. Hill, 387 Mass. 11, 438 N.E.2d 811, 816 (1982).  The defendants

assert that Officer Taylor has alleged no facts that would establish any of these

criteria.  The Court does not agree.

Although Chief Abbott and Lieutenant Sawicki, as supervisors, "are entitled

to a qualified privilege in an employment-based tortious interference case . . . this

qualified privilege may be overcome . . . by a showing of actual malice."  Bennett,

230 F. Supp. 2d at 229 (citations and internal quotations omitted).  A "valid claim for . . . unlawful retaliation" can "lend themselves to proof of malice in the context of a tortious interference claim . . . ."  Id.  If Officer Taylor's First Amendment and retaliation claims can survive a motion to dismiss – and this Court has recommended that they can – then his interference with a business relationship claim should survive as well.  See id.

Without, again, a view toward whether Officer Taylor's claim might ultimately succeed and merely for purposes of a motion to dismiss, this Court finds that Officer Taylor's second amended complaint sufficiently pleads facts to establish a claim for tortious interference with a business relationship.  The Court therefore RECOMMENDS that the District Court DENY the defendants' motion to dismiss count VI of Officer Taylor's second amended complaint.

**Count VII – Defamation**[3]

Officer Taylor's final count alleges that Chief Abbott and Lieutenant Sawicki, in their individual capacities, "knowingly, maliciously or with a reckless disregard for the truth, generated false and defamatory written and oral statements

---

[3]Officer Taylor's second complaint lists both his interference with an advantageous business relationship and his defamation claims as "Count VI".  For purposes of clarity, this Court will refer to his defamation claim, which appears after his interference with an advantageous business relationship claim, as Count VII.

concerning" Officer Taylor.  Cmpl. ¶ 71.  To maintain an action for defamation

under Massachusetts Law, a non-public figure such as Officer Taylor

> must allege facts to show that (1) the defendant made a
> statement "of and concerning" the plaintiff to a third
> party; (2) the statement was defamatory, meaning it
> could damage the plaintiff's reputation in the community;
> (3) defendant was at fault in making the statement; and
> (4) the statement either caused the plaintiff economic
> loss, or is actionable without proof of economic loss.
> See Ravnikar v. Bogojavlensky, 438 Mass. 627, 629-30,
> 782 N.E.2d 508 (2003); see also Yohe v. Nugent, 321 F.
> 3d 35, 40 (1st Cir. 2003).

Stanton v. Metro Corp., 357 F. Supp. 2d 369, 373-74 (D. Mass. 2005).

Additionally,

> To survive a motion to dismiss, a defamation plaintiff
> must plead:
>
> (1) the general tenor of the libel or slander claim, along
> with the precise wording of at least one sentence of the
> alleged defamatory statement(s);
>
> (2) the means and approximate dates of publication; and
>
> (3) the falsity of those statements.

Berard v. Town of Millville, 113 F. Supp. 2d 197, 201 (D. Mass. 2000) (citing

Dorn v. Astra USA, 975 F. Supp. 388, 193 (D. Mass. 1997)).

22

Officer Taylor alleges that Chief Abbott, either directly or indirectly through other supervisors such as Lieutenant Sawicki, engaged in open and continuous retaliation and harassment of Officer Taylor, including falsely accusing Officer Taylor of falsifying records, that damaged Officer Taylor's reputation.  No "continuing tort" theory, however, applies to defamation actions.  See Flotech, Inc. v. E.I. Du Pont Nemours Co., 627 F. Supp. 358, 363 (D. Mass. 1985) (discussing Massachusetts courts' reluctance to apply "continuing tort" doctrine to defamation actions).  A three-year statute of limitations applies to defamation claims.  Mass. Gen. Laws c. 260, § 2A.  See also id.  Therefore, only statements made between December 1, 2000, and December 1, 2003, when Officer Taylor filed his original complaint, may be considered.

Officer Taylor has alleged no facts that, even if true, would support a defamation claim against Chief Abbott.  Officer Taylor avers that Chief Abbott's letter to him dated July 21, 2003, in which Chief Abbott directed Officer Taylor to familiarize himself with departmental policies regarding racial profiling, was defamatory.  Even if the letter implies that Officer Taylor engaged in racial profiling, as Officer Taylor suggests that it does, there is no indication of any publication of this letter by Chief Abbot to any third party.  The letter does not constitute defamation; nor does any other alleged action by Chief Abbott during

23

the limitations period.  The Court therefore RECOMMENDS that the Court ALLOW the defendants' motion to dismiss count VII as to Chief Abbott.

As to Lieutenant Sawicki, Officer Taylor avers that Lieutenant Sawicki defamed him in a December 29, 2003, letter to Chief Abbott in which Lieutenant Sawicki accuses Officer Taylor of engaging in insubordinate conduct.  The defendants contend that even if statements made in the letter were defamatory, Lieutenant Sawicki had a "conditional privilege" to make such statements.  "An employer has a conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job." Bratt v. Int'l Bus. Machs. Corp., 392 Mass. 508, 509, 467 N.E.2d 126, 129 (Mass. 1984).  A motion to dismiss , however, "'is not the correct vehicle to attack a plaintiff's defamation claim by asserting a conditional privilege.'" Berard, 113 F. Supp. at 202 (quoting Chan v. Immunetics, 1999 WL 218490, at * 5 (Mass. Super. April 7, 1999).  Furthermore, the conditional privilege may be abused, and lost, if the privilege holder acts with actual malice.  Tynecki v. Tufts Univ. Sch. of Dental Med., 875 F. Supp. 26, 35 (D. Mass. 1994).  Therefore, and again without a view toward whether Officer Taylor will ultimately succeed in his defamation claim

against Lieutenant Sawicki, the Court must RECOMMEND that the District Court DENY the defendants' motion to dismiss count VII as to Lieutenant Sawicki.

**CONCLUSION**

For the foregoing reasons, this Court RECOMMENDS that the District Court ALLOW the defendants' motion to dismiss count IV as to both Chief Abbott and Lieutenant Sawicki and count VII as to Chief Abbott and DENY the motion as to the remaining counts: I, II, III, V, VI and, as to Lieutenant Sawicki only, count VII.

SO ORDERED.

1/31/06                                    /s/ Joyce London Alexander
Date                                       United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court the District Court of Massachusetts, any party who objects to this proposed Report and Recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of the Report and Recommendation. The written objections must specifically identify the proportions of the proposed findings, recommendations or report to which objection is made and the basis for such objection. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. <u>See</u> <u>Keating v. Sec'y of Health & Human Servs.</u>, 848 F.2d 271, 273 (1st Cir. 1988); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Scott v. Schweiker</u>, 702 F.2d 13, 14 (1st Cir. 1983); <u>United States v. Vega</u>, 687 F.2d 376, 378-79 (1st Cir. 1982); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 604 (1st Cir. 1980); <u>see also</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985), <u>reh'g denied</u>, 474 U.S. 1111 (1986).