1

EXHIBIT 1

UNITED STATES DISTRICT COURT

FOR THE
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * * *  *
JON M. TAYLOR,                      *
       Plaintiff                    *
                                    *
VS.                                 *   CIVIL ACTION NO.
                                    *   03-12417-PBS
TOWN OF FREETOWN,                   *
CARLTON E. ABBOTT, JR., ESQ.,       *
Individually, and as Chief of       *
the Freetown Police Department,     *
and                                 *
WALTER J. SAWICKI,                  *
Individually, and as Lieutenant     *
of the Freetown Police              *
Department,                         *
       Defendants                   *
* * * * * * * * * * * * * * * *     *
```

**VOLUME 1 OF THE DEPOSITION OF JON M. TAYLOR,** taken on behalf of the Defendants, pursuant to the applicable provisions of the Federal Rules of Civil Procedure, before Ruth E. Hulke, CSR No. 114893 and Notary Public for the Commonwealth of Massachusetts, at Kopelman and Paige, P.C., 101 Arch Street, Boston, Massachusetts, on Wednesday, June 7, 2006, commencing at 10:25 a.m.

## Leavitt Reporting, Inc.

1207 Commercial Street, Rear
Weymouth, MA 02189

Tel. 781-335-6791
Fax: 781-335-7911
leavittreporting@att.net

Hearings ◆ Conferences ◆ Legal Proceedings

1  Correct?
2      A.   After we had turned it over to you, yes.
3      Q.   Okay.  So we have established that the Chief
4  asked you after it was turned over to me to provide the
5  information directly to him.  Correct?
6      A.   That's correct.
7      Q.   Did you do that?
8      A.   No.  Because you had the list.
9      Q.   Thank you.  Now, you indicate that at some
10 point the Chief -- strike that -- that you informed the
11 Chief you had gone to the FBI?
12     A.   That is correct.
13     Q.   When did you inform the Chief that you had gone
14 to the FBI?
15     A.   Just prior to being charged with these
16 department rules and regulations, so it would have been
17 November.
18     Q.   November of 2004?
19     A.   That would be correct, yes.
20     Q.   Do you recall -- How did you inform the Chief?
21     A.   We had a phone conversation, actually.  This is
22 when Officer Byrnes was to drop these papers off to me.
23     Q.   Which papers are you referring to, sir?

```
 1    A.    This packet.  The insubordination.
 2    Q.    Officer Byrnes was --
 3    A.    Sergeant Byrnes.
 4    Q.    Sergeant Byrnes was dropping the packet off to
 5  you?
 6    A.    As he was ordered by the Chief of Police, yes.
 7    Q.    So the Chief called you to tell you that
 8  Sergeant Byrnes would be dropping this package off to
 9  you?
10    A.    No.  I was to notify the Chief and advise him
11  that I had received the packet.
12    Q.    Okay.  So the Chief had called you to request
13  that you advise him that you had received Exhibit 5?
14    A.    I had signed for it, and I called him to advise
15  him I had received the packet, yes.
16    Q.    Okay.  So at the point that you called the
17  Chief, you had already received Exhibit 5?
18    A.    I had just received it.
19    Q.    Just received Exhibit 5.  You telephoned the
20  Chief to let him know you had received it.  Correct?
21    A.    I'm sorry. That's incorrect.  I'm sorry.  The
22  time frame is off.  I had advised the Chief prior to
23  receiving these documents.  It was a day prior.  So it
```

1  would have been November 7th I had turned him into the
2  FBI.  I called the department, and I called him after I
3  received this packet from Mike Byrnes.
4      Q.   So on November 7th you telephoned the Chief for
5  what purpose?
6      A.   To advise him that apparently nobody was going
7  to properly investigate the wrongful, illegal conduct
8  regarding the Freetown Police Department, and according
9  to my rules and regulations and policies and procedures
10 that I was complying and advising him that I was going to
11 an outside authority to properly investigate.
12     Q.   You telephoned him on November 7th?
13     A.   That is correct.
14     Q.   And you spoke with him?
15     A.   Yes.
16     Q.   Directly?
17     A.   Yes, I did.
18     Q.   What did you say to him specifically, what
19 words you used and what words he used in response?
20     A.   I advised him that I was going to the FBI
21 regarding the White Mountain Cable incidents.  He failed,
22 refused and neglected to properly investigate, have
23 and/or investigate, the town concealed, failed, refused

1  and neglected to investigate.  I advised him that he
2  failed to contact White Mountain Cable, therefore, he
3  concealed a crime, and under the law he was an accessory
4  after the fact, at which time he didn't have much to say
5  to me and hung up.
6      Q.  So he didn't respond to your allegations?
7      A.  He told me I didn't know what I was talking
8  about.
9      Q.  Anything else he said to you?
10     A.  That was it.  And I was served the following
11 day with this.
12     Q.  Did he say anything else -- Did you say
13 anything else to him?
14     A.  That was it.
15     Q.  So prior to your contacting the FBI on
16 November 7th of 2004, had you contacted any outside law
17 enforcement agencies in connection with the White
18 Mountain Cable detail?
19     A.  I had contacted the town Selectmen because they
20 are the police commissioners, and they failed, refused
21 and neglected to have an outside agency brought in.
22 According to the newspaper quotes from the Chief, any and
23 all allegations of misconduct or illegal type activity he