

PLAINTIFF'S
EXHIBIT
A

# The Enterprise

SOUTHOFBOSTON.COM

Wednesday, November 12, 2003

LOCAL NEWS, SPORTS, FEATURES & OPINION | DEATH NOTICES

Full Forecast

**LATEST NEWS**
THE PATRIOT LEDGER
THE ENTERPRISE
OLD COLONY MEMORIAL
AP WORLD &
NATIONAL NEWS
LOCAL WEATHER

**CLASSIFIEDS**
Announcements
Automotive
Employment
Merchandise
Real Estate
Rentals
Recreation
Services
Yard Sales
Place an Ad

**DEATH NOTICES**
Patriot Ledger
Enterprise
Old Colony Memorial

**LOCAL GUIDES**
Dining/Entertainment
Business Profiles
Home & Garden
Summer Guide
Online Yellow Pages

**IN MEMORY GUIDE**

**SPECIAL SECTIONS**
Living Well/Health News
Coastlines
Wedding/Bridal

**ONLINE PERSONALS**

**SOUTHOFBOSTON.COM**
Archive
Contact Us
Subscribe
Work for Us
Newspapers in Education
Home Page

## Lakeville chief balks at cops in school plan

By *Michael J. DeCicco, Enterprise correspondent*

LAKEVILLE - A plan to place police officers in the regional school system with money from a federal grant is on hold until both Lakeville and Freetown can receive funding and work out the details.

Freetown Police Chief Carlton E. Abbott Jr. said Lakeville and Freetown both submitted applications for the federal Office of Community Oriented Policing school grant worth a total of $125,000 for three years, but only Freetown has been awarded the grant.

That, Abbott said, has led to a variety of complications.

"When I received the grant, I offered to share the officer with Lakeville. Informally, (Lakeville Police Chief Mark Sorel) said no. To deploy the officer that way, according to the Department of Justice, the two towns would need an agreement. The question is, would the agreement preclude Lakeville from its own officer."

Sorel said his reason for declining the offer to share the officer is very basic.

"I don't want to jeopardize getting the grant for Lakeville," Sorel said. "There has to be a written agreement (to share the officer). I don't want to do anything that hinders Lakeville getting the grant and its own officer. I'm in a pending status."

One of the conditions is that the school resource officer be in the schools 75 percent of the time. For the remainder, that officer would work a general duty shift within the department.

The program's goal is to assign officers to assist with and present a positive image of law enforcement within local schools. The grant states as its main mission is "to develop a safe environment for learning, assist in crime prevention and detection and establish a relationship of trust between the SRO (school resource officer), students and faculty."

Abbott said outstanding questions stopping an agreement between his department and Lakeville include who is indemnified, or responsible for insurance liability, if the officer suffers an injury or creates a lawsuit action while on the job.

Also, considering that the regional schools are in Lakeville and therefore under Sorel's jurisdiction, the question arises of who would be in charge of that officer. 

School Superintendent William Conners said the delay is regrettable, but may be temporary.

"The intent was both towns would win a grant and hire an officer. Lakeville's application is still active," Conners said. "They've been told the next round is next March. Lakeville is still hoping it will be awarded the grant in March."

NATIONAL
SPORTS
ENTERTAI
MORE WOF
NEWS:
BUSINESS
HEALTH
TECHNOLO(
POLITICS
AP INTER
California '
photos
California '
depth
NATO: Expa
Sharon and
Rivals
Arafat's Life
Homeland ~

11/12/03 6:29 PM

Police Logs
Building Permits



## Freetown Elementary scores grant for 4-day police officer By
*JENNE7TE BARNES, Standard-Times staff writer*

   FREETOWN -- Freetown Elementary soon will have its own police officer four days a week -- a position that could have been shared with the Freetown-Lakeville Middle School but won't because of hard feelings between the Lakeville and Freetown police departments.

   Jean Fox, a Freetown resident and member of the regional school committee, said Lakeville Police Chief Mark Sorel rejected the middle school plan without meeting with Freetown Chief Carlton Abbott.

   Both towns applied for Cops in Schools grants from the U.S. Department of Justice, but only Freetown received the grant. The town volunteered to send the officer to the Freetown-Lakeville Middle School part-time, and got a cold reception from Lakeville.

   "Essentially all we were looking to do is share, at no cost to the town," Freetown Selectman Lawrence N. Ashley said. "The officer could also be used as a truancy officer, and rotate to different schools. Right now it's just going to be the elementary school, which is unfortunate and somewhat narrow-minded."

   . In response, Chief Sorel said Chief Abbott falsely claimed in his grant application to be the department with primary jurisdiction over the regional schools. Because the schools are in Lakeville, Freetown officers respond only if Lakeville requests mutual aid, he said.

   "He used Lakeville statistics showing Freetown had been called when it was really Lakeville being called," Chief Sorel said.

   In an excerpt from the Freetown grant application obtained by The Standard-Times, Chief Abbott said, "An analysis of department records reveals that police are dispatched on an almost daily basis ... to a school regarding drug abuse, drug possession, bomb scares, weapons violations, threats, larceny, missing persons, truants, unauthorized persons entering the school campus, and reckless operations of motor vehicles at the campus and in close proximity."

   Chief Abbott could not be reached after Chief Sorel made his allegations. In an earlier interview, Chief Abbott said he understood Chief Sorel's fears about liability for a Freetown officer working in Lakeville. Lakeville police also worry that having an officer in the schools will prevent them from getting their own grant, he said.

   Lakeville has another application pending.

   The purpose of a police officer in the school would be to encourage good behavior and foster a positive community-police relationship.

   "When you can buy heroin for $4 or $5 a bag in New Bedford, that's a problem. And if you don't think it's coming to Freetown and Lakeville, you should get your head out of the sand," Ms. Fox said.

   Chief Abbott said the officer could conduct programs on bullying, violence, drugs and bicycle safety.

This story appeared on Page A11 of The Standard-Times on October 23, 2003.



| DIsclJss | PRINT THis | liMAI L TO |
| THIS: !>TORY | PAuli | A FRIEND |

. £erpnse 0t SouthotBoston.com
http://enterprise.southofboston.com/Jarticles/2003/11/ 12/news/news ...



Another potential complication to Freetown fully realizing the goal of the ,grant is that the previous school superintendent, Dennis Flynn, stated iunder the assumption of the original plan that the School Department would pay for the officer's fourth year as an SRO, a cost of roughly :$36,000.

That offer may not survive a School Committee vote if Lakeville is no Honger a part of Freetown's plan.

Regional School Committee Chairman David Brown said he believes the committee would vote to pay that fourth year, whether or not the Lakeville ;department is involved.

"I think they would. I don't see why they wouldn't," Brown said. 'We tried ito get Lakeville to go in on this. Lakeville's decision is Lakeville's problem. [Being from Freetown, I know I will go for it. It's good for the kids."

Abbott said he tried to address Sorel's concerns in a letter in late :September that said Freetown would consider indemnifying the officer, <that the officer would not cost Lakeville anything and would be under the ;direct supervision of the Lakeville department.

These conditions of the agreement, however, would have to be approved ;by Freetown selectmen.

The complication that forced the need for a written agreement between the two towns is that Abbott's application narrative describes school region statistics, rather than Freetown police data, to sell the need for the jgrant.

After detailing that Freetown is part of a regional school system with !approximately 1,050 middle school students and 750 high school ;students, he notes that "an analysis of department records reveal that :police are dispatched on a daily basis to a school regarding drug abuse, idrug possession, bomb scares, weapons violations, threats, larceny, imissing persons, unauthorized persons entering the school campus and ;reckless operation of motor vehicles at the campus."

!The Justice Department responded that because Freetown's school ~urisdiction is only the town elementary school, the Freetown officer could icover only that school unless there is an inter-agency agreement "with the ilaw enforcement agency that has primary law enforcement authority in the !Freetown-Lakeville Regional Middle School and/or the Freetown-Lakeville Apponequet Regional High SchooL"

:"This (application) language was written under the assumption both towns 0'0uld win a grant," Abbott said.

;Abbott said, either way, he intends to hire a C.O.P.S. officer for the ielementary school. He said this officer would work four days a week at the !school. On the fifth day, the patrolman would cover vacations and !holidays.

!Abbott said he would be able to use a veteran officer for the position and ihave a reserve officer take that officer's place.

tHe envisions that this officer's duties would include directing traffic in front jof the schools, helping to create curriculum for drug education, dealing rvith violence, stranger safety, bicycle safety and school bus safety.

11/12/03 6:29 PM

THIS STORY HAS BEEN FORMATTED FOR EASY PRINTING

# Westwood chief seeks US probe of grants

*The Boston Globe*

By Sean P. Murphy, Globe Staff, 2/14/2004

The Westwood police chief says a private consulting firm that assembled invoices the department submitted to the state last year to document grant expenditures acted fraudulently, and he called yesterday for a federal investigation.

Chief William G. Chase said in a Feb. 10 letter that the firm, Crest Associates, "either inflated or fabricated" documents to show that $150,000 had been spent under the grant program, when $60,000 had been spent.

The letter was addressed to state Public Safety Secretary Edward A. Flynn. The Executive Office of Public Safety, which Flynn heads, administers the grant program using money from the federal government.

"I am forwarding a copy of this letter to United States Attorney Michael J. Sullivan and Attorney General Thomas Reilly requesting that an investigation be conducted for potential violations of state or federal law," the letter says.

A message left yesterday for Sullivan was not returned. The attorney general's office declined to comment.

In December, the FBI said it was investigating how grant money was handled by the public safety office during the tenure of Flynn's predecessor, James P. Jajuga.

Chase said in an interview yesterday that he has begun a review of his department's procedures for the use of grant money, but he declined to comment further and would not discuss the letter.

According to his letter and earlier interviews with Chase, he is accusing Crest of inflating the total expenditures to avoid forfeiting grant money.

In 2002, the state public safety office awarded $250,000 to help about 40 police departments create a regional group known as the Metropolitan Law Enforcement Council, of which the Westwood department was the lead agency. The grant was intended to allow the council to establish, equip, and train a tactical response team.

The group had spent $160,000 by the time the grant period ended on June 30, 2003, and under the grant's rules would have to return $90,000. At that point, Crest assembled a package of invoices showing it had spent all the grant money, according to Chase's letter. The invoices were delivered, under Chase's name, to the public safety office on Aug. 5, 2003, during his first week on the job in Westwood. According to grant documents reviewed by the Globe, Crest cited the purchase of a rapid response vehicle twice, once for $89,000 and once for $100,000. Crest also included about $13,000 of invoices for sweat suits, baseball caps, and other athletic clothing not mentioned in the grant application. The firm cited its own fees as $3,333 a month, when the actual rate was $2,080.

The public safety office reviewed the invoices assembled by Crest and approved full payment in August, but Chase said in an interview this week that a review of the paperwork by the Globe prompted him to reexamine the invoices. It was then, Chase said, that he determined they were faulty.

Crest was founded by Richard H. St. Louis, a former public safety office grants administrator. St. Louis has declined to be interviewed since the FBI investigation was disclosed. His lawyer, Mark W. Pearlstein, said yesterday that St. Louis "denies any violation of law."

While declining to comment on the specifics of this case, Michael D. Kendall, a former federal prosecutor, said false documents submitted in connection with a federal grant could lead to prosecution under the federal false claims act or as mail fraud.

"False or misleading statements made to fulfill the conditions of federal grant in order to get payment, along with use of the mail, is mail fraud," he said. "Prosecutors use mail fraud to cast a wide net."

*Sean P. Murphy can be reached at smurphy@globe.com or 617-929-7849.*

© Copyright 2004 Globe Newspaper Company.

©        2004 The New York Times Company

**PLAINTIFF'S
EXHIBIT**

B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS __

C.A. NO. 03-12417-PBS

JON M. TAYLOR,
      Plaintiff,

v.

TOWN OF FREETOWN, CARLTON E.
ABBOTT, JR., ESQ., individually and as Chief of
the Freetown Police Department, and WALTER J.
SAWICKI, individually and as Lieutenant of the
Freetown Police Department,
      Defendants.



DEFENDANT TOWN OF FREETOWN'S
ANSWERS TO PLAINTIFF'S FIRST SET OF
<u>INTERROGATORIES</u>

<u>GENERAL OBJECTIONS</u>

A.     Defendant objects to the "Instructions" and "Definitions" interposed by Plaintiff to the

extent that they impose obligations on Defendant which are contrary to and/or in excess

of those imposed by Fed. R. Civ. P. 26 and 33 and Local Rule 33.1.

B.     Defendant objects to each every paragraph of Plaintiff's interrogatories to the extent that

any paragraph may be construed as requesting that Defendant provide information that is

protected by the attorney/client privilege.

C.     Defendant further objects to each and every paragraph of Plaintiff's interrogatories to the

extent that any paragraph may be construed as requesting that Defendant provide

information that was prepared in anticipation of litigation or for trial by or for Defendant

and its representatives, attorneys, and agents, or which disclose mental impressions,

conclusions, opinion, or legal theories of any attorney or other representative of

Defendant concerning this litigation. Such information is privileged as work product, and

Defendant is not required to produce it except as provided under Rule 26(b)(3) of the Federal Rules of Civil Procedures.

D.      Defendant objects to each and every paragraph of Plaintiff's interrogatories to the extent that any paragraph may be construed as requesting that Defendant provide information that is not relevant to the subject matter involved in the pending action and which does not come within Rule 26(b) of the Massachusetts Rules of Civil Procedure.

INTERROGATORY NO.1:

Please identify the names, addresses, telephone numbers, official titles, if any, and other identifications of all witnesses who it is contemplated will be called upon to testify at trial in Freetown's defense of the Complaint, indicating the nature and substance of the testimony that is expected to be given by each such witness.

ANSWER NO. 1:

Defendant objects to this interrogatory on the grounds that it seeks attorney work product information. Without waiver of this objection, Defendant states that in addition to the individuals the Town previously identified in its automatic disclosure statement, the following individuals are believed to possess discoverable information regarding the subject matters identified that the Town may use to support its defenses in this matter:

Robert Fouquette - A Reserve Freetown Police Officer who is believed to possess knowledge of conversations with Plaintiff regarding his claims in this matter.

Elton Ashley - A Freetown Police Sergeant who is believed to possess knowledge of certain promotions that were made within the Department, as well as knowledge of his own disciplinary history.

Ryan Perreira - A Freetown Police Officer who is believed to possess knowledge of conversations Plaintiff has had regarding his claims in this matter.

Mark Howland - Former member of Freetown Board of Selectmen who is believed to possess knowledge of Police Department personnel matters.

2

Robert Robidoux - Former member of Freetown Board of Selectmen who is believed to possess knowledge of Police Department personnel matters.

Roger Levesque - A former Freetown Police Lieuteant who is believed to possess knowledge of certain promotions that were made within the Department.

Michael Byrnes - A Freetown Police Sergeant who is believed to possess knowledge of certain promotions that were made within the Department.

Charles Sullivan - A Freetown Police Sergeant who is believed to possess knowledge of certain promotions that were made within the Department.

Mark Bullock - A Freetown Police Officer who is believed to possess knowledge of certain promotions that were made within the Department.

<u>INTERROGATORY NO. 2</u>:

Please identify any and all witnesses Freetown will or may call as experts to give opinion testimony in the trial of this matter. For each person identified:

a.   State his or her name, address and telephone number (business and home);

b.   Provide all opinions to be expressed and the basis and reasons therefore;

c.   Describe the data or other information considered by the witness in forming the opImon;

d.   Describe the witness's qualifications, including a list of all publications authored by the witness within the preceding ten years;

e.   State the compensation to be paid for the study and testimony; and

f.   State the list of cases (administrative, civil, criminal; name of the case, the tribunal before which the case is/was pending, and docket number) in which the witness has testified as an expert at trial or by deposition within the preceding four years, and identity of the party on whose behalf such expert testified.

ANSWER NO.2:

     (a)     Mark Schaefer, Ph.D.
                    Psychological Consulting Services, Inc.
                    One Salem Green
                    Salem, MA 01970

     (b)     Dr. Schaefer will opine on the nature and cause of Plaintiff's emotional distress.

     (c)     See reports of Dr. Schaefer which were previously produced as part of Defendants' automatic disclosures.

     (d)     This information is being gathered and will be produced once it has been obtained.

     (e)     This information is being gathered and will be produced once it has been obtained.

     (f)     This information is being gathered and will be produced once it has been obtained

JNTERROGATORYNO.3:

Please identify any documents used in any manner to prepare or assist in preparing any of the answers to these interrogatories and, for each such document, identify the particular interrogatory answer( s) or portion( s) thereof for which it was used.

ANSWER NO.3:

The correspondence of Dr. Mark Schaefer to obtain his address.

JNTERROGATORY NO.4:

For all documents that you contend are privileged and, therefore, not produced in response to Plaintiffs document requests, describe such documents with particularity and identify the basis for the privilege asserted.

ANSWER NO.4:

The documents requested by Plaintiff in document request numbers four (4) and eleven (11) are private and confidential and beyond the permissible scope of discovery.

INTERROGATORY NO.5:

    With the exception of your attorneys, state the names and last known addresses of all indi viduals, employees, vendors, contractors, clients and/or potential witnesses that you contend have knowledge of any discoverable matters, such as statements, comments, discussions, or actions that occurred, concerning Freetown's employment decisions to promote patrolman other than Plaintiff to acting or permanent police sergeant positions in the Freetown Police Department. For each individual, employee, contractor, client and/or potential witness identified:

    a.    provide the date on which the discoverable matter occurred;

    b.    describe in full what was stated by each person involved in the discoverable matter;

    c.    describe in full the manner by which any of the above-acquired knowledge of the discoverable matter;

    d.    state the identity of the person( s) to whom the discoverable matter was reported;

    e.    state whether a memorandum, e-mail or other written or electronic communication was generated as a result of said report; and

    f.    state what action, if any, was taken by you and/or Freetown because of said report.

ANSWER NO.5:

    Defendant objects to this interrogatory on the grounds that it is vague, overly broad and unduly burdensome. Without waiver, of this objection, Defendant directs Plaintiff to its automatic disclosure statement, its answer to interrogatory number one (1) above and the following additional indi vi duals :

    Alan Alves - A former Freetown Police officer who is believed to possess knowledge of certain promotions that were made within the Department.

5

Terrance Christiansen - A former Freetown Police officer who is believed to possess

knowledge of certain promotions that were made within the Department.

INTERROGATORY NO. 6:

During Plaintiffs employment with Freetown as a Patrolman, please identify all candidates

who Abbott and/or Freetown considered promoting to acting or permanent Police Sergeant positions.

For each job candidate identified, state his or her name, last known address (business and

residential), telephone number, social security number, and current position and date of hire with

Freetown, salary history to date, qualifications as compared to those of Plaintiff, your

recommendation for selection or rejection of the candidate and reasons for same.

ANSWER NO.6:

Defendant objects to this interrogatory on the grounds that it is vague, overly broad, unduly

burdensome, beyond the scope of permissible discovery and seeks privileged and confidential

information. Without waiver of this objection, all patrolmen were initially eligible for promotions to

pennanent sergeant. Appointments were made based on supervisor surveys, and, later, seniority, and

the recommendation of the Chief. Following the implementation of the exam process, only eligible

patrolmen who took and passed the exam were considered.

INTERROGATORY NO.7:

Explain in full detail the reasons why neither Plaintiff nor Marc Rouke were promoted to

acting or pennanent Police Sergeant.

ANSWER NO. 7:

Defendant objects to this interrogatory on the grounds that it is beyond the permissible

scope of discovery. Without waiver of this objection, Defendant states that Plaintiff was not

recommended by any of the Department supervisors for promoti.on, was junior to the selected

6

candidates who were chosen according to seniority and did not take and pass the promotional

exam after that process was implemented.

INTERROGATORY NO.8:

From January 1, 1998 to the present date, please explain, in full detail, all actions taken

by Freetown to develop fair, job-related and valid selection procedures for recruiting and hiring

qualified candidates for patrolman, acting and/or permanent police sergeant, police lieutenant,

and police chief positions in the Freetown Police Department.

ANSWER NO. 8:

Defendant objects to this interrogatory on the grounds that it is vague, argumentative,

overly broad, unduly burdensome and beyond the scope of pennissible discovery.

INTERROGATORY NO. 9:

Describe in full detail an actions, if any, taken to investigate and resolve Plaintiffs

allegations of police misconduct as set forth in Exhibits A-D and K of the Complaint. For

each action taken:

      a.      State when it was taken, by whom, and on which date(s);

      b.      Provide the identity of each individual who investigated Plaintiffs claims of

              misconduct against the Freetown Police Department;

      c.      Identify all methods used to investigate such claims;

      d.      Identify all the sources contacted to investigate such claims;

      e.      Describe the substance of any conversation with each person

              contacted during the investigation of such claims; and

      f.      Identify all documents and reports prepared in connection with the investigation

              of Plaintiffs allegations of police misconduct.

ANSWER NO.9:

Defendant objects to this interrogatory on the grounds that it is vague, overly broad, unduly burdensome and beyond the scope of permissible discovery. Without waiver of this objection, the Chief personally investigated Plaintiff's allegations. The findings of the Chief's investigation were detailed in letters to the Board of Selectmen and Exhibits A-Z to same which were previously produced as part of Defendants' automatic disclosure and/or the Town's response to Plaintiff's document request. In conducting his investigation, the Chief reviewed Department records, interviewed Department personnel andrelied on his personal knowledge. The Chief also consulted with Town Counsel. The Chief's findings were subsequently reported to and discussed with the Board of Selectmen which also consulted with Town Counsel.

INTERROGATORY NO. 10:

Describe in full detail all actions, if any, taken to investigate allegations in which Freetown police officers and/or superior officers have been accused or suspected of unlawful

misconduct, including, but not limited to, misappropriation of public money. For each action taken:

    a.    State when it was taken, by whom, and on which date(s);

    b.    Provide the identity of each individual who investigated such misconduct;

    c.    Identify all methods used to investigate any such claims;

    d.    Identify all the sources contacted to investigate any such claims;

    e.    Describe the substance of any conversation with each person

contacted during the investigation of any such claims; and

g.    Identify all documents and reports prepared in connection with the

investigation of Plaintiffs allegations of police misconduct.

ANSWER NO. 10:

Defendant objects to this interrogatory on the grounds that it is vague, overly broad, unduly burdensome and beyond the scope of permissible discovery.

INTERROGATORY NO. 11:

For the past ten years to the present date, please identify all complaints, investigations (internal, governmental, or otherwise), civil actions or criminal complaints in which Freetown has been a party and/or a subject of a governmental investigation; and in each instance, state the name and location of the forum, the case docket number; and the nature, substance and disposition of the complaint, civil action, andlor investigation.

ANSWER NO. 11:

Defendant objects to this interrogatory on the grounds that it is vague, overly broad, unduly burdensome and beyond the scope of permissible discovery.

INTERROGATORY NO. 12:

Police describe in full detail the date, nature, and substance of all communications Freetown (including its Board of Selectmen) have had with any non-party to the Complaint, including the media, concerning Plaintiffs employment with Freetown.

ANSWER NO. 12:

Defendant objects to this interrogatory on the grounds that it is vague, overly broad, unduly burdensome, beyond the scope of permissible discovery information and seeks attorney/client privileged

information. Without waiver of this objection, Defendant is not aware

9

of any such non attorney-client privileged communications other than written correspondence with its insurer and outside medical providers. Copies of correspondence between the Town and said medical providers were previously produced as part of Defendants' automatic disclosures ancl!or Defendant's response to Plaintiff's request for production of documents. Copies of correspondence between the Town and its insurer are enclosed.

INTERROGATORY NO. 13:

For the past ten years to the present date, please describe in detail all instances in which Freetown police officers and superior officers, while on medical or disability leave, were formally charged ancl!or disciplined for misconduct.

ANSWER NO. 13:

Defendant does not recall anyone other than Plaintiff.

INTERROGATORY NO. 14:

From January 1, 1998 to the present date, please identify and explain in full and complete detail all instances, if any, in which Freetown's Police Chief has sole responsibility and authority to hire, promote, discipline ancl!or terminate police department employees, without the approval of Freetown.

ANSWER NO. 14:

Defendant objects to this interrogatory on the grounds that it is vague. Without waiver of this objection, Defendant states the Chief has never had sole responsibility and authority to hire, promote, discipline ancl!or terminate department employees without the approval of Freetown.

INTERROGATORY NO. 15:

For the past ten years to the present date, please describe in full and complete detail all policies and procedures for backing up files and data for the Freetown Police Department and

10

Freetown's Board of Selectmen, including but not limited to, the frequency of backups, and the software used to perform such backups, and whether such policies are in writing.

ANSWER NO. 15:

Defendant objects to this interrogatory on the grounds that it is vague. Without waiver of this objection, Defendant states that the Selectmen's office is equipped with Microsoft Windows '98 with Word '97. Board of Selectmen files are backed up periodically using a zip drive system, usually after completing a substantial project such as the annual licensing process, Annual Town Report or Annual Town Meeting Warrant.

As for the Police Department, audio recordings of radio transmissions and emergency telephone calls were recorded on an ElOO Eyreletel digital voice recorder until such time as the tape began recording over itself due to the volume of data/information. Effective November 28, 2005, Policy 852, Handling E-911 Tapes & Radio Recordings, requires these tapes to be retained for one year. The recommended practice (no written policy) regarding the backing up of the Department's digital records is to do so each night. An external tape is inserted into the Seagate Tapessto dat 8 drive. As the tape is used, the new data records over the data previously recorded. Existing data consist of approximately one year's recording unless corrupted or purged due to system requirements.

INTERROGATORY NO. 16:

For the past ten years to the present date, please describe in full and complete detail whether back up tapes were made of any computer system, e-mail messages, word processing documents, and correspondence, as well as identify:

    a.      The custodian of those tapes;

    b.      The identification numbers or the system of identification of those tapes;

      c.      The location of those tapes; and

      d.      The period of time those tapes were stored before being reused or discarded.

<u>ANSWER NO. 16</u>:

Defendant objects to this interrogatory on the grounds that it is vague, overly broad, unduly

burdensome and beyond the scope of permissible discovery. Without waiver of this objection, see

Defendant's answer to interrogatory fifteen (15). The custodian for the Board of Selectmen is Linda

Lynn Remedis, Administrative Assistant to the Board of Selectmen. The custodian for the Department

was Chief Abbott until Lt. Sawicki assumed that responsibility on or about November 28,2005.

<u>INTERROGATORY NO. 17</u>:

Please state the name, employer, title, business and home addresses and telephone

numbers for each person with operational or maintenance responsibility for the computer systems

and/or data storage devices, as well as the electronic messaging systems utilized by Freetown.

<u>ANSWER NO. 17</u>:

Defendant objects to this interrogatory on the grounds that it is vague, overly broad, unduly

burdensome, beyond the permissible scope of discovery and seeks private and confidential information.

Without waiver of this objection, Defendant states that each Department is responsible for operating and

maintaining its own computer system. For the Board of Selectmen, the responsible individual is Linda

Lynn Remedis, Administrative Assistant to the Board of Selectmen, P.O. Box 438, Assonet MA 02702.

For the Police Department, the responsible individuals are Chief Abbott and Dispatch Supervisor Brenda

J. Christiansen, 225 Chace Road, East Freetown, MA 02717.

12

# pes

PSYCHOLOGICAL
CONSULTING
SERVICES
INCORPORATED

ONE SALEM GREEN
SALEM, MA 01970

978740-3100
FAX 978-740-5656

WWW.PCSFORENSIC.COM E-
MAIL:
INFO@PCSFORENSIC.COM

ROBERT H. JOSS, PH.D.
FREDERIC KRELL. PH.D.
MARKS. SCHAEFER. PH.D.
:HRISTINE SCHNYDER PIERCE, PH.D.
AND ASSOCIATES

September 14, 2006

**PLAINTIFF'S
EXHIBIT**
c

Attorney Joseph Fair
Kopelman & Paiwe, P.C.
101 Arch St. 1 *i* Floor
Boston, MA. 02110

Dear Atty. Fair:

Enclosed is a copy ofmyc.v. and the answers to the questions you requested.

D. I have becl1 doing pre-employment sc:reeningufpoiiceahd' fire candidates for over twenty years. Currently, I work with Lynn Police and Fire, Watertown Police and Fire, Randolph Police and Fire, Framingham P.D., Cambridge F.D., and several other towns. Over the past ten years, I have worked with a number of police and fire departments doing fitness-for-duty evaluations. I do not have any publications.

E. I will bill at the rate of $200 per hour for all my activities connected with this case.

F. In the past four years, I have testified in a number of capacities. Currently, I am a Qualified Examiner; doing evaluations of Sexually Dangerous Persons. In that capacity, I have testified approximately 75 times in the past four years. Also, as a Guardian *ad Litem,* I have testified on two occasions in the past four years. As a court clinician, up until 2004, I testified multiple times per week on matters of competency and criminal responsibility, as well as civil commitments. Finally, I am scheduled to testify in late . September bef6re the civil service board on my·" '. . police Deparltrierit.~< ........................................;

If you have any questions, please give me a call.

Respectfully,

/Ad ~~

Mark Schiefer, Ph .. ɩ
Licensed Psychologist

SPECIALIZING IN
FORENSIC, MEDIATION
AND CLIN ICAL SERVICES