UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

```
_____
                                 )
JON M. TAYLOR,                   )
                  Plaintiff,     )
                                 )
      v.                         )
                                 )
TOWN OF FREETOWN,                )
                                 )
CARLTON E. ABBOTT, Jr., ESQ.,    )         C.A. 03-12417-PBS
Individually and as Chief of the Freetown )
Police Department, and           )
                                 )
WALTER J. SAWICKI,               )
Individually and as Lieutenant of the )
Freetown Police Department       )
                  Defendants.    )
_____)
```

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS OPPOSITION
TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

COMES now plaintiff Jon M. Taylor ("Plaintiff") in the above-captioned matter and, pursuant to LR. 7.1(B)(2), hereby opposes the motion for a protective order filed by defendant Town of Freetown ("Freetown"), defendant Police Chief Carlton E. Abbott, Jr., Esquire ("Abbott") and defendant Lieutenant Walter J. Sawicki ("Sawicki") (hereinafter collectively referred to as "Defendants") in order to prevent Plaintiff from deposing certain individuals about the subject of the School Resource Officer grant application ("SRO Grant").[1] As grounds therefore, Plaintiff submits that deposition testimony on this subject matter by Abbott and current and former Freetown Board of Selectmen (the "Board") members Lawrence Ashley ("Ashley") and John Laronda ("Laronda"), respectively, is relevant to his claims, probative on Defendants'

---

[1] See Defendants' Memorandum In Support Of Their Motion For Protective Order, Exhibit 2; see also Plaintiff's Memorandum Of Law In Support Of Motion For Leave To Take Additional Depositions, Exhibits A and D-F.

credibility and otherwise well within the scope and limit of permissible discovery as contemplated by Fed.R.Civ.P. 26(b).

## I. FACTS

Plaintiff's lawsuit against Defendants concerns claims of retaliation in the Freetown Police Department arising out of Plaintiff's exercising his First Amendment right to speak out against police corruption.

In their motion, Defendants correctly state that central to this litigation is Plaintiff's ongoing complaints to the Board about Abbott's retaliating against him for bringing to light matters of public concern.[2] More precisely, Plaintiff asserts that the retaliation resulted after he resisted Abbott's efforts to conceal a crime by conspiring with other officers who were loyal to Police Chief and engaged in misappropriating funds ("double-dipping") while working paid details for the White Mountain Cable Company.[3]

A review of Plaintiff's and Abbott's deposition testimony reveals that Plaintiff, prior to being formally charged by Abbott for insubordination on November 8, 2004, informed Abbott earlier that month that he was contacting the Federal Bureau of Investigation ("FBI") about the White Mountain Cable Company incident.[4]

On October 3, 2005, the Board disciplined Plaintiff by issuing him a written reprimand,

---

[2] See Defendants' motion at 2.

[3] See Plaintiff's second amended complaint at ¶¶11-13.

[4] See Exhibit A, which is attached hereto and by reference incorporated herein (for copy of relevant testimony from Plaintiff's first deposition transcript), and, in particular, pp. 147-48; Exhibit B, which is attached hereto and by reference, incorporated herein (for copy of relevant testimony from Abbott's second deposition transcript); Exhibit C, which is attached hereto and by reference incorporated herein (for copy of relevant portions of Abbott's formal charges and notice of hearing).

which was placed in his personnel file.[5]

At Plaintiff's deposition on June 7, 2006, Defendants also elicited testimony about his contacting the FBI relative to what he believed was a fraudulent grant application filed by Abbott.[6] Prior to the conclusion of Plaintiff's third day of deposition testimony on June 22, 2006, Plaintiff supplemented his response to Defendants' document production requests by producing at Kopleman and Paige's law office copies of documents concerning the SRO Grant that had recently come into his possession.

Plaintiff deposed Laronda on October 13, 2006. At his deposition, Laronda *inter alia* testified that he disagreed with the Board's claim that further investigation did not substantiate Taylor's allegations of police misconduct – but nonetheless had yielded to the Board's "experience."[7] He also testified, over opposing counsel's objection, that he had heard a rumor that Plaintiff complained to the FBI or another agency regarding SRO Grant.[8]

Following Laronda's deposition, Plaintiff further deposed Abbott (in his individual as well as official capacity) and thereafter took Ashley's deposition. The parties agreed to suspend all three depositions pending the Court's ruling on Defendants' instant motion, which was filed on October 24, 2006.

On the last day of discovery, October 31, 2006, Defendants deposed one of Plaintiff's

---

[5] See Exhibit D (for copy of Ashley's Findings, Conclusions, and Recommendations regarding Abbott's disciplinary charges against Plaintiff).

[6] See Exhibit A at 153-55.

[7] See Exhibit E, which is attached hereto and by reference incorporated herein (for copy of relevant testimony from Laronda's deposition transcript), and, in particular, pp. 99-101 and 108-110.

[8] Supra at 74.

witnesses, Freetown Police Sergeant Marc Rouke (Rouke).[9] Absent any objections by opposing counsel, Rouke, when examined by Plaintiff's attorney, testified *inter alia* that Laronda provided him with various SRO Grant documents and did so because he was apparently concerned about the grant's propriety and believed that the other Selectmen would oppose his efforts to investigate the matter.

## II. LEGAL ARGUMENT

The scope and limit of discovery under the federal rules of civil procedure are discussed in rule 26(b)(1).

According to rule 26(b)(1), unless otherwise limited by order of the court:

Parties my obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).

Pursuant to Fed.R.Civ.P. 26(c), "the court in a district where a deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Defendants maintain that they should be granted a protective order to prevent Plaintiff's from deposing Laronda, Chief Abbott or any other individual concerning the SRO Grant on grounds that Plaintiff's intent is to harass Defendants, and that such discovery is not reasonably calculated to lead to the discovery of admissible evidence and poses an undue burden and expense to Defendants. Plaintiff respectfully disagrees for the following reasons.

---

[9] See Plaintiff's second amended complaint, Exhibit H (for copy of Rouke's "whistle-blower" complaint).

First, just cause exists for allowing Plaintiff the opportunity to examine town officials and Abbott about the SRO Grant. More specifically, the subject matter is reasonably calculated to lead to the discovery of additional admissible evidence of related police corruption and unlawful intent of high-level officials in the Freetown Police Department. Further, the SRO Grant issue is probative of ongoing acts of retaliation after Abbott's November 8, 2004 disciplinary charges. For instance, Plaintiff avers that subsequent to those charges he was 1) subjected to economic coercion by Freetown and Abbott withholding workers' compensation benefits; 2) almost involuntary retired over his objection; and 3) harassed by being "counseling" for allegedly poor performance upon his return from medical leave.[10]

Given Laronda's testimony that he had heard rumors of Plaintiff complaining to the FBI about the SRO Grant, assuming *arguendo* that the above acts were retaliatory, it remains unclear whether they are attributable to Plaintiff complaining to the FBI about the White Mountain Cable Company incident, the SRO Grant, or both. Hence, Plaintiff should be allowed to probe, for instance, what, if any conversations Laronda had with other Selectmen or the Police Chief regarding the SRO Grant, when those conversations occurred, what Laronda's specific concerns were, whether Laronda ever suspected misconduct on the part of Abbott; and whether Laronda was worried that the Freetown Board of Selectmen might cover-up a serious matter of public concern. Lastly, Plaintiff urges the Court to allow him to confront not only Laronda with other allegations of police corruption and retaliation, but Ashley and Abbott as well.

Second, in balancing the interests of the parties, the burden or expense to Defendants in

---

[10] See Exhibit F, which is attached hereto and by reference incorporated herein, for copy of Plaintiff Jon M. Taylor's Responses To Interrogatories Propounded By The Defendant Carlton E. Abbott, Jr., To Be Answered By Jon M. Taylor, and, in particular, answer to interrogatory number 12; Exhibit G, which is attached hereto and by reference incorporated herein (for copy of counseling notice issued to Plaintiff by Sawicki, dated August 8, 2006).

allowing Plaintiff to proceed with such proposed deposition testimony is far outweighed by the benefit to Court to allow Plaintiff some latitude in probing related matters of serious public concern.  See Bennett v. City of Holyoke, 230 F.Supp.2d 207, 224 (D.Mass. 2002) affirmed 362 F.3d 1 (1st Cir. 2004) ("[s]tatements uncovering corruption within a police department are precisely the type of communications that demand strong First Amendment Protection").

As for Defendants' third contention that Plaintiff is precluded from discovering facts involving the SRO Grant because this topic is not specifically mentioned in his second amended complaint, such an argument is disingenuous since Defendants selectively examined Plaintiff on related subject matter areas, which, according to their argument, are strictly beyond the "four corners" of the second amended complaint (e.g., Abbott's application for involuntary retirement and plaintiff's September 2005 disciplinary hearing).[11]  Defendants should not be allowed to have it both ways.  Should the Court agree with Defendants on this point, a just remedy, in any event, would be to allow Plaintiff to cure any defect in the pleading by filing supplemental pleadings.[12]

Fourth, Defendants, based on rank speculation, falsely accuse Plaintiff of intending to question Abbott, Laronda and presumably Ashley on the SRO Grant in order to humiliate and harass them.  Ironically, Defendants make such claim after previously humiliating Plaintiff by questioning him repeatedly about an alleged extra-marital affair – a contention that Plaintiff

---

[11] See Exhibit A, pp. 123-30; see also Exhibit H, which is attached hereto and by reference incorporated herein (for copy of relevant testimony from Plaintiff's second deposition transcript).

[12] According to Fed.R.Civ.P. 15(d), a party may move to supplement his complaint "upon reasonable notice and upon terms that are just . . . setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."  A supplemental pleading may be employed to set forth new facts and update an earlier pleading in order to promote as complete an adjudication of the dispute between the parties as is possible. Wright, Miller & Kane Federal Practice and Procedure, §1504, n.1 (West 1990).  Leave to supplement a pleading should be freely granted, absent a clear showing of bad faith, dilatory tactics, futility or undue prejudice.  See Quaratino v. Tiffany & Co., 71 F.3rd 58, 66 (2nd Cir. 1995); Glatt v. Chicago Park Dist., 87 F.3rd 190, 194 (7th Cir. 1996); Concerned Area Residents v. Southview Farm, 834 F.Supp. 1410, 1412-13 (W.D.N.Y. 1993).

vehemently denies.[13]  For reasons stated above, good cause exists to disregard Defendants' grounds for a protective order and allow Plaintiff to examine these witnesses on additional act of potential police corruption.  Plaintiff does not anticipate that additional inquiry into this matter will require more than one day to depose Abbott, Laronda and Ashley.  Thus, the inconvenience to Defendants is minimal when balanced with the larger interests at stake.

Finally, where Defendants', since June 7, 2006, have been on notice of Plaintiff's additional claims of police corruption and ongoing acts of retaliation , Defendants have had ample opportunity to seek a protective order, yet have failed, neglected or ignored doing so in advance of the above depositions.  Should Defendants' eleventh hour motion be granted, it would be patently unfair to Plaintiff if he were not allowed to complete depositions, particularly where Defendants already have opened the door to this line of inquiry.  Accordingly, Defendants' motion should be denied.

### III.    CONCLUSION

By seeking a protective order, Defendants' intent is straightforward: to prevent Plaintiff from obtaining potentially incriminating testimony of town officials of a related act of police corruption.  For reasons stated above, just cause does not exist to warrant this type of order. Accordingly, Plaintiff respectfully requests that Defendants' motion be denied and that he be allowed leave to redepose Abbott, Laronda and Ashley forthwith.

---

[13] See Exhibit I, which is attached hereto and by reference incorporated herein (for copy of relevant testimony from Plaintiff's third deposition transcript).

        Respectfully Submitted by:

        JON M. TAYLOR

        By His Attorney

        <u>/s/ Howard Mark Fine, Esquire</u>
        Howard Mark Fine, Esquire
        86 Sherman Street
        Cambridge, MA  02140-3233
        BBO No. 554671
        (617) 868-9200

Dated: November 2, 2006