# EXHIBIT J



UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

```
JON M. TAYLOR,                          *
            Plaintiff                   *
                                        *  CIVIL ACTION
            VS                          *  NO. 03-12417-PBS
                                        *
TOWN OF FREETOWN, CARLTON E.            *
ABBOTT, JR., ESQ.,                      *
INDIVIDUALLY AND AS CHIEF OF            *
THE FREETOWN POLICE                     *
DEPARTMENT, and WALTER J.               *
SAWICKI, INDIVIDUALLY, AND              *
AS LIEUTENANT OF THE                    *
FREETOWN POLICE DEPARTMENT,             *
            Defendants                  *
                                        *
```

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

     DEPOSITION OF MARC ROUKE, taken on behalf of the defendant pursuant to the Massachusetts Rules of Civil Procedure before Kathleen M. Benoit, CSR # 1368F94, Shorthand Reporter and Notary Public in and for the Commonwealth of Massachusetts at the offices of Kopelman and Paige, 101 Arch Street, Boston, Massachusetts, on Tuesday, October 31, 2006, commencing at 10:12 a.m.

*Leavitt Reporting, Inc.*

1207 Commercial Street, Rear
Weymouth, MA 02189

Tel. 781-335-6791
Fax: 781-335-7911
leavittreporting@att.net

Hearings ♦ Conferences ♦ Legal Proceedings

100

1  Q. Did you ever hear any member of the Board of
2  Selectmen from 1998 until the present make any statement
3  about Mr. Taylor other than what Mr. Laronda may have told
4  you?
5        MR. FINE: Objection.
6  A. I haven't been present there so I really can't tell
7  you.
8        MR. JENKINS: Why don't we take just another
9  2 minutes.
10       (Recess taken.)
11       MR. JENKINS: No further questions. Can we
12 go off for a sec?
13       (Discussion held off the record.)
14       CROSS-EXAMINATION
15 Q. (By Mr. Fine) Good afternoon. My name is Attorney
16 Howard Fine. I represent Jon Taylor in this lawsuit.
17       If I can just draw your attention back to
18 Exhibit No. 1 which is what counsel was reviewing with you
19 a few moments ago. Did Officer Taylor ask you to
20 memorialize conversations with him and yourself?
21 A. No, he didn't.
22 Q. I think I'm all set with that document.
23       You testified a few minutes ago that current

101

1  officers or personnel employed by the Freetown Police
2  Department might fear retaliation if they were to be
3  deposed --
4      A.  Correct.
5      Q.  -- is that a fair assessment of what you were
6  testifying to?
7      A.  Yes.
8      Q.  And on what facts do you base that opinion,
9  Mr. Rouke?
10     A.  The fact when my civil case was going on Officer
11 Donald Bullock had patrol work on the 8 to 4 shift, I had
12 stopped, talked to him and he told me, "Listen, you've got
13 to get going," and I said "Why?"  He said "Because the
14 Chief told us if we get caught talking to you we're going
15 to get in the shits."  I said "You've got to be kidding
16 me?"  And he said "No, I can't be associated with you."
17     Q.  You testified earlier today that you know of an
18 officer by the name of Swede Magnet, is that correct?
19     A.  Yes, correct.
20     Q.  Do you believe that Swede Magnet would also be
21 fearful of retaliation if he were to tell the truth at a
22 deposition?
23     A.  I do.

1   Q. When did you first meet John Laronda, if you
2   recall?
3   A. When I was a patrolman and he was a tow truck
4   operator for the Town.
5   Q. You testified that there were approximately three
6   conversations that you had with Mr. Laronda relative to
7   White Mountain Cable?
8   A. Yes.
9   Q. And in each of those conversations, Mr. Rouke, was
10  Mr. Laronda working as an assessor for the Town of
11  Freetown, do you know?
12  A. No, he wasn't.
13  Q. Do you know if he held any official position with
14  the Town of Freetown when you were speaking to him about
15  White Mountain Cable?
16  A. I think he was a selectman at one point but I can't
17  be sure of the date.
18  Q. Do you know whether or not you ever had any
19  conversations at all with Mr. Laronda relative to the
20  School Resource Officer Grant?
21  A. Yes, I did.
22  Q. And can you summarize your conversations with
23  Mr. Laronda relative to that grant?

103

1    A.   He had documentation showing that Chief Abbott had
2    falsified a federal grant application to secure money for
3    the Department and that the Lakeville police chief, Mark
4    Sorel, was in fact irate and accused him in numerous
5    newspaper articles of falsifying a federal grant, and also
6    selectman Lawrence Ashley called the Lakeville selectmen
7    and asked them to have Sorel do a retraction on his
8    statements in the paper accusing Chief Abbott of falsifying
9    statistics to sell the need for the grant when in fact
10   Freetown only has one school, that being the Freetown
11   elementary school, and Lakeville has I believe four schools
12   in their system.  Freetown got the grant and Lakeville got
13   denied based on bogus statistics, which Chief Abbott
14   supplied for the School Resource Officer Grant, along with
15   the fact that he needed to force me out on a disability
16   retirement in order to show a hardship to secure the grant.
17        MR. FINE:  Could we just go off the record
18   for a second.
19        (-- Discussion held off the record.)
20   Q.   I had asked you a question previously about the
21   School Resource Officer Grant, and you were in the middle
22   of providing some testimony, Mr. Rouke, relative to my
23   inquiry and I didn't mean to cut you off.  I don't know if

1  there was anything else that Mr. Laronda may have spoken to
2  you about regarding that grant, and if he had, could you
3  just indicate what he told you?
4      A.   I believe Officer Taylor had put in a public
5  records request for it and received a partial copy of it
6  from the Board of Selectmen's office through Chief Abbott
7  which the pages were, instead of being printed one, two,
8  three, they were circled and they were out of sequence, and
9  Mr. Laronda stated that his hands were tied in regards to
10 any action to be taken against the grant by Chief Abbott
11 with the other two selectmen as far as going to an outside
12 agency and having it investigated for providing false
13 statements in the grant.
14     Q.   Did he indicate to you specifically why he was
15 providing you with documentation relative to that grant?
16     A.   That his hands were tied no matter what he were to
17 do and for us to do what we had to do with it.
18     Q.   Did he indicate to you where he received any of the
19 documents that he provided to you, Mr. Rouke?
20     A.   Through Chief Sorel.
21     Q.   And Chief Sorel is the chief of which Department?
22     A.   The Lakeville Police Department.
23     Q.   And at any point in time did you ever produce those

1 documents that were referring to to my client, Jon Taylor?
2    A.    I did.
3    Q.    And approximately when did you do that?
4    A.    I don't recall the exact date.
5    Q.    You have filed a civil suit against both the Town
6 of Freetown as well as Chief Abbott, correct?
7    A.    Correct.
8    Q.    And what was the nature of your civil suit against
9 both of these defendants, Mr. Rouke?
10   A.    Whistle blower statute claim and retaliatory acts
11 for testifying on a sexual harassment hearing against a
12 fellow police officer.
13   Q.    And eventually was this case resolved?
14   A.    It was.
15   Q.    And how was it resolved?
16   A.    The Town and Chief Abbott and the insolvency fund,
17 which represents the insurance company which went into
18 receivership, Legion Insurance, ended up settling the case
19 for $28,000.
20   Q.    Do you have any -- strike that.
21         Do you know whether or not Chief Abbott
22 enforces the Freetown Police Department rules, regulations,
23 policies, procedures, standards, practices, differently to

1  Jon Taylor than to other members of the Freetown Police
2  Department?
3          MR. JENKINS:  Object to the form.
4     A.   I would say yes.
5     Q.   And on what would you base that, Mr. Rouke?
6     A.   Based on other officers getting in trouble and not
7  receiving the same fair punishments.
8          MR. FINE:  I think I'm all set, Mr. Rouke,
9  thank you very much.
10         MR. JOYCE:  I don't have anything.
11         MR. LOUISON:  No questions.  Thank you.
12         MR. JENKINS:  Nothing.
13         (Whereupon the deposition adjourned at
14 12:42 p.m.)
15
16
17
18
19
20
21
22
23