```
                    VOLUME:    III
                    PAGES:     1 - 155
                    EXHIBITS:  41 - 51


        UNITED STATES DISTRICT COURT
                 FOR THE
          DISTRICT OF MASSACHUSETTS

                    C.A. # 031-12417-PBS

JON M. TAYLOR,
          Plaintiff,

vs.

TOWN OF FREETOWN,

CARLTON E. ABBOTT, JR., ESQUIRE,
Individually and as Chief of the Freetown
Police Department, and

WALTER J. SAWICKI,
Individually and as Lieutenant
Of the Freetown Police Department
          Defendants.

*  *  *  *  *  *  *  *  *  *  *  *  *  *
```

DEPOSITION OF JON M. TAYLOR, a witness

called on behalf of the Defendants, pursuant to

Massachusetts Rules of Civil Procedure, before

Carolyn McGill, a Shorthand Reporter and Notary

Public in and for the Commonwealth of Massachusetts,

at Kopelman & Paige, P.C., 101 Arch Street, Boston,

Massachusetts on June 22, 2006 commencing at 10:12

a.m.

6

```
 1    two signature pages here today indicating signed
 2    under the pains and penalties of perjury by Jon
 3    M. Taylor dated June 22, 2006.  Is that your
 4    signature there, sir?
 5         A.    Yes, it is, sir.
 6         Q.    It's your understanding isn't it sir
 7    that these signature pages are going to be
 8    amended or attached to Exhibit Three and Exhibit
 9    Four in this deposition, correct?
10         A.    That's correct.
11         Q.    And you understand by doing that that
12    what you are certifying is that Exhibits Three
13    and Four were signed under the pains and
14    penalties of perjury by yourself?
15         A.    Yes.
16         Q.    I believe last time we were here we
17    were talking about Exhibit Twenty-Five.  This
18    was one of the documents identified by you as
19    containing false and defamatory statements
20    regarding yourself as issued by Lieutenant
21    Sawicki, do you recall that?
22         A.    Defamatory statements, that's correct.
23         Q.    I am placing in front of you Exhibit
```

7

1    Twenty-five.  Previously you had identified in
2    the third paragraph that one of the statements
3    that you were contending was false was where it
4    indicates here he replied in a gruff and rising
5    voice, "you told his lawyer that there was a
6    lawsuit, there is no lawsuit." You indicated
7    that the gruff and rising voice part was false,
8    correct?
9        A.    Correct.
10       Q.    How would you describe the tone in
11   which you made that statement?
12       A.    Monotone.
13       Q.    Monotone, is that what you said?
14       A.    That's correct.
15       Q.    Anything else in terms of that,
16   describing how you uttered the statement that's
17   quoted there?
18       A.    No.
19       Q.    So it's your testimony that it was
20   essentially a monotone voice that you used to
21   make that statement, correct?
22       A.    Correct.
23       Q.    Then in the next two sentences down

8

```
 1      from that where it states Patrolman Taylor then
 2      responded in an aggressive manner, "I'm sick of
 3      this shit."  You indicated in that sentence that
 4      the portion that states in an aggressive manner
 5      was false.  Do you recall that?
 6           A.   Yes, I do.
 7           Q.   How would you describe the manner in
 8      which you made the statement to Lieutenant
 9      Sawicki?
10           A.   Normal manner, normal state.
11           Q.   Now, skipping down to the fourth
12      paragraph which is I believe where we left off,
13      the second sentence is where I believe we had
14      left off where it states as I got closer I
15      observed Patrolman Taylor look at me, his face
16      appeared flushed and he displayed a hostile
17      look.
18                I believe you took issue with the
19      flushed and he displayed a hostile look portion
20      of that statement, is that correct?
21           A.   Correct.
22           Q.   Is it your testimony that you were not
23      flushed when you approached or when you saw
```

                                                                        9

```
1     Lieutenant Sawicki at that point?
2         A.    Correct.  I wasn't flushed.  Flushed
3     would be describing somebody who was ill.  Cold,
4     flu.
5         Q.    And so it's your contention that you
6     weren't flushed at that time, is that correct?
7         A.    Correct.
8         Q.    And you're contending you did not
9     display a hostile look?
10        A.    If I had displayed a hostile look that
11    would have been construed as once again
12    disorderly according to your characteristics
13    here.  So, no.
14        Q.    So what look if any did you display?
15        A.    Normal appearance.
16        Q.    The next sentence, he then said to me
17    "you told their lawyer that there was a
18    lawsuit."  Is there anything in that statement
19    that's false?
20        A.    No.
21        Q.    Next sentence I responded, "Jon, you
22    weren't there.  You don't know what I said."  Is
23    that accurate?
```

                                                      13

```
 1      We're not going to agree on this.  We'll go line
 2      by line.  No, I did not say that.
 3          Q.   You're saying you didn't make that
 4      statement?
 5          A.   To the best of my knowledge, no, I did
 6      not.
 7          Q.   But it's possible that you did?
 8          A.   Don't put words in my mouth.  No.
 9          Q.   I'm asking.
10          A.   I told you again, this report was the
11      year 2003 so it's over three years old.
12          Q.   Okay.  So you don't recall?
13          A.   That's correct.  I'm going by what we
14      have here.
15          Q.   The next sentence, "as Patrolman
16      Taylor's demeanor was aggressive I responded,
17      Jon, I am leaving.  I'm not walking anywhere
18      with you."  Is there anything in that statement
19      that's false?
20          A.   Actually, that part would be false.
21      Actually, the quote unquote was get the fuck
22      away from me.  That's not reflected in the
23      report though.
```

14

1   Q.   Is there anything else in that
2   statement that's false?
3   A.   I just gave you the quote that I
4   remember from that specific point.
5   Q.   I understand.  All I'm asking you to
6   do is read that sentence and what it says and
7   tell me if there's anything in that there that
8   you're contending is false?
9   A.   That does not reflect the true and
10  accurate comments made by the Lieutenant so that
11  would be a false line.
12  Q.   Anything else in that statement that
13  you're contending is false?
14  A.   He then walked away so I'd say after
15  he made the comment "get the fuck away from me"
16  then he did proceed away from the distance of
17  Sergeant Sullivan and myself.  So I guess we can
18  assume that would be correct.
19  Q.   So the next sentence you're saying is
20  accurate?
21  A.   We'll assume it was.  I don't know
22  where he went.
23  Q.   Then it states Patrolman Taylor

15

1    continued to walk along with me and stated,
2    "there is no lawsuit for the accident. I hired
3    a lawyer to make sure I got paid for it. Is
4    there anything in that that you're contending is
5    false?
6        A.    Again, I made it very clear from the
7    beginning I hired an attorney to make sure I was
8    given proper medical procedures, to protect my
9    rights. That comment was made at numerous
10   times. Was it made at this point, I don't
11   remember again.
12       Q.    But you're not necessarily saying you
13   might not have said it at that point, is that
14   fair to say?
15       A.    Fair to say we're talking three years
16   ago. I don't remember. I have said it all
17   along.
18       Q.    The next sentence, Taylor then
19   continued, "this has nothing to do with the
20   other lawsuit." You're contending that's false?
21       A.    I'm contending once again, I don't
22   remember. We are talking three years ago.
23       Q.    I then responded, "I don't know

16

1    anything about any other lawsuits."  Is that an
2    accurate reflection of what Lieutenant Sawicki
3    responded?
4         A.    According to his report.  According to
5    what I remember.  Again, we're talking over
6    three years ago.
7         Q.    So you don't remember as you sit here
8    today?
9         A.    If you want me too fabricate it, I
10   will agree to it.  No, I don't remember.
11        Q.    Taylor the replied, "if you don't know
12   anything about it I guess my lawyer hasn't
13   notified you yet."  Is that accurate?
14        A.    Again, we're talking about three years
15   ago.
16        Q.    So you don't remember?
17        A.    Correct.
18        Q.    At this point I crossed the street
19   towards my cruiser.  Patrolman Taylor did not
20   follow.  Is that accurate?
21        A.    I didn't walk with him so we'll say
22   that's correct.
23        Q.    Now, looking at the second to last

17

```
 1     paragraph there, I believe that Patrolman
 2     Taylor's conduct and demeanor inside the
 3     courthouse lobby in the presence of civilians
 4     and court employees was insubordinate.  Anything
 5     in that that you are contending is inaccurate?
 6          A.   The whole thing.  If my conduct was so
 7     belligerent, with the past history of the Chief
 8     and the Lieutenant, they would have had written
 9     statements from people who witnessed it; court
10     employees, civilian employees.
11          Q.   The next statement, I also believe
12     that Patrolman Taylor's statements about "going
13     for a walk and straightening this out once and
14     for all" and "if you don't know about the
15     lawsuit then I guess my lawyer hasn't notified
16     you yet," were done to intimidate me with
17     threats of physical or legal actions against me
18     on his part.  Is there anything in that that's
19     false?
20          A.   Again, the whole thing.  I'm a
21     civilian dressed in civilian clothes.  He's in
22     his uniform with a gun belt, gun, handcuffs,
23     mace.
```

1    Q.    Okay.

2    A.    And I'm going to intimidate a person

3    who's over six foot tall?

4    Q.    So you deny that this would have been

5    intimidating to him.  Is that basically what

6    you're testifying to?

7    A.    That's correct.  That's a formed

8    opinion that he wrote down.

9    Q.    That the statement that's contained

10   there is Lieutenant Sawicki's opinion of the

11   situation, fair to say?

12   A.    Fair to say.

13   Q.    It also would be fair to say that the

14   sentence before that, the I believe that

15   Patrolman Taylor's conduct and demeanor inside

16   the courthouse lobby in the presence of

17   civilians and court employees was insubordinate,

18   that's Lieutenant Sawicki's opinion as well?

19              MR. FINE:  Objection.

20   A.    Again, if I were disturbing the peace,

21   tumultuous behavior, I would have been charged

22   with conduct unbecoming an officer which I was

23   actually.  Excuse me.  I would have been charged

                                                                19

1     with disorderly conduct within the city of Fall
2     River.  They would have written statements like
3     they have done in the past.  Why are there no
4     written statements with this?
5              According to this we have
6     witnesses as in the public.  Where is the
7     witnesses statements?
8        Q.   I'm just asking if --
9        A.   I'm giving you the answer.
10       Q.   I don't think you did.  The question
11    was -- do you remember the question?
12       A.   I said no.
13       Q.   That it's not Lieutenant Sawicki's
14    opinion?
15       A.   That's his opinion, yes.
16              MR. FINE:  Objection.
17       Q.   That's my question.
18       A.   It's a formed opinion.
19       Q.   Then the last sentence in that second
20    to last paragraph, this would also be not only
21    insubordinate but conduct unbecoming an officer
22    as well.
23       A.   That's not surprising.  That's his

20

1    opinion.
2         Q.   That is also his opinion?
3         A.   Correct.
4              MR. FINE:  Objection.
5         Q.   Then the last sentence in the letter,
6    I bring this incident to your attention for
7    whatever action you deem appropriate.  There's
8    nothing false and defamatory about that,
9    correct?
10        A.   Correct.
11        Q.   Are there any other written statements
12   that you are contending as part of your lawsuit
13   in this case that Lieutenant Sawicki issued that
14   you believe are false and defamatory?
15        A.   Once again, Attorney Fair, we produced
16   over 3,000 documents.
17        Q.   That's right.
18        A.   I don't remember each and every
19   document we have over a course of three to four
20   years.  If you'd like me to go through them one
21   by one I'll pick them out.
22        Q.   If that's what we need to do then
23   that's what we need to do.  The defendants are

142

1   break.  Based on our prior discussion I
2   understand that the plaintiff will now review
3   the records to ascertain if it refreshes his
4   recollection about the written statements he's
5   claiming are false and defamatory.
6              (Lunch recess).
7              (Exhibit No. 49, 6/10/03 Freetown
8   Police Investigative Report; so marked).
9        Q.   Officer Taylor previously we had
10  agreed that during the break you would review
11  the various documents that your counsel has
12  produced to us as part of this litigation as
13  well as the documents that the defendant
14  produced to your attorney as part of this
15  litigation.  Do you recall that?
16       A.   Yes.
17       Q.   And you were going to review those
18  documents to refresh your recollection as to
19  whether there were any additional written
20  statements from Lieutenant Sawicki that you were
21  claiming were defamatory?
22       A.   Correct.
23       Q.   And you had an opportunity to do that?

143

```
1        A.    Yes, I have.
2        Q.    And you did review those sets of
3    documents?
4        A.    Yes, sir.
5        Q.    It's my understanding that you
6    identified Exhibit Forty-nine as one of those
7    documents, correct?
8        A.    That's correct.
9        Q.    This is a Freetown Police Department
10   Investigative Report dated June 10, 2003.  What
11   is this document?
12       A.    This is a document for an Internal
13   Affairs report which was presented to me after
14   the investigation that was conducted by
15   Lieutenant Sawicki after the allegations or
16   comments that were made regarding the Chief when
17   I was accused of this alleged incident when I
18   was in Florida.
19             The anonymous complaint that we
20   have before us, the first sheet that is missing
21   is specifically in paragraph three from the
22   alleged complainant, states to the effect that
23   the speed limit should have not been changed
```