UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JON M. TAYLOR, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF FREETOWN, | ) | C.A. NO. 03-12417-PBS |
| | ) | |
| CARLTON E. ABBOTT, JR., ESQ., | ) | |
| Individually, and as Chief of the Freetown | ) | |
| Police Department, and | ) | |
| | ) | |
| WALTER J. SAWICKI, | ) | |
| Individually, and as Lieutenant of the | ) | |
| Freetown Police Department | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

Pursuant to Fed.R.Civ.P. 15(c) and (d), Plaintiff Jon M. Taylor ("Plaintiff")

hereby amends and supplements his complaint in the above-captioned matter as follows:

### INTRODUCTORY STATEMENT

1. This is a complaint for compensatory and punitive damages brought by Jon M.

   Taylor ("Plaintiff"), pursuant to Title 42 U.S.C. § 1983, for the deprivation of the

   former's civil rights, under color of state law, and for adverse actions suffered as a

   result thereof, by his employer, the Town of Freetown ("Freetown"), and his

   supervisors, Carlton E. Abbott, Jr., Esq. ("Abbott") and Walter J. Sawicki

   ("Sawicki"). Plaintiff avers that Freetown, Abbott, and Sawicki (collectively

   referred to as the "Defendants"), in violation of federal and state constitutional,

   statutory, and common law rights, continuously harassed and retaliated against

him, and otherwise created a pervasively hostile environment for his having

repeatedly raised matters of public concern regarding unlawful misconduct in the

Freetown Police Department.

## JURISDICTION

2.  Jurisdiction is based on 42 U.S.C. §1983 and 28 U.S.C. §§ 1331 and 1343.

Plaintiff claims the court's pendent jurisdiction over state law related claims.

## 1. PARTIES

3.  Plaintiff Jon M. Taylor is a natural person and a resident of Fall River,

Massachusetts, Bristol County. At all times material to this civil action, Plaintiff

has been and remains employed by the Defendant Town of Freetown as a Police

Officer and deemed an "employee," as that term is defined in M.G.L. c. 149,

§ 185(a)(1).

4.  Defendant Town of Freetown is a municipality of the Commonwealth of

Massachusetts and is located within Bristol County. At all times material to this

civil action, Defendant Town of Freetown is deemed Plaintiff's "employer", as

that term is defined in M.G.L. c. 149, § 185(a)(2). Pursuant to M.G.L. c. 41, s.

97, said Defendant is authorized to make suitable regulations governing the police

department and the officers thereof, and, further, is deemed a "public body," as

that term is defined in M.G.L. c. 4, § 7, and c. 149, § 185(a)(3)(A) and (E).

5.  Defendant Carlton E. Abbott, Jr., Esquire is a natural person and a resident of East

Freetown, Massachusetts, Bristol County. At all times material to this civil

action, Abbott was, and remains, the Chief of the Town of Freetown's Police

2

Department and is deemed Plaintiff's "supervisor," as that term is defined in M.G.L. c. 149, § 185(a)(4).

6. Defendant Walter Sawicki is a natural person and a resident of East Freetown, Massachusetts, Bristol County. At all times material to this civil action, Sawicki was, and remains, the ranking Police Lieutenant in the Town of Freetown's Police Department and is deemed Plaintiff's "supervisor", as that term is defined in M.G.L. c. 149, § 185(a)(4).

## STATEMENT OF FACTS

7. In November 1988, or thereabout, Plaintiff began his employment with the Town of Freetown Police Department first as an Auxiliary Police Officer, next as a Reserve Police Officer, and later as a full-time Police Officer, which has been his current position since September 6, 1997, or thereabout.

8. At all times material to this civil action, Plaintiff met or exceeded the minimum performance expectations of his employer, as evidenced, in part, by his numerous commendations for his service to his department and community.

9. In addition to his experience as a Police Officer, Plaintiff also possesses Associate degrees in Liberal Studies and Criminal Justice, a Bachelor of Science degree in Law Enforcement, and a Master of Science degree in Criminal Justice Administration.

10. On July 17, 1998, or thereabout, Abbott, then Freetown's town counsel, was hired by Freetown as its Police Chief.

11. Shortly after Abbott became the chief, Plaintiff was approached by Freetown Police Officer Elton E. Ashley, III ("Ashley"), who, under the direction of

3

Abbott, inquired of Plaintiff which "side" he was on: Abbott's or a group of other officers. According to Ashley, if Plaintiff was not loyal to Abbott, then Plaintiff would be "on the outside looking in." Plaintiff replied that he was politically neutral.

12. On September 29, 1998, Ashley and Freetown Police Officer Scott Rose approached Plaintiff, stating Abbott advised them to speak to Plaintiff to determine if the latter would "cover up" for both officers who had falsified time slips while working White Mountain Cable Company details. According to these officers, Abbott, using these officers as third parties, specifically requested Plaintiff to forge paperwork to protect the officers from claims that they were "double-dipping," that is, deliberately misappropriating funds. To his detriment, Plaintiff emphatically stated to these officers that he refused to participate in such a conspiracy.

13. Shortly after the above conversations between Plaintiff and Ashley occurred, Abbott openly and continuously began a pattern and practice of retaliation and ongoing harassment against Plaintiff. Such adverse action, either directly or indirectly, such as, through other supervisors like Sawicki, included but was not limited to:

   a.  unjustly accusing Plaintiff of falsifying departmental records and conduct unbecoming an officer;

   b.  unjustly denying Plaintiff advantageous training, teaching, and related career opportunities, such as in August 2000, April 2001, July 2002, and the beginning of 2003;

4

c.  unjustly differentially treating Plaintiff in terms and conditions of
    employment, such as denying Plaintiff more favorable shifts and
    assignments (for example, being reassigned by Abbott, without prior
    notice, to work solely midnight shifts in contrast to junior officers);

d.  depriving him of overtime opportunities and subjecting him to closer
    supervision than some of his colleagues;

e.  unjustly being by-passed repeatedly by Defendants in the selection process
    for filling permanent or temporary Police Sergeant positions, such as on or
    about May 5, 1999, November 20, 2002, and January 2003, in favor of
    officers with less qualifications, such as Abbott's brother Steven and Ashley;

f.  maligning Plaintiff's good character and reputation within the Freetown
    Police Department (such as Abbott, on or about February 13, 1999, telling
    Police Officers Ashley, Scott Rose, and Donald Bullock that Plaintiff was
    incompetent and could not be entrusted to be an "Officer-in-Charge") and to
    third parties within the community by falsely alleging, for example, that
    Plaintiff has a mental disorder and feigned a serious work-related injury
    (such as Sawicki, in the summer of 2003, or thereabout, knowingly making
    a false and reckless statement to the Assistant District Attorneys in the Fall
    River District Attorney's office by stating that Plaintiff had faked a recent
    work-related injury);

g.  intimidating and coercing the Plaintiff, such as threatening him with, and
    pressuring him to stipulate to, unwarranted disciplinary action on or about
    February 6, 2000);

h.  assigning Plaintiff to older, less safe police cruisers than his co-workers;

i.  tampering with Plaintiff's personnel file, which Plaintiff discovered in November 2002, or thereabout; and

j.  advising a newly appointed supervisor to "watch out for Officer Taylor" and "to write him up for whatever you can."

14. At all times material herein, Defendants had knowledge, based on Plaintiff's written and verbal communications with them and his superior officers, that Plaintiff was opposed to the Defendants' practice of allowing police officers to "double-dip."

15. In sworn deposition testimony involving other employee claims of retaliation (Sullivan and Christiansen infra) before the Massachusetts Commission Against Discrimination ("MCAD"), Abbott, on January 19, 2001, admitted that he investigated allegations that Taylor falsified payroll records for details at White Mountain Cable Company as well as presented Plaintiff with a settlement offer for such misconduct, which Plaintiff rejected since Plaintiff denies any wrongdoing. Based on Plaintiff's information and belief, never before had Abbott made such an admission. Prior to the filing of this civil action, Plaintiff, unlike Ashley, was never the subject of any formal disciplinary action since his employment with Freetown, according to Plaintiff's personnel record.

16. In sworn testimony concerning the above claims of retaliation, Abbott, on July 11, 2003, testified before the MCAD (Commissioner Walter J. Sullivan, Jr., presiding) that, in his opinion, Ashley committed larceny in the White Mountain Cable Company matter by unlawfully accepting funds as a Patrol Officer in the

Freetown Police Department. Prior to the above hearing, Abbott, on Plaintiff's information and belief, had never admitted publicly that Ashley had engaged in criminal conduct.

17. Although Abbott, at all times material herein, had sufficient evidence to file a criminal complaint against Ashley, he deliberately failed, neglected, and/or refused to do so and thereby unlawfully concealed a crime. Rather, the only charges that Abbott preferred against Ashley were before the Freetown Board of Selectmen (the "Board") on or about February 22, 2000. On Plaintiff's information and belief, Abbott failed, refused, and/or neglected to suspend Officer Ashley for his unlawful misconduct involving White Mountain Cable Company. Within one year, Ashley was promoted by the Board to a temporary and later a permanent Police Sergeant position, with the support and recommendations of Abbott and Sawicki. On Plaintiff's information and belief, Ashley's qualifications for the Police Sergeant position were inferior to those of other, more qualified employees in the Freetown Police Department, including those of Plaintiff.

18. Evidence exists that in addition to Ashley, other employees, such as Sawicki and others loyal to Abbott, unlawfully misappropriated public money in connection with White Mountain Cable Company details. Though Abbott, in his capacity of Police Chief, knew or should have known of similar egregious instances of such unlawful misconduct, he deliberately failed, refused, or neglected to file any criminal complaints or recommend disciplinary action against subordinates except

those officers who, from Abbott's perspective, who were <u>on the outside looking</u> <u>in</u>.

19. On October 26, 2000, November 22, 2000, July 17, 2002, and June 27, 2003, Plaintiff, in a final attempt to address police corruption in the Freetown Police Department, sent written notices to the Board and Abbott. In his correspondence, Plaintiff raised several matters of public concern, including Abbott's and the Board's failure to properly respond to the White Mountain Cable Company incident, violation of department rules and regulations and collective bargaining agreement terms by Abbott concerning overtime, and unethical and deceitful practices by Abbott in his capacity as Police Chief. <u>See</u> Exhibits A-D, which are attached hereto and by reference incorporated herein (copies of Plaintiff's complaints to Board). At all times material hereto, Sawicki was aware of these written communications of Plaintiff, which were posted on the union's bulletin board at the Freetown Police Station.

20. In May 2003, or thereabout, Plaintiff spoke to Sawicki regarding an anonymous citizen complaint placed in Plaintiff's mailbox at work. In response thereto, Sawicki told Plaintiff, "What do you expect when you accuse the chief of corruption?" He also threatened Plaintiff by advising him to "shut the fuck up" relative to making further accusations of police corruption.

21. On July 21, 2003 – less than four weeks after the Plaintiff's last correspondence to Freetown and Abbott – Abbott, in writing, insinuated that Plaintiff engaged in racial profiling while performing traffic duty and, as a consequence, "directed" Plaintiff to "familiarize" himself with applicable departmental policies and

"encouraged" Plaintiff to "voluntarily modify (his) conduct to avoid real or perceived allegations of racial or gender profiling." Plaintiff denies any and all allegations that he has engaged in such misconduct. Further, the motorist whom Plaintiff ticketed later admitted in a Boston Globe article, dated January 15, 2003, that he had exceeded the rate of speed that was posted. Based on Plaintiff's information and belief, no other Freetown Police Officer than he was singled out by Abbott for racial or gender profiling.

22. On July 24, 2003, the Board responded in writing to Plaintiff's letter of June 27, 2003. According to the Board, after "check(ing) into the matter further . . . there was **nothing** (emphasis added) to substantiate his claims" – notwithstanding Abbott's prior admission to the MCAD on July 11, 2003. See Exhibit E, which is attached hereto and by reference incorporated in the herein complaint (copy of Board's formal response to Plaintiff's June 27, 2003 internal complaint).

23. On August 14, 2003, Freetown's Town Clerk, in writing, acknowledged that the Office of the Town Clerk had no public records on file concerning an investigation, pursuant to M.G.L. c. 41, §23B or any documents relating to any complaints made by Plaintiff. See Exhibit F, which is attached hereto and by reference incorporated herein (copy of correspondence of Jacqueline A. Brown, Town Clerk).

24. In addition to Plaintiff, other Freetown Police Officers have filed complaints of unlawful retaliation in violation of their civil rights, as evidenced below:

   a. On or about September 22, 2000, Freetown Police Officer Alan Alves filed a civil rights suit against Freetown in the United States District Court

for the District of Massachusetts. See Exhibit G, which is attached hereto
and by reference incorporated herein (copy of Alves' civil complaint).
Said plaintiff averred federal and state discrimination and retaliation
claims, pursuant to 43 U.S.C. 2000e-2 and M.G.L. c. 151B, respectively.
The plaintiff further averred, pursuant to 42 USC §1983, that under the
color of state law, defendant refused to promote plaintiff on the basis of
race and in retaliation for his prior suits against defendant, which
"amounts to a deprivation of rights, privileges and immunities secured to
Plaintiff by the United States Constitution and laws." Id. at par. 26. On or
about November 20, 2001, Freetown settled the suit in the amount of
$140,000.00. Id.

b.  On October 6, 2000, a "whistle-blower" lawsuit was filed in Bristol
Superior Court by a fellow Police Officer, Marc Rouke, against Freetown
and Abbott. See Exhibit H, which is attached hereto and by reference
incorporated herein (copy of Rouke's civil complaint). According to
paragraph 22 of the pending suit, plaintiff avers that he was retaliated
against by the defendants, in violation of M.G.L. c. 149, 185, for
providing information to and testifying "before a public body conducting
an investigation, hearing or inquiry into a violation of law, or a rule or
regulation promulgated pursuant to law, or activity, policy or practice
which plaintiff reasonably believed posed a risk to public health, safety or
environment by the employer."

    c.  In 1997, Freetown Police Officer Charles Sullivan and Freetown Police
Sergeant Terrance Christiansen filed their own MCAD complaints on
grounds of continuous retaliation by Freetown, after having given
evidence and testimony in a sexual harassment and retaliation claim
previously pending before the MCAD.  See Exhibits I and J, respectively,
which are attached hereto and by reference incorporated herein (copies of
Sullivan's and Christiansen's amended complaints, dated February 28,
2001).  Said complainants further averred, in paragraph 20 of their
respective pleadings, that Abbott "conspired with the Town of Freetown
Selectmen John Ashley, Robert Robideaux and Christopher McCarthy to
continue to retaliate" against them for having engaged in protected activity
under M.G.L. c. 151B.  Based on Plaintiff's information and belief, these
administrative complaints were settled by the parties in 2004.

25. On or about October 2, 2003, Plaintiff sent the Board a written presentment of his
claims involving the Defendants.  See Exhibit K, which is attached hereto and by
reference incorporated herein (Plaintiff's Letter of Presentment and Demand for
Settlement).

26. On or about November 5, 2003, Sawicki, through counsel, threatened Plaintiff
with legal action were Plaintiff to pursue any claim against him.

27. On December 1, 2003, Plaintiff filed the herein civil complaint against
Defendants.

28. On or about December 29, 2003, Sawicki filed with Abbott a written complaint
against Plaintiff, falsely alleging that Plaintiff was insubordinate, engaged in

conduct unbecoming an officer and posed a physical threat to Sawicki. <u>See</u>
Exhibit L, which is attached hereto and by reference incorporated herein
(Sawicki's written complaint to Abbott).

29. On March 23, 2004, Plaintiff filed his first amended civil complaint against
Defendants.

30. On or after July 25, 2004, Sergeant Abbott, falsely accused Plaintiff of
"tailgating" him at approximately 2:45 a.m. in order to "harass (him) and
intimidate his family." <u>See</u> Exhibit M which is attached hereto and by reference
incorporated herein (internal affairs complaint dated August 13, 2004). Based on
Plaintiff's information and belief, Sergeant Abbott was operating his vehicle on
that date and time while under the influence of alcohol.

31. On September 27, 2004, Sergeant Steven Abbott issued Plaintiff a "counseling
notice" for arriving 18 minutes late for work on September 21, 2004, despite the
fact that another officer had provided Plaintiff coverage for his shift. <u>See</u> Exhibit
N, which is attached hereto and by reference incorporated herein (copy of
Sergeant Abbott's counseling notice).

32. On October 1, 2004, Sergeants Abbott and Ashley issued Plaintiff an amended
"counseling notice," in which they falsely accused Plaintiff *inter alia* of allegedly
being tardy on November 3, 2003, October 28, 2003 and October 3, 2002; and
threatened him that failure to meet their performance expectations would subject
him to "other disciplinary action, up to and including termination."

33. On September 22 and 27, 2004, Abbott, in violation of departmental rules and
regulations, ordered Plaintiff to disclose private and confidential information

12

about his medical condition. At <u>no</u> time did Abbott warn Plaintiff or Plaintiff's union that failure to comply with these orders would result in disciplinary action.

34. On October 8, 2004, Abbott placed Plaintiff on administrative leave pending receipt of the name, strength and dosage of any controlled substance(s) possessed or used by Plaintiff on or off duty.

35. From September 21, 2004 until October 8, 2004, Plaintiff was allowed to work five days, regardless of what, if any, concerns Abbott had about the strength and dosage of the medication Plaintiff was taking.

36. Between September 22, 2004 and October 26, 2004, Plaintiff, pursuant to good faith negotiations by his union and counsel, produced for Abbott a list of current medications.

37. On or about November 7, 2004, Plaintiff, in a telephone conversation with Abbott, told Abbott that he had contacted the Federal Bureau of Investigation about his complaint of police corruption in the Freetown Police Department; that is, alleged unlawful conduct concerning the double-dipping incident and Abbott's alleged falsification of a federal grant application for a School Resource Officer position (the "SRO Grant").

38. On or about November 8, 2004, Abbott filed with the Board a formal complaint against Plaintiff, falsely charging the latter with two counts of insubordination. <u>See</u> Exhibit O, which is attached hereto and by reference incorporated herein (copy of Abbott's formal disciplinary charges against Plaintiff).

39. On or about November 12, 2004, Plaintiff requested that Freetown grant him injury leave benefits pursuant to M.G.L. c. 41, §111(F), for psychological and emotional injuries.

40. On December 14, 2004, the Honorable Patti B. Saris issued an order granting Plaintiff leave to file an amended complaint to address the statute of limitations problem and demonstrate a continuing violation.

41. On January 13, 2005, Plaintiff, upon receiving leave by Judge Saris, filed a second amended complaint.

42. On February 24, 2005, Defendants moved to dismiss Plaintiff's second amended complaint to which Plaintiff opposed on March 24, 2006.

43. In March 2005, or thereabout, Plaintiff had exhausted his health and welfare benefits for himself and his family and was without compensation, pending Freetown's approval of his November 12, 2004 request for medical leave benefits.

44. In June 2005, or thereabout, Plaintiff was finally granted such benefits after seven months of protracted negotiations on Freetown's part.

45. On September 21, 2005, the Board conducted a disciplinary hearing on Abbott's formal complaint against Plaintiff.

46. Prior to the hearing, the Board denied Plaintiff's motion that it recuse itself from conducting the hearing and appoint an independent fact-finder. See Exhibit P, which is attached hereto and by reference incorporated herein (copy of Plaintiff's Motion for Recusal).

47. On October 3, 2005, Selectman Lawrence Ashley, without prior deliberation by the Board, issued findings of fact, conclusions of law and a recommendation that

14

a written reprimand be placed in Plaintiff's personnel file. Thereafter, Board members John Ashley and Lawrence Ashley voted to adopt the aforementioned recommendation.

48. On October 17, 2005, the Board issued Plaintiff a written reprimand to be placed in Plaintiff's file. See Exhibit Q, which is attached hereto and by reference incorporated herein (copy of letter to Plaintiff from Board). In addition, the Board warned Plaintiff that "similar misconduct in the future" may result in "more severe disciplinary action." Id.

49. On January 31, 2006, Magistrate Judge Joyce London Alexander's report and recommendations, Judge Saris endorsed Magistrate Judge Joyce London Alexander's recommendations to allow Defendants' motion to dismiss Plaintiff's second amended complaint on count IV as to both Abbott and Sawicki and as to Abbott, count VII; and to deny Defendants' motion as to the remaining counts I to III, V, VI and as to Sawicki only, count VII.

50. On March 31, 2006, Judge Saris conducted a scheduling conference and set discovery, motion filing and a trial schedule in the above matter.

51. On October 24, 2006, one week prior to the close of discovery, and with Abbott's, John Laronda's (former Chairman of the Board of Selectmen) and Lawrence Ashley's depositions pending, Defendants moved for a protective order to prevent Plaintiff from deposing witnesses regarding the SRO Grant. See averment number 37.

52. On November 13, 2006, Magistrate Judge Joyce London Alexander denied Defendants' motion for a protective order.

15

53. Defendants' continuous harassment of and adverse actions toward Plaintiff are substantially inter-related, sufficiently similar in nature, and constitute a serial violation of Plaintiff's civil rights.

54. Subsequent to filing his original and amended complaints, Defendants, to the present date, continue to interfere with the terms and conditions of Plaintiff's employment. Such acts have included, but are not limited to:

   a. continuous harassment and intimidation by subjecting him to unwarranted discipline and threat of job termination;

   b. economic coercion by unjustifiably withholding workers' compensation benefits from Plaintiff after he was brought up on formal disciplinary charges (see averment numbers 39, 43 and 44 supra);

   c. seeking on February 21, 2006, or thereabout, to remove Plaintiff from the Freetown Police Department by applying for involuntarily disability retirement on Plaintiff's behalf over the latter's objection;

   d. denying him the opportunity to train auxiliary officers (see Exhibit R, which is attached hereto and by reference incorporated herein (copy of Abbott's order to Plaintiff]);

   e. unjustifiably counseling Plaintiff for alleged poor performance, as most recently as August 28, 2006 (see Exhibit S, which is attached hereto and by reference incorporated herein [copy of Sawicki's counseling notice]); and

16

      f.  unjustifiably denying Plaintiff a promotion to Acting Police Sergeant, on or about December 7, 2006, in favor of Officer Rose, an employee with less qualifications and seniority than Plaintiff.

55. To date, the Board has deliberately failed, refused, or neglected to investigate properly or refer Plaintiff's claim of police corruption to the local District Attorney's Office, the Office of the Attorney General or some other outside entity, pursuant to its policies and procedures; grant his request to conduct a public hearing to address these claims; and remediate these serious matters of public concern.

56. According to former Board Chairman Laronda, Plaintiff's complaints of police misconduct contained substantial allegations which the Board refused to adequately investigate and address.

## COUNTS

### COUNT I: TITLE 42 U.S.C. § 1983, FEDERAL CIVIL RIGHTS ACT
(Freetown, Abbott, and Sawicki)

57. Plaintiff restates and re-avers the above paragraphs 1 to 56 as if expressly set forth herein.

58. The above-described activities of Defendants violated Plaintiff's right to freedom of speech under the First Amendment of the United States Constitution, Article I.

59. By criticizing Freetown's paid detail practices and otherwise speaking out against, or attempting to speak out against police corruption in the Freetown Police Department, Plaintiff has engaged in protected speech under Article I of the First Amendment of the Constitution.

74. The disclosures by Plaintiff of police corruption were based on Plaintiff's reasonable belief that Defendants' activities were in violation of the law and contrary to public policy, and were an expression that involved the type of public significance necessary to rise to the level of protected speech.

75. Defendants violated Plaintiff's right to free speech as secured under the Massachusetts Constitution when they harassed and retaliated against Plaintiff for disclosing and/or attempting to disclose corruption in Freetown's Police Department.

76. Defendants' harassing and retaliatory conduct toward Plaintiff represents an offense to the Constitution of Massachusetts, Declaration of Rights, Part I, Article XVI.

77. As a result of the continuous harassment and retaliatory actions by Defendants, Plaintiff has suffered, and will continue to suffer, harm to his reputation, loss of compensation, emotional distress, and other substantial damages, unless this Honorable Court otherwise provides relief.

### COUNT IV: WHISTLE-BLOWING CLAIM
### (Freetown)

78. Plaintiff restates and re-avers the above paragraphs 1 to 77 as if expressly set forth herein.

79. Plaintiff has made repeated oral and written disclosures to his supervisor, employer, and public body concerning activities, policies, and/or practices which violate laws, and departmental rules and regulations promulgated pursuant to law, or which Plaintiff reasonably believes pose a risk to public safety or the

20

environment of the employer and the community pursuant to M.G.L. c. 149, §185

(c)(1).

80. Plaintiff, to no avail, has repeatedly afforded Freetown a reasonable opportunity

to correct the activity, policy, and/or practice, pursuant to M.G.L. c. 149,

§185(c)(1).

81. Freetown has retaliated against Plaintiff, in violation of M.G.L. c. 149,

§185(a)(5), for his having engaged in lawful activity as pled herein.

82. As a result of the retaliation alleged above, Plaintiff has suffered, and will

continue to suffer substantial damages, including, but not limited to, damages to

his reputation, emotional distress, lost wages and employment benefits, and other

direct and consequential damages.

### COUNT V: TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS AND/OR CONTRACTUAL BUSINESS RELATIONSHIPS
(Abbott and Sawicki in their individual capacities)

83. Plaintiff restates and re-avers the above paragraphs 1 to 82 as if expressly set forth

herein.

84. An existence of an advantageous business relationship exists between Plaintiff and

Freetown in which Plaintiff receives an economic benefit for services rendered.

85. Defendants Abbott and Sawicki, at all times material herein, were aware of this

business and/or contract relationship.

86. Said Defendants' intentional interference with this business and/or contractual

relationship was for an improper purpose or by improper means.

21

87. As a result of such interference, the Plaintiff has sustained substantial damages, including but not limited to, loss of reputation, emotional distress, lost wages and employment benefits, and other direct and consequential damages.

### COUNT VI: DEFAMATION
(Sawicki in his individual capacity)

88. Plaintiff restates and re-avers the above paragraphs 1 to 87 as if expressly set forth herein.

89. Defendants knowingly, maliciously, or with a reckless disregard for the truth, generated false and defamatory written and oral statements concerning the Plaintiff.

90. The Defendants communicated these statements to one or more third parties.

91. As a result of such communication, the Plaintiff was exposed to hatred, ridicule, embarrassment, and/or contempt in the community, and suffered irreparable injury to his reputation.

### JURY DEMAND

92. The Plaintiff requests a jury trial on all counts pled.

### RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court:

(1)     Grant the Plaintiff injunctive relief as is necessary, just, and proper;

(2)     Award Plaintiff damages for loss of back pay and benefits, front pay, loss of professional opportunity, emotional distress, and punitive damages;

(3)     Award Plaintiff reasonable attorney's fees, interest, and costs for the prosecution of this action; and

(4)     Award Plaintiff injunctive and such other relief as this Honorable Court deems just and proper.

22

JON M. TAYLOR

By His Attorney:

Howard Mark Fine, Esquire
86 Sherman Street
Cambridge, MA  02140-3233
BBO No. 554671
(617) 868-9200

Dated: December 12, 2006